**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

)
THE JUDGE ROTENBERG                    )
EDUCATIONAL CENTER, INC., *et al.*,    )
                                       )
    *Plaintiffs,*                   )
                                       )
      v.                        )    Civil Action No. 1:17-cv-02092-BAH
                                       )
U.S. FOOD AND DRUG                     )
ADMINISTRATION, *et al.*,              )
                                       )
    *Defendants.*                   )
_____)

**PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**
**(AND REQUEST FOR AN ORAL HEARING)**

Plaintiffs, The Judge Rotenberg Educational Center, Inc., The J.R.C. Parents and Friends

Association, Inc., and Paul E. Peterson, Ph.D. (collectively, "Plaintiffs"), hereby move, pursuant

to Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment that

Defendants, U.S. Food and Drug Administration and U.S. Department of Health and Human

Services (collectively, "Defendants"), have improperly withheld records responsive to Plaintiffs'

requests under the Freedom of Information Act ("Act" or "FOIA"), 5 U.S.C. § 552.[1]  In support

of this Cross-Motion, Plaintiffs respectfully refer this Court to Plaintiffs' Memorandum in

Opposition to Defendants' Motion for Partial Summary Judgment and in Support of Plaintiffs'

Cross-Motion for Partial Summary Judgment, Plaintiffs' Statement of Material Facts as to which

There Is No Genuine Issue, Plaintiffs' Responses to Defendants' Statement of Material Facts as

---

[1] In its February 2, 2018 Minute Order, this Court bifurcated the proceedings as between all components of Defendants other than the Center for Devices and Radiological Health ("CDRH") and then CDRH, and Plaintiffs will file a dispositive motion, if appropriate, concerning the responses by CDRH to Plaintiffs' FOIA requests after CDRH completes its productions to Plaintiffs.

to which There Is No Genuine Issue, the Declaration of Glenda P. Crookes, and the Declaration of Matthew D. Rodgers, all of which are filed contemporaneously herewith and incorporated herein by reference.  For the reasons stated herein and therein, this Court should grant Plaintiffs' Cross-Motion and deny Defendants' Motion for Partial Summary Judgment ("Motion").

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

1.   Deny Defendants' Motion for Partial Summary Judgment; and

2.   Grant Plaintiffs' Cross-Motion for Partial Summary Judgment; and

3.   Enjoin Defendants from withholding attachments to responsive records and non-responsive information in responsive records and order Defendants to produce to Plaintiffs all such withheld attachments and information; and

4.   Enjoin Defendants from withholding records under 5 U.S.C. § 552(b)(5) and 5 U.S.C. § 552(b)(6) and order Defendants to produce to Plaintiffs all such withheld records.  Alternatively, this Court should order Defendants to produce to this Court unredacted copies of the sample of records withheld under 5 U.S.C. § 552(b)(5) and 5 U.S.C. § 552(b)(6) and attached to the Declaration of Matthew D. Rodgers for an *in camera* inspection, and, if this Court determines that Defendants improperly withheld any of such records, enjoin Defendants from withholding records under 5 U.S.C. § 552(b)(5) and 5 U.S.C. § 552(b)(6) and order Defendants to produce to Plaintiffs all such withheld records.  Alternatively, this Court should order Defendants to supplement their *Vaughn* index for all records withheld under 5 U.S.C. § 552(b)(5) and 5 U.S.C. § 552(b)(6), and, after Defendants file their supplemental *Vaughn* index, allow Plaintiffs to file a renewed dispositive motion.

## LCvR 7(f) REQUEST FOR AN ORAL HEARING

Plaintiffs respectfully request a hearing on Plaintiffs' Cross-Motion and on Defendants'

Motion.

Respectfully submitted,

**The Judge Rotenberg Educational Center, Inc. and
Paul E. Peterson, Ph.D.,**

  /s/ Edward J. Longosz, II
Edward J. Longosz, II (D.C. Bar No. 368932)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
1717 Pennsylvania Avenue, Northwest, 12th Floor
Washington, D.C. 20006
T: 202 659 6619
F: 202 659 6699
elongosz@eckertseamans.com

  /s/ Michael P. Flammia
Michael P. Flammia (*Pro Hac Vice*)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
2 International Place, 16th Floor
Boston, MA 02110
T: 617 342 6854
F: 617 342 6899
mflammia@eckertseamans.com

**The J.R.C. Parents and Friends Association, Inc. and
Paul E. Peterson, Ph.D.,**

  /s/ Max D. Stern
Max D. Stern (*Pro Hac Vice*)
TODD & WELD, LLP
1 Federal Street
Boston, MA 02110
T: 617 624 4712
F: 617 227 5777
mdstern@toddweld.com

## CERTIFICATE OF SERVICE

 I hereby certify that I filed and served copies of the foregoing document through the Court's electronic transmission facilities on this 7th day of September, 2018.

          /s/ Edward J. Longosz, II
         Edward J. Longosz, II

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| THE JUDGE ROTENBERG | ) | |
| EDUCATIONAL CENTER, INC., *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:17-cv-02092-BAH |
| | ) | |
| U.S. FOOD AND DRUG | ) | |
| ADMINISTRATION, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |
| _____ | ) | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
## AND IN SUPPORT OF
## PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ....................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... iii

BACKGROUND ................................................................................................................2

A.  Factual Background ..................................................................................................2

B.  Procedural History......................................................................................................6

ARGUMENT .......................................................................................................................7

I.  Standard of Review ...................................................................................................7

II.  Defendants improperly withheld attachments to responsive records........................9

III.  Defendants' Updated Index is inadequate. ..........................................................10

     A.  Defendants' Updated Index is structurally deficient....................................10

     B.  The Updated Index fails to include all justifications for all withholdings. ..................12

     C.  Defendants failed to correlate specific exemptions with specific information. ...........14

IV.  Defendants improperly withheld non-exempt information. ...................................15

     A.  Defendants improperly withheld non-responsive information in responsive records. 16

     B.  Defendants improperly withheld records under the deliberative process privilege. ....17

          1.  Defendants failed to justify their deliberative process privilege claims. ..........19

               a.  Defendants failed to describe what deliberative process is involved....20

               b.  Defendants failed to describe the nature of the decisionmaking authority vested in the office or person issuing the disputed documents and the positions in the chain of command of the parties to the documents........................................................................21

          2.  Defendants improperly withheld information under the deliberative process privilege. ...........................................................................23

               a.  Defendants improperly withheld drafts...............................23

b.  Defendants improperly withheld non-draft records............................26

C.  Defendants improperly withheld records under the attorney-client privilege..............29

D.  Defendants improperly withheld records under personal privacy claims...................31

1.  Defendants failed to justify their personal privacy claims.............................33

2.  Defendants improperly withheld non-exempt records under Exemption 6. .....35

V.  Defendants failed to produce all reasonably segregable non-exempt information..................40

VI.  Plaintiffs are entitled to summary judgment and other appropriate relief. ...........................44

# TABLE OF AUTHORITIES

## CASES

*100Reporters LLC v. U.S. Dep't of Justice*,
   --- F.Supp.3d ---, 2018 WL 2976007 (D.D.C. June 13, 2018) ......................................8, 40

*100Reporters LLC v. U.S. Dep't of Justice*, 248 F.Supp.3d 115 (D.D.C. 2017) ....20-21, 26-27, 45

*Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895 (D.C. Cir. 2015).......................................19

*Access Reports v. Dep't of Justice*, 926 F.2d 1192 (D.C. Cir. 1991).......................................21-22

*Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1 (D.C. Cir. 2011)...........................7

*Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*,
   830 F.3d 667 (D.C. Cir. 2016) ...............................................................9-10, 16-17, 33, 35

*Am. Oversight v. U.S. Gen. Servs. Admin.*,
   311 F.Supp.3d 327 (D.D.C. 2018) (Howell, J.)............................................9, 29, 35, 38, 40

*Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504 (D.C. Cir. 2011) ................18

*Animal Legal Def. Fund, Inc. v. Dep't of Air Force*, 44 F.Supp.2d 295 (D.D.C. 1999) ...............19

*Army Times Publ'g Co. v. Dep't of Air Force*, 998 F.2d 1067 (D.C. Cir. 1993)..........................42

*Arthur Andersen & Co. v. Internal Revenue Serv.*, 679 F.2d 254 (D.C. Cir. 1982) ....19, 21, 23, 26

*Assassination Archives & Research Ctr. v. C.I.A.*, 334 F.3d 55 (D.C. Cir. 2003) ........................40

*Bartko v. U.S. Dep't of Justice*, --- F.3d ---, 2018 WL 3673936 (D.C. Cir. Aug. 3, 2018)...........34

*Ctr. for Auto Safety v. U.S. Dep't of Treasury*,
   133 F.Supp.3d 109 (D.D.C. 2015) (Howell, J.).........................................................14, 45

*Ctr. for Biological Diversity v. U.S. Envtl. Prot. Agency*,
   279 F.Supp.3d 121 (D.D.C. 2017) (Howell, J.)......7-8, 11-12, 18-19, 24, 27, 29-31, 41-42

*Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of State*,
   955 F.Supp.2d 4 (D.D.C. 2013) .......................................................................................23

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980).................. 19, 28-29

*Coffey v. Bureau of Land Mgmt.*, 277 F.Supp.3d 1 (D.D.C. 2017) .................................................9

*Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 161 F.Supp.3d 120 (D.D.C. 2016) ......18

*Conservation Force v. Jewell*, 66 F.Supp.3d 46 (D.D.C. 2014) ....................................................21

*Dellums v. Powell*, 642 F.2d 1351 (D.C. Cir. 1980) .......................................................................15

*Dep't of Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1 (2001) ............................13, 17

*Dep't of the Air Force v. Rose*, 425 U.S. 352 (1976) ................................................................. 7-8

*E.P.A. v. Mink*, 410 U.S. 73 (1973) ........................................................................................13, 28

*\*Elec. Frontier Found. v. U.S. Dep't of Justice*,
  826 F.Supp.2d 157 (D.D.C. 2011) ........................................8, 11, 17, 19-22, 25-26, 40-42

*Elec. Privacy Info. Ctr. v. Dep't of Justice*, 584 F.Supp.2d 65 (D.D.C. 2008).............................31

*Ethyl Corp. v. E.P.A.*, 25 F.3d 1241 (4th Cir. 1994).......................................................................18

*Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
  243 F.Supp.3d 155 (D.D.C. 2017) (Howell, J.) ....................................................................8

*Heartland All. for Human Needs & Human Rights v. U.S. Dep't of Homeland Sec.*,
  291 F.Supp.3d 69 (D.D.C. 2018) .........................................................................................24

*Heffernan v. Azar*, --- F.Supp.3d ---, 2018 WL 3150214 (D.D.C. June 27, 2018) ......................25

*In re Kellogg Brown & Root, Inc.*, 756 F.3d 754 (D.C. Cir. 2014) ...............................................29

*James Madison Project v. Dep't of Justice*, 302 F.Supp.3d 290 (D.D.C. 2018) ..........................21

*Johnson v. Exec. Office for U.S. Attorneys*, 310 F.2d 771 (D.C. Cir. 2002) ...............................41

*Judicial Watch, Inc. v. Fed. Bureau of Investigation*, 522 F.3d 364 (D.C. Cir. 2008) ............... 7-8

*Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141 (D.C. Cir. 2006)............11, 26, 32, 35

*Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108 (D.C. Cir. 2004)....................................31

*Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F.Supp.2d 252 (D.D.C. 2004)..............................23

*Jurewicz v. U.S. Dep't of Agric.*, 741 F.3d 1326 (D.C. Cir. 2014) ...............................................32

*Landmark Legal Found. v. E.P.A.*, 272 F.Supp.2d 59 (D.D.C. 2003) .............................................7

*McKenzie v. Sawyer*, 684 F.2d 62 (D.C. Cir. 1982) ........................................................................7

*Mead Data Cent. v. U.S. Dep't of Air Force*, 566 F.2d 242 (D.C. Cir. 1977)............. 29, 40-41, 43

*Morley v. C.I.A.*, 508 F.3d 1108 (D.C. Cir. 2007) ....................................................8, 32

*Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224 (D.C. Cir. 2008).............................32, 38

*Nat'l Ass'n of Criminal Def. Lawyers v. Dep't of Justice Exec. Office for U.S. Attorneys,*
  844 F.3d 246 (D.C. Cir. 2016) ....................................................................... 43-44

*Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26 (D.C. Cir. 2002)...................................7, 17

*Nat'l Ass'n of Ret. Fed. Emps. v. Homer*, 879 F.2d 873 (D.C. Cir. 1989) .............................32, 35

*Nat'l Sec. Archive v. C.I.A.*, 752 F.3d 460 (D.C. Cir. 2014)...........................................18

*Nat'l Sec. Counselors v. C.I.A.*, 960 F.Supp.2d 101 (D.D.C. 2013) (Howell, J)....................19, 22

*People for the Ethical Treatment of Animals v. Nat'l Insts. of Health,*
  *Dep't of Health & Human Servs.*, 745 F.3d 535 (D.C. Cir. 2014) ......................................9

*Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429 (D.C. Cir. 1992) .................18, 27

*Pub. Citizen Health Research Grp. v. Food & Drug Admin.*, 185 F.3d 898 (D.C. Cir. 1999)..8, 16

*Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865 (D.C. Cir. 2010)...............18, 21, 24

*Pub. Emps. for Envtl. Responsibility v. U.S. Envtl. Prot. Agency,*
  --- F.Supp.3d ---, 2018 WL 2464463 (D.D.C. June 1, 2018) (Howell, J.) ...................7, 40

*Senate of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574 (D.C. Cir. 1987) ................................. 19-20

*Shapiro v. U.S. Dep't of Justice*, 893 F.3d 796 (D.C. Cir. 2018) ....................................................8

*Shapiro v. U.S. Dep't of Justice*, 969 F.Supp.2d 18 (D.D.C. 2013) (Howell, J.) .........................44

*Spirko v. U.S. Postal Serv.*, 147 F.3d 992 (D.C. Cir. 1998)...........................................45

*Summers v. U.S. Dep't of Justice*, 140 F.3d 1077 (D.C. Cir. 1998) .................................................8

*Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106 (D.C. Cir. 2007) .................................................40

*U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487 (1994) .......................................32

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749 (1989) ...............38

*U.S. Dep't of State v. Ray*, 502 U.S. 164 (1991).......................................................................7, 32

*U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595 (1982) .................................................... 31-32

*Vaughn v. Rosen*, 523 F.2d 1136 (D.C. Cir. 1975) ........................................................18

*\*Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) ...........................................10-11, 13-15, 30, 45

*Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 865 F.2d 320 (D.C. Cir. 1989) ............7

*Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F.Supp.2d 1 (D.D.C. 2004) .................... 23, 25-26

*Wolf v. C.I.A.*, 473 F.3d 370 (D.C. Cir. 2007) ...............................................................8

## STATUTES, REGULATIONS, AND RULES

5 U.S.C. § 552 ..........................................................1-2, 7-8, 10, 16-17, 31, 33-34, 40, 42, 44-45

21 U.S.C. § 360f ............................................................................................................38

21 C.F.R. § 20.22 ...........................................................................................................40

81 Fed. Reg. 24386 .................................................................... 1, 5, 26, 34, 36, 38-39

Fed. R. Civ. P. 53 ..........................................................................................................45

The Judge Rotenberg Educational Center, Inc. ("JRC"), The J.R.C. Parents and Friends

Association, Inc. ("Parents Association"), and Paul E. Peterson, Ph.D. ("Dr. Peterson")

(collectively, "Plaintiffs") seek from U.S. Food and Drug Administration ("FDA") and U.S.

Department of Health and Human Services ("HHS") (collectively, "Defendants"), pursuant to

the Freedom of Information Act ("Act" or "FOIA"), 5 U.S.C. § 552, records concerning the

Graduated Electronic Decelerator ("GED"), an electrical stimulation device ("ESD") that JRC

uses to treat the life-threatening and treatment-resistant self-injurious behaviors ("SIB") and

aggressive behaviors ("AB") of some of its patients, and FDA's related Proposal To Ban

Electrical Stimulation Devices Used To Treat Self-Injurious or Aggressive Behavior ("Proposed

Ban"), 81 Fed. Reg. 24386.  JRC patients receive GED treatment pursuant to treatment plans

approved by probate court judges based on individualized findings that GED treatment is the

most effective, least restrictive treatment option for their severe behavior disorders, and they

require GED treatment for their continued health and safety.  Plaintiffs seek these records

because the comment period on the Proposed Ban has long since closed, and FDA, at any time

and without prior notice, could publish a final rule implementing the Proposed Ban, immediately

depriving JRC patients of critical GED treatment and causing instant and irreparable harm in the

form of severe regression and resultant injuries to them, their loved ones, and their caregivers.

Defendants have filed Defendants' Motion for Partial Summary Judgment ("Motion").

[ECF No. 25].  Defendants argue that they appropriately: (1) searched for records responsive to

Plaintiffs' requests; (2) redacted records pursuant to FOIA's exemptions; and (3) released all

reasonably segregable non-exempt information.  *See* Memorandum of Points and Authorities in

Support of Defendants' Motion for Partial Summary Judgment ("Memorandum" or "Memo.") at

17-33 [ECF No. 25].  However, as set forth below, Defendants improperly: (1) failed to produce

attachments to responsive records; (2) provided an insufficient *Vaughn* index; (3) withheld non-exempt records; and (4) failed to produce all reasonably segregable non-exempt information.

For the reasons set forth below, this Court should:

1. Deny Defendants' Motion; and

2. Grant Plaintiffs' Cross-Motion for Partial Summary Judgment ("Cross-Motion"); and

3. Enjoin Defendants from withholding attachments to responsive records and non-responsive information in responsive records and order Defendants to produce to Plaintiffs all such withheld attachments and information; and

4. Enjoin Defendants from withholding records under 5 U.S.C. § 552(b)(5) ("Exemption 5") and 5 U.S.C. § 552(b)(6) ("Exemption 6") and order Defendants to produce to Plaintiffs all such withheld records.  Alternatively, this Court should order Defendants to produce to this Court unredacted copies of the sample of records withheld under Exemptions 5 and 6 and attached to the Declaration of Matthew D. Rodgers ("Rodgers Declaration" or "Rodgers Decl.") for an *in camera* inspection, and, if this Court determines that Defendants improperly withheld any of such records, enjoin Defendants from withholding records under Exemptions 5 and 6 and order Defendants to produce to Plaintiffs all such withheld records.  Alternatively, this Court should order Defendants to supplement their *Vaughn* index for all records withheld under Exemptions 5 and 6, and, after Defendants file their supplemental *Vaughn* index, allow Plaintiffs to file a renewed dispositive motion.

## BACKGROUND

**A.    Factual Background.**

JRC currently provides care and treatment to 274 patients from 13 states, Washington, D.C., and the U.S. Virgin Islands, who engage in severe problem behaviors.  *See* Plaintiffs'

Statement of Material Facts as to which There Is No Genuine Dispute ("Cross-Statement") at ¶ 1.
JRC currently provides supplemental GED treatment to 48 of its patients from 5 states, who
engage in life-threatening and treatment-resistant SIB and AB.  *See id.*  For all such patients, a
probate court judge has made an individualized determination that GED treatment is the most
effective, least-restrictive treatment option for their severe behavior disorders.  *See id.*  Dr.
Peterson is the father and legal guardian of D.P., an adult male patient who is receiving GED
treatment for his SIB and AB at JRC, and a member of the Parents Association.  *See id.* at ¶ 29.

JRC[1] received 510(k) clearance for its first GED model on December 5, 1994.  *See id.* at
¶ 3.  By January 2000, JRC had developed enhanced versions of the GED with additional safety
features.  *See id.* at ¶ 4.  On February 14, 2000, after conducting an inspection, FDA advised that
JRC's GED devices were exempt from the 510(k) process.  *See id.* at ¶ 5.  In a contemporaneous
internal communication, Karen Archdeacon of the New England District Office ("NWE-DO")
wrote that FDA "did not observe any indications that the patients/clients were at risk" from the
GED devices during the inspection of JRC.  *See* Rodgers Decl. at Attachment 35.

In 2010, the Commonwealth of Massachusetts contacted FDA about the clearance status
of the GED.  *See* Cross-Statement at ¶ 6.  In a recent decision following a lengthy trial between
JRC and its state regulator, the Massachusetts Department of Developmental Services ("DDS"),
the Massachusetts Probate Court found that DDS regulated JRC in bad faith in 2010 because, in
part, DDS's General Counsel, Marianne Meacham, and DDS's Commissioner, Elin Howe,
removed information favorable to JRC about the GED's clearance status with FDA from a
purportedly independent report concerning JRC's certification to use the GED.  *See id.* at ¶ 7.

---

[1] JRC was formerly known as the Behavior Research Institute, Inc.  *See* Cross-Statement at ¶ 3.

FDA then suddenly reversed its position, claiming that JRC was required to submit a second 510(k) notice for modifications made to the original FDA-cleared GED device. *See id.* at ¶ 8  Although JRC disagreed with FDA's new position, JRC informed FDA that it would seek 510(k) clearance for the GED devices. *See id.* at ¶ 9.  JRC then prepared a 510(k) notice. *See id*.

During a January 9, 2013 meeting between FDA and JRC, FDA requested that JRC first file a pre-submission discussing the content of the 510(k) notice. *See id.* at ¶ 10.  The next day, Ms. Archdeacon spoke with Ms. Howe about DDS's inspections of JRC and information sharing between FDA and DDS. *See id.* at ¶ 11.  JRC filed the requested pre-submission, and FDA scheduled a meeting to discuss that filing for March 25, 2013. *See id.* at ¶ 13.

FDA cancelled this meeting days before it was scheduled to occur. *See id.* at ¶ 14.  FDA never responded to JRC's requests to reschedule the meeting and never provided comments on the pre-submission that JRC had submitted at FDA's request, *see id.* at ¶ 19, in violation of its own guidance, *see* U.S. FOOD & DRUG ADMIN., GUIDANCE FOR INDUS. & FOOD & DRUG ADMIN. STAFF, REQUESTS FOR FEEDBACK ON MED. DEVICE SUBMISSIONS: THE PRE-SUBMISSION PROGRAM & MEETINGS WITH FOOD & DRUG ADMIN. STAFF at 18 (2017), https://www.fda.gov/downloads/medicaldevices/deviceregulationandguidance/guidancedocuments/ucm311176.pdf (last visited Sept. 6, 2018) (stating that FDA's "written feedback will be provided . . . no later than 70 days from receipt" of pre-submission).  Instead, FDA met with anti-aversive advocacy groups "to discuss FDA's role in assessing the use of aversive devices by the JRC". *See* Rodgers Decl., Attachment 12 at JRC OES Supplemental 1 002729.

JRC received no further communications from FDA until JRC received last-minute notice of a meeting concerning ESDs that was to be held on April 24, 2014 by the Neurological Devices Panel of the Medical Devices Advisory Committee of the Center for Devices and

Radiological Health ("CDRH") of FDA ("Panel Meeting").  *See* Cross-Statement at ¶ 20.  At the Panel Meeting, approximately half of the panelists agreed that ESDs provide a therapeutic benefit, and the panelists unanimously concluded that for some patients who engage in SIB or AB there are no effective alternatives to ESDs.  *See id.* at ¶ 22.

On April 25, 2016, FDA published the Proposed Ban, which, if implemented as a final rule, would prohibit JRC from providing GED treatment for the SIB and AB of D.P. and other current and future patients who require the treatment to avoid catastrophic injury and potential death.  *See id.* at ¶ 25.  As of that date, FDA had only previously banned a single device over thirty years ago.  *See id.*  FDA did not provide JRC with any notice of the Proposed Ban other than publication in the Federal Register, despite FDA's acknowledgment that JRC is the only provider that will be affected by its Proposed Ban.  *See id.* at ¶ 26.

Notwithstanding FDA's determination that ESDs "present an unreasonable and substantial risk of illness or injury that cannot be corrected or eliminated by labeling", 81 Fed. Reg. at 24386, and Defendants' suggestion that the use of ESDs constitutes torture, *see* Memo. at 3, FDA has not published a final rule implementing the Proposed Ban in the more than two years since the comment period on the Proposed Ban closed on July 25, 2016, *see* Cross-Statement at ¶ 27.  Nonetheless, FDA has not withdrawn the Proposed Ban, and it could publish a final rule implementing the Proposed Ban at any time and without advance notice.  *See id.* at ¶ 28.

On July 19, 2016, Dr. Peterson submitted to FDA six FOIA requests concerning the GED and the Proposed Ban, *see* Complaint for Declaratory and Injunctive Relief ("Complaint" or "Compl.") at Exs. A-1 – A-6 [ECF Nos. 1-1 – 1-6], which FDA aggregated and docketed as request number 2016-7308 ("First Request"), *see* Declaration of Sarah Kotler ("Kotler Decl.") at ¶ 4 [ECF No. 24-2].  On August 23, 2016, Dr. Peterson submitted to FDA two additional FOIA

requests concerning the GED and the Proposed Ban, *see* Compl. at Exs. F [ECF No. 1-11], H [ECF No. 1-13], which FDA docketed as request numbers 2016-7184 ("Second Request"),[2] *see id.* at Ex. G, and 2016-7106 ("Third Request"), *see id.* at Ex. I [ECF No. 1-14].  On December 27, 2016, Michael Flammia sent a letter to FDA on behalf of JRC, requesting that FDA produce information and records concerning the GED and the Proposed Ban, *see id.*, Ex. J at 67-71 [ECF No. 1-15], which FDA treated as a FOIA request and docketed as request number 2017-1440 ("Fourth Request") (collectively, with the First through Third Requests, "Requests"), *see id.* at Ex. L [ECF No. 1-17].  Max Stern subsequently sent a letter to FDA on behalf of the Parents Association that incorporated by reference the Fourth Request, thereby joining the Fourth Request as a requestor.  *See id.*, Ex. M at 1, 8 [ECF No. 1-18].

**B.    Procedural History.**

Plaintiffs filed their Complaint on October 10, 2017.  [ECF No. 1].  The parties continued to disagree about the timeline for Defendants' productions.  *See*, *e.g.*, Amended Joint Meet and Confer Report [ECF No. 10].  After a status conference, this Court bifurcated the proceedings as between all non-CDRH components and then CDRH.  *See* Minute Order (Feb. 2, 2018).

Defendants filed their original *Vaughn* Index ("Index") concerning all non-CDRH components on March 2, 2018.  [ECF No. 19-1].  The parties then attempted to resolve some of their disagreements, *see*, *e.g.*, Joint Motion to Revise and Extend the Scheduling Order [ECF No. 20], with this Court's permission, *see*, *e.g.*, Minute Order (Mar. 29, 2018).  Defendants filed their Updated *Vaughn* Index ("Updated Index"), [ECF No. 24-9], and their Motion on July 12, 2018.  Per this Court's order, Plaintiffs are today filing their Cross-Motion and this Memorandum ("Cross-Memorandum").  *See* Minute Order (July 24, 2018).

---

[2] FDA independently forwarded the Second Request to HHS to search for records held by HHS's Office of the Secretary ("OS").  *See* Compl. at Ex. G [ECF No. 1-12].

**ARGUMENT**

"FOIA was intended 'to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny'". *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)). Courts must thus "bear in mind", "[a]t all times", "that FOIA mandates a 'strong presumption in favor of disclosure'". *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)). FOIA empowers courts to "'enjoin the agency from withholding agency records and to order the production of any agency records'" improperly withheld. *Ctr. for Biological Diversity v. U.S. Envtl. Prot. Agency*, 279 F.Supp.3d 121, 138 (D.D.C. 2017) (Howell, J.) (quoting 5 U.S.C. § 552(a)(4)(B)).

**I.      Standard of Review.**

Most FOIA cases are appropriately resolved at summary judgment, *Pub. Emps. for Envtl. Responsibility v. U.S. Envtl. Prot. Agency*, --- F.Supp.3d ---, 2018 WL 2464463, at *2 (D.D.C. June 1, 2018) (Howell, J.), where the question is "whether [agency] withholdings are justified", *Landmark Legal Found. v. E.P.A.*, 272 F.Supp.2d 59, 62 (D.D.C. 2003). The "'general standards under [R]ule 56 [of the Federal Rules of Civil Procedure] apply with equal force in the FOIA context'". *Ctr. for Biological Diversity*, 279 F.Supp.3d at 136 (quoting *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989)). "'The rule governing cross-motions for summary judgment . . . is that . . . each side concedes that no material facts are at issue only for the purposes of its own motion'". *Id.* at 137 n.7 (quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982)).

FOIA "requires federal agencies to disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions". *Judicial*

*Watch, Inc. v. Fed. Bureau of Investigation*, 522 F.3d 364, 366 (D.C. Cir. 2008) (citing 5 U.S.C. § 552).  At summary judgment, agencies bear the burden of justifying their withholdings. *100Reporters LLC v. U.S. Dep't of Justice*, --- F.Supp.3d ---, 2018 WL 2976007, at *3 (D.D.C. June 13, 2018); 5 U.S.C. § 552(a)(4)(B).  "This burden does not shift even when the requester files a cross-motion for summary judgment because 'the Government ultimately [has] the onus of proving that the [records] are exempt from disclosure'".  *Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 243 F.Supp.3d 155, 162 (D.D.C. 2017) (Howell, J.) (quoting *Pub. Citizen Health Research Grp. v. Food & Drug Admin.*, 185 F.3d 898, 904-05 (D.C. Cir. 1999)).  Agencies may attempt to justify withholdings in declarations and/or *Vaughn* indices, *id.*, which must "describe[] the justifications for withholding the information in specific detail, [must] demonstrate[] that the information withheld logically falls within the claimed exemption, and [must] not [be] contradicted by contrary evidence".  *Shapiro v. U.S. Dep't of Justice*, 893 F.3d 796, 799 (D.C. Cir. 2018) (quotation omitted) (emphasis added).

FOIA's nine exclusive statutory exemptions "must be narrowly construed", as they "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act". *Rose*, 425 U.S. at 361 (quotation and citations omitted).  Courts review withholdings *de novo*, *Wolf v. C.I.A.*, 473 F.3d 370, 374 (D.C. Cir. 2007); 5 U.S.C. § 552(a)(4)(B), "'verify[ing] the validity of each claimed exemption'", *Ctr. for Biological Diversity*, 279 F.Supp.3d at 138 (quoting *Summers v. U.S. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998)).  "[C]ourts impose a substantial burden on an agency seeking to avoid disclosure based on the FOIA exemptions".  *Elec. Frontier Found. v. U.S. Dep't of Justice*, 826 F.Supp.2d 157, 164 (D.D.C. 2011) (citing *Morley v. C.I.A.*, 508 F.3d 1108, 1114-15 (D.C. Cir. 2007)).

**II.      Defendants improperly withheld attachments to responsive records.**

Defendants improperly failed to produce and to offer any justification for withholding

attachments to responsive records.  Plaintiffs have assembled a sample of responsive records

where the attachments were withheld without entries in Defendants' Updated Index.  *See*

Rodgers Decl. at Attachments 72-76.  Clearly, Plaintiffs' Requests encompass the missing

attachments, and the missing attachments are responsive to Plaintiffs' Requests.

Plaintiffs clearly requested attachments to responsive records.  Plaintiffs generally sought

all responsive communications.  *See*, *e.g.*, Compl., Ex. A-1 at 1 (requesting all "e-mail, . . .

correspondence, . . . and all other forms of communication").  This Court has held that requests

for communications cover attachments to communications.  *See Am. Oversight v. U.S. Gen.*

*Servs. Admin.*, 311 F.Supp.3d 327, 339-41 (D.D.C. 2018) (Howell, J.) (holding that request,

which explicitly sought "[a]ll records reflecting communications", but not "attachments",

included email attachments) (quotation omitted); *see also People for the Ethical Treatment of*

*Animals v. Nat'l Insts. of Health, Dep't of Health & Human Servs.*, 745 F.3d 535, 540 (D.C. Cir.

2014) ("Agencies have a duty to construe a FOIA request liberally".) (quotation omitted).

The missing attachments are also clearly responsive to Plaintiffs' Requests.  Regardless

of whether the missing attachments are independently responsive, they are responsive by having

been attached to other responsive records, and so they must be produced.  *See Am. Oversight*,

311 F.Supp.3d at 340-41 (ordering agency to produce missing attachments not referenced in

responsive emails because attachments were responsive to request for "communications"); *see*

*also Coffey v. Bureau of Land Mgmt.*, 277 F.Supp.3d 1, 7-9 (D.D.C. 2017) (ordering agency to

produce "attachments to emails already deemed responsive", and explaining that attachments

explicitly referenced in responsive emails were "part and parcel" of emails); *Am. Immigration*

*Lawyers Ass'n v. Exec. Office for Immigration Review*, 830 F.3d 667, 677 (D.C. Cir. 2016)

(holding, "once an agency identifies a record it deems responsive to a FOIA request, the statute

compels disclosure of the responsive record—i.e., as a unit—except insofar as the agency may

redact information falling within a statutory exemption") (citing 5 U.S.C. § 552(a)(3)(A), (b)).

## III.    Defendants' Updated Index is inadequate.

In *Vaughn v. Rosen*, the District of Columbia Circuit ("Circuit"), recognizing FOIA's

"overwhelming emphasis" on disclosure, 484 F.2d 820, 823 (D.C. Cir. 1973), mandated the

*Vaughn* index to allow "a more adequate adversary testing" by the requester, *id.* at 828, and to

"permit the court system effectively and efficiently to evaluate" withholdings, *id.* at 826.  The

*Vaughn* index must provide "a relatively detailed analysis" and more than "conclusory and

generalized allegations of exemptions".  *Id.*  While a *Vaughn* index "may impose a substantial

burden on an agency", it is consistent with FOIA in that it places this burden on the agency,

which is encouraged "voluntarily to disclose as much information as possible".  *Id.* at 828.

Defendants have failed to adopt the "sincere policy of maximum disclosure" for which

the Circuit called in *Vaughn*.  *Id.*  Defendants' Updated Index includes entries for more than

2,000 records.  *See generally* Updated Index.  Defendants have failed to: (A) submit a

structurally sufficient *Vaughn* index; (B) include all justifications for all withholdings in the

Updated Index; and (C) correlate specific exemptions with specific withheld information.[3]

### A.    Defendant's Updated Index is structurally deficient.

Defendants failed to include in their Updated Index all of the information necessary to

justify their withholdings.  As this Court has explained:

---

[3] As explained below, Defendants' Updated Index is also inadequate because Defendants fail to
provide additional information required to justify certain claimed exemptions.

"[A] comprehensive *Vaughn* index will <u>at least</u> include the following information: '(1) an index identification number [(*i.e.*, a Bates stamp number)]; (2) the document's subject; (3) its date; (4) the author; (5) the recipient; (6) the total number of pages; ([7]) the disposition (that is, whether entirely or partially withheld); ([8]) the reason for being withheld; ([9]) the statutory authority for the withholding; and ([10]) the number of pages containing withheld information.'"

*Ctr. for Biological Diversity*, 279 F.Supp.3d at 144 (quoting *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146-47 (D.C. Cir. 2006)) (emphasis added).  Defendants have failed to include, for each record, some of this information, including, but not limited to: dates; authors; recipients; total number of pages; statutory authority for withholdings; and number of pages containing withheld information.  Without such information, "[t]he best [Plaintiffs] can do is to argue that the exception[s] [are] very narrow and plead that the general nature of the documents sought make it unlikely that they contain such [excepted] information", *Vaughn*, 484 F.2d at 824, and this Court cannot "determin[e] the justifiability of a . . . claim of exemption", *id.* at 826.

As one example, many entries in the Updated Index lack dates.  The date of a record is essential to determining whether the record is truly predecisional, and so possibly exempt under the deliberative process privilege ("DPP").  *See Elec. Frontier Found.*, 826 F.Supp.2d at 165 (explaining that, to withhold a record under the DPP, an agency must prove that a record precedes the decision it concerns).  For example, Defendants produced an email without a date field, *see* Rodgers Decl. at Attachment 10, and, in the Updated Index, Defendants left the "Date" field blank, claimed that the email post-dates the Panel Meeting, and asserted that the email is predecisional because it pre-dates the Proposed Ban,[4] *see* Updated Index at 732-33.  There is no way of knowing when, during this two year period, this email was generated, and thus whether this email is actually predecisional, as Defendants decided to issue the Proposed Ban well before

---

[4] Defendants do not explain how they were able to determine the date range, but not the actual date, of this electronic record.  *See generally* Updated Index at 732-33.

its publication.  *See, e.g.*, Rodgers Decl., Attachment 11 at CDRH_Production_2 – 006959

(noting that, as of October 14, 2014, CDRH was "working on the [Proposed Ban]").

As another example, Defendants failed to include in the Updated Index the total number

of pages and the number of pages containing withheld information for each record.  These data

points cannot necessarily be determined from the other information provided by Defendants in

the Updated Index.  The total number of pages of each record cannot be determined by simply

subtracting the "Start Bates" number from the "End Bates" number, as Defendants withheld in

full multiple pages under a single Bates number.  *See, e.g.*, *id.*, Attachment 60 at JRC OES

Supplemental 1 009154 (withholding in full 116 pages under 1 Bates number).  Further, the

number of pages containing withheld information for each record cannot be determined, as

Defendants only indicate the "No. of Pages withheld in Full", and not the many pages withheld

in part.  *See generally* Updated Index (indicating that approximately 1,340 records were withheld

in part and included 0 pages withheld in full).  This omission obscures Defendants' excessive

withholdings, and, as explained below, the information supplied by Defendants is unreliable.

B.      The Updated Index fails to include all justifications for all withholdings.

Defendants' Updated Index does not contain all of their withholdings.  Defendants

incorrectly assert that "[a]ny records produced . . . that do not appear on this [Updated I]ndex

were produced without redaction".  Updated Index at 1.  For example, one heavily-redacted

seven-page record does not appear on the Updated Index.  *See* Rodgers Decl. at Attachment 43.

Defendants improperly failed to provide any information about such withholdings.  *See Ctr. for*

*Biological Diversity*, 279 F.Supp.3d at 144-45 (concluding that *Vaughn* indices that included

some records "with no explanation whatsoever" were "patently insufficient").

Defendants' Updated Index also does not contain all of their justifications.  Plaintiffs have assembled a sample of the many records with discrepancies between the exemptions stamped on the records and those claimed in the Updated Index.  *See* Rodgers Decl. at Attachments 6, 22, 30, 40-42, 62, 77.  For example, for one record,[5] Defendants claimed "(b) (4), (b) (5), (b) (6)" exemptions on the record itself, *see id.* at Attachment 6, but only claimed Exemptions 5 and 6 in the Updated Index, *see* Updated Index at 93-94.  When Plaintiffs requested confirmation that the Updated Index was definitive, *see* Rodgers Decl., Attachment 9 at 2, Defendants replied that they "reserve[d] the right . . . to seek to amend the Updated Vaughn index in the event [of] an inconsistency",[6] *see id.* at 1.

By refusing to stand behind their Updated Index, Defendants prevent Plaintiffs from effectively challenging and this Court from adequately reviewing each claimed exemption.  Generally, Defendants claim more exemptions on the withheld records than in the Updated Index.  *See*, *e.g.*, *id.* at Attachment 62 (redacting information under "(b) (5)" claim);[7] Updated Index at 1581 (entry for Attachment 62 providing no legal basis for redaction).  For this reason, neither Plaintiffs nor this Court can be certain that a record is non-exempt merely by concluding that the exemption claimed in the Updated Index is improper.  Instead, Defendants would have Plaintiffs and this Court inspect each withheld record for additional claimed exemptions, and

---

[5] Though this record is not Bates stamped, it is Bates numbered as 2016-7308OCCpart100124-30.  *See* Rodgers Decl. at ¶ 9.

[6] On the records, Defendants simply stamped the alleged statutory bases for the redactions, such as "(b) (4)".  *See*, *e.g.*, Rodgers Decl. at Attachment 6.  These legal citations, standing alone, are impermissible.  *See Vaughn*, 484 F.2d at 826 ("[C]ourts will simply no longer accept conclusory and generalized allegations of exemptions".) (citing *E.P.A. v. Mink*, 410 U.S. 73, 93 (1973)).

[7] The source of this record does not appear to have been "a Government agency", and thus any attempt by Defendants to claim that it may be withheld under Exemption 5 is specious.  *Dep't of Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 8 (2001).

Case 1:17-cv-02092-BAH   Document 30   Filed 09/07/18   Page 25 of 120

then evaluate any additional exemptions claimed on such records.[8]  Defendants' attempt to shift

their burden is "in clear contravention of the statutory mandate".  *Vaughn*, 484 F.2d at 825, 28;

*see also Ctr. for Auto Safety v. U.S. Dep't of Treasury*, 133 F.Supp.3d 109, 116 (D.D.C. 2015)

(Howell, J.) ("[T]o carry [its] burden, an agency must submit [a] sufficiently detailed . . . *Vaughn*

index . . . to enable the court to fulfill its duty of ruling on the applicability of the exemption and

to enable the adversary system to operate by giving the requester as much information as

possible, on the basis of which the requester's case may be presented to the trial court".)

(citations omitted).

> C.  Defendants failed to correlate specific exemptions with specific information.

Defendants withheld large sections of information, *see, e.g.*, Rodgers Decl. at Attachment

49, whole pages, *see, e.g.*, *id.* at Attachment 40, and entire records, *see, e.g.*, *id.* at Attachment 6,

under multiple claimed exemptions without explaining the particular exemptions that purportedly

apply to particular information.  In *Vaughn*, the Circuit criticized this approach, explaining:

> "[W]e do not and cannot know whether a particular portion is . . . allegedly
> exempt . . . [under one exemption or another exemption].  While it is not
> impossible, it seems highly unlikely that a particular element of the information
> sought would be exempt under both exemptions.  Even if isolated portions of the
> document are exempt under more than one exemption, it is preposterous to
> contend that all of the information is equally exempt under all of the alleged
> exemptions.  It seems probable that some portions may fit under one exemption,
> while other segments fall under another, while still other segments are not exempt
> at all and should be disclosed."

484 F.2d at 827-28.  The Circuit explained that, to solve this problem, "[i]t is vital that the

agency specify in detail which portions of the document are disclosable and which are allegedly

---

[8] Some of the exemptions that Defendants stamped on the records are either indecipherable, *see, e.g.*, Rodgers Decl., Attachment 44 at ORA000009 (redacting information under a claim of "(b )"), or cut off, *see, e.g.*, *id.*, Attachment 22 at JRC OES Supplemental 1 003480 (redacting information under a claim of "(b)(5) and"), leaving Plaintiffs and this Court to speculate about any additional exemptions that Defendants may be claiming.

exempt", by "subdivid[ing] the document under consideration into manageable parts cross-referenced to the relevant portion of the Government justification". *Id.* at 827.

Defendants failed to heed the Circuit's instructions in *Vaughn*. For example, Defendants withheld in full a seven page "JRC Student Interview Summary", *see* Rodgers Decl. at Attachment 6, claiming that all content on every page is exempt under Exemptions 5 and 6, *see* Updated Index at 93-94. However, CDRH produced a less redacted copy of a record with the same title, *see* Rodgers Decl. at Attachment 23, which reveals that Defendants could have (and should have) distinguished between the different types of withheld information by, for example, separating Defendants' questions from the former JRC patient's answers. Other information withheld under multiple claimed exemptions also could have (and should have) been separated into manageable parts. *See*, *e.g.*, Rodgers Decl., Attachment 17 at JRC OES Supplemental 1 002281-413 (withholding in full 133 pages of a draft of the Proposed Ban); Updated Index at 474-75 (entry for Attachment 17 claiming that all content on every page is equally exempt under the DPP and the attorney-client privilege). Defendants' failure to tie specific exemptions in the Updated Index with specific information in the records is improper. *See Dellums v. Powell*, 642 F.2d 1351, 1360 (D.C. Cir. 1980) ("The requirement that the material be presented in manageable segments takes on added meaning and importance when it is remembered that the underlying purpose of the Vaughn index is to permit the District Court to make a rational decision whether the withheld material must be produced . . .").

## IV.    Defendants improperly withheld non-exempt information.

Defendants argue that they withheld information that allegedly was: non-responsive, *see*, *e.g.*, Updated Index at 157; protected by the DPP, *see*, *e.g.*, *id.* at 2; protected by the attorney-client privilege, *see*, *e.g.*, *id.* at 3; personal and private, *see*, *e.g.*, *id.* at 2; and/or compiled for law

enforcement purposes, *see, e.g.*, *id.* at 7.  However, as discussed below, Defendants failed to support their withholdings of information as non-responsive, personal and private, and privileged under the DPP and the attorney-client privilege.[9]

A.    Defendants improperly withheld non-responsive information in responsive
      records.

Defendants withheld a substantial amount of allegedly non-responsive information in responsive records.  Recently, in *American Immigration Lawyers Association*, the Circuit addressed "a question of first impression: if the government identifies a record as responsive to a FOIA request, can the government nonetheless redact particular information within the responsive record on the basis that the information is non-responsive".  830 F.3d at 677.  The Circuit answered in the negative, concluding that "the only information the agency may redact from [a responsive] record is that falling within one of the statutory exemptions", and that there is no such exemption for non-responsive information.  *Id.* at 676-79.

Defendants suggest that Plaintiffs' FOIA requests are unreasonably broad.  *See* Memo. at 22, 24 [ECF No. 25] (complaining about the "immense breadth of Plaintiffs' requests" that "seek vast amounts of information").  Plaintiffs' Requests are not overbroad; at bottom, they only seek information about FDA's regulation of a single device used at a single program, *see generally* Compl. at Exs. A-1 – A-6, F, J; *see also* Memo. at 3, 24 (conceding that Plaintiffs' Requests "seek . . . information related to matters implicated in an ongoing [FDA] rulemaking" and that "JRC is the only entity in the United States known to FDA to currently use ESDs"), as opposed, for example, to a broad request for certain information concerning all drugs, *see, e.g.*, *Pub. Citizen Health Research Grp.*, 185 F.3d at 901 (describing a request for "[a]ll documents

---

[9] In the context of the current summary judgment cross-motions, Plaintiffs refrain from arguing that Defendants improperly withheld responsive records under 5 U.S.C. § 552(b)(7)(C), though Plaintiffs reserve their right to advance this argument in the future.

concerning pre-clinical and clinical studies for all prescription drugs which had a discontinuance

of the clinical trials because of deaths or serious injury of patients or because of safety concerns

from preclinical studies") (quotation omitted).  In any event, despite the supposedly

objectionable breadth of Plaintiffs' Requests, Defendants improperly withheld information in

approximately 458 responsive records on the basis that such information is non-responsive.[10]

*See*, *e.g.*, Updated Index at 157-58 (withholding non-responsive information in responsive

email); *see also Am. Immigration Lawyers Ass'n*, 830 F.3d at 672, 79-80 (holding, "it was

improper for [the agency] to redact non-responsive information from responsive records").

      B.     Defendants improperly withheld records under the DPP.

Defendants adopted an overbroad interpretation of the DPP to justify withholding

approximately 1,871 records.  *See generally* Updated Index.  FOIA exempts from disclosure

"inter-agency or intra-agency memorandums or letters that would not be available by law to a

party other than an agency in litigation with the agency".  5 U.S.C. § 552(b)(5).  Exemption 5

incorporates the DPP, which "covers documents reflecting advisory opinions, recommendations

and deliberations comprising part of a process by which governmental decisions and policies are

formulated".  *Klamath Water Users Prot. Ass'n*, 532 U.S. at 8 (quotation omitted).

"To qualify for protection under the DPP, the agency must show that the document is

both (1) predecisional and (2) deliberative".  *Elec. Frontier Found.*, 826 F.Supp.2d at 165 (citing

*Nat'l Ass'n of Home Builders*, 309 F.3d at 39).  Predecisional records are those that "were

---

[10] This number is likely under-inclusive, as Defendants have reserved their right to argue that
additional responsive records contain non-responsive information to the extent that the
responsive records themselves include information redacted as non-responsive, *see* Rodgers
Decl., Attachment 9 at 1, and as numerous responsive records include information marked as
non-responsive, even though the corresponding entries in the Updated Index do not reflect those
claims, *see*, *e.g.*, *id.* at Attachment 40; Updated Index at 554-55 (entry for Attachment 40);
Rodgers Decl. at Attachment 41; Updated Index at 595-96 (entry for Attachment 41); Rodgers
Decl. at Attachment 42; Updated Index at 752-53 (entry for Attachment 42).

created [a]ntecedent to the adoption of an agency policy", *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (quotation omitted), and that were "'prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made", *Ctr. for Biological Diversity*, 279 F.Supp.3d at 146 (quoting *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992)).  A deliberative communication is one that is "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters", *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975), and so is "'intended to facilitate or assist development of the agency's final position on the relevant issue'", *Ctr. for Biological Diversity*, 279 F.Supp.3d at 146 (quoting *Nat'l Sec. Archive v. C.I.A.*, 752 F.3d 460, 463 (D.C. Cir. 2014)).

        If records "neither make recommendations for policy change nor reflect internal deliberations on the advisability of any particular course of action, they are not predecisional and deliberative".  *Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 875 (D.C. Cir. 2010).  In order to be exempt, records "must bear on the formulation or exercise of agency policy-oriented *judgment*".  *Petroleum Info. Corp.*, 976 F.2d at 1435 (citations omitted).  Thus, the privilege "'does not protect a document which is merely peripheral to actual policy formation'".  *Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 161 F.Supp.3d 120, 130 (D.D.C. 2016) (quoting *Ethyl Corp. v. E.P.A.*, 25 F.3d 1241, 1248 (4th Cir. 1994)).

        Defendants incorrectly imply that the protection offered by the DPP increases when a requester threatens litigation against an agency.  *See* Memo. at 25.  Defendants provide no legal authority to support this novel proposition.  Rather, the protection offered by the privilege already adequately accounts for potential litigation.  *See, e.g.*, *Ctr. for Biological Diversity*, 279 F.Supp.3d at 146 (explaining that the privilege "is intended to protect 'open and frank

discussion' among government officials to enhance the quality of agency decisions" and "'rests on the obvious realization that that officials will not communicate candidly among themselves if each remark is a potential item of <u>discovery</u> and front page news'") (quoting *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015)) (emphasis added).

1.    *Defendants failed to justify their DPP claims.*

Defendants failed to provide enough information for Plaintiffs and this Court to evaluate each of their DPP claims.  "The need to describe each withheld document when Exemption 5 is at issue is particularly acute because 'the [DPP] is so dependent upon the individual document and the role it plays in the administrative process'", *Animal Legal Def. Fund, Inc. v. Dep't of Air Force*, 44 F.Supp.2d 295, 299 (D.D.C. 1999) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980)), and, accordingly, "to sustain its burden of showing that records were properly withheld under Exemption 5, an agency must provide . . . precisely tailored explanations for each withheld record at issue", *Nat'l Sec. Counselors v. C.I.A.*, 960 F.Supp.2d 101, 188 (D.D.C. 2013) (Howell, J.)  Because "[a] document's context is the *sine qua non* of the court's assessment of whether or not the document is predecisional and deliberative", *Ctr. for Biological Diversity*, 279 F.Supp.3d at 148 (quotation omitted), an agency must, "at the very least", provide, "for each . . . document withheld in part or in full", the following context:

> "(1) "'what deliberative process is involved,'" *Senate of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 585-86 (D.C. Cir. 1987) (quoting *Coastal States*, 617 F.2d at 868), (2) "'the role played by the documents in issue in the course of that process,'" *id.* (quoting *Coastal States*, 617 F.2d at 868), and (3) "'the nature of the decisionmaking authority vested in the office or person issuing the disputed document[s] and the positions in the chain of command of the parties to the documents'", [*Elec. Frontier Found.*, 826 F.Supp.2d at 168] (quoting *Arthur Andersen & Co. v. Internal Revenue Serv.*, 679 F.2d 254, 258 (D.C. Cir. 1982))."

*Id.* at 147.  Defendants' failed to provide at least the first and third categories of information.

a.      Defendants failed to describe what deliberative process is involved.

Defendants failed to satisfy their burden of identifying the deliberative process applicable to each allegedly privileged record.  *100Reporters LLC v. U.S. Dep't of Justice*, 248 F.Supp.3d 115, 152 (D.D.C. 2017).  "'[T]o approve exemption of a document as predecisional, a court must be able to pinpoint an agency decision or policy to which the document contributed'".  *Id.* at 151 (quoting *Senate of P.R.*, 823 F.2d at 585).  Without knowing the relevant deliberative process, a court cannot analyze the privilege claim.  *See id.* at 152.

Many of Defendants' descriptions of purported deliberative processes are inadequate. For instance, Defendants claim that many records, including records from as early as 2010, are predecisional because they are dated "prior to a final decision being made about how (if at all) to move forward with compliance measures against JRC".  *See, e.g.*, Updated Index at 1065-66.  As FDA has not yet published a final rule implementing the Proposed Ban, every responsive record for at least the past eight years would qualify as predecisional under this supposed justification. Defendants' failure "to point to subsidiary decisions that fall underneath th[is] nebulous umbrella process" is improper.  *100Reporters LLC*, 248 F.Supp.3d at 153-54 (rejecting agency's "view of the deliberative process at issue [that] would create a four-year umbrella effectively shielding all agency action from review without accounting for any subsidiary decisions"); *see also Elec. Frontier Found.*, 826 F.Supp.2d at 168 (rejecting agency's insufficiently specific justification for withholding based on deliberative process that "occurred on various instances" over two years).

Another example is Defendants' claim that many records are deliberative because they "contain[] information about the status of agency work", *see, e.g.*, Updated Index at 1749-50, or because they "contain[] agency employees' contemporaneous thoughts and opinions about plans for work that should be done to support FDA's efforts", *see, e.g.*, *id.* at 1766-67.  These

justifications fail to show that "the withheld information 'sufficiently reflect[s] the give and take

of the deliberative process to warrant continued redaction'".  *James Madison Project v. Dep't of*

*Justice*, 302 F.Supp.3d 290, 298 (D.D.C. 2018) (quoting *Pub. Citizen, Inc.*, 598 F.3d at 877)

(rejecting agency's descriptions of withheld information as "an update on the status" of agency

action and as "discussions and assessments regarding what next steps [the agency] should take").

Defendants' failure to describe sufficiently the deliberative process is improper.  *See id.* at 299

(denying agency's summary judgment motion with respect to information withheld pursuant to

the privilege due to the inadequacy of the agency's descriptions of deliberative processes at

issue); *see also 100Reporters LLC*, 248 F.Supp.3d at 153-54 (same).

> b.  Defendants failed to describe the nature of the decisionmaking
> authority vested in the office or person issuing the disputed
> documents and the positions in the chain of command of the
> parties to the documents.

Defendants also failed to carry their burden of identifying the identities, positions, and

responsibilities of the individuals associated with withheld records in their Updated Index.  *See*

*Conservation Force v. Jewell*, 66 F.Supp.3d 46, 61-62 (D.D.C. 2014).  Information about

"(1) the original sender(s) and recipient(s), (2) the nature of the decisionmaking authority vested

in each . . . recipient, or (3) the . . . participants' relative positions in the agency's chain-of-

command" is critical contextual information for a DPP claim.  *Elec. Frontier Found.*, 826

F.Supp.2d at 170 (citing, *inter alia, Arthur Andersen & Co.*, 679 F.2d at 258).  That is so because

a record "'from a junior to a senior is likely to reflect his or her own subjective opinions and will

clearly have no binding effect on the recipient'", whereas a record "'from [a] senior to [a] junior

is far more likely to manifest decisionmaking authority'".  *Conservation Force*, 66 F.Supp.3d at

61 (quoting *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991)).

Defendants omitted information about the identities of the authors and/or recipients of records in many of the entries in their Updated Index. For example, for one record withheld in full under a DPP claim, Defendants do not identify the author of the record (even though the record is a Microsoft Excel file that likely has associated metadata) or any recipient of this record (even though the record was attached to an email). *See*, *e.g.*, Updated Index at 128-30. Defendants' failure to identify authors and recipients is improper. *See Elec. Frontier Found.*, 826 F.Supp.2d at 171 (determining that *Vaughn* index that failed to "specif[y] the names . . . of the authors or recipients" was deficient).

Moreover, Defendants omitted information about the positions and responsibilities of the authors and recipients (other than some attorneys) of the records. For instance, Defendants withheld all of the body of a June 3, 2016 email from Jocelyn Samuels in HHS's OS to Bruce Kuhlik in FDA's Office of the Commissioner ("OC"), *see* Rodgers Decl., Attachment 13 at JRC OES Supplemental 1 004501, under a DPP claim, *see* Updated Index at 755-57. The *Vaughn* entry for that record does not reveal the positions or responsibilities of Ms. Samuels or Mr. Kuhlik. *See id.* Nonetheless, because the redacted email is traveling from a parent agency to a subsidiary agency, it "is far more likely . . . to be the denouement of the decisionmaking rather than part of its give-and-take". *Access Reports*, 926 F.2d at 1195 (citations omitted). Defendants' failure to provide details about the positions and responsibilities of the individuals associated with withheld records is improper. *See Nat'l Sec. Counselors*, 960 F.Supp.2d at 190 (holding that, without information on staff positions and responsibilities, "the Court is unable to conclude that . . . [records] were both deliberative and predecisional").

2.      *Defendants improperly withheld information under the DPP.*

Defendants also withheld non-exempt records under unfounded DPP claims.  Defendants have, at a minimum, withheld draft records as well as non-draft records that are not predecisional and/or that contain purely factual content, as shown, in part, by inconsistently redacted copies of the same records.  Such withholdings are improper.

a.      Defendants improperly withheld drafts.

Defendants apparently withheld, under the DPP, draft records simply because they are drafts.  *See*, *e.g.*, Rodgers Decl., Attachment 8 at 1 ("Productions of records responsive to previous FOIA requests have included redacted drafts of agency documents.  Most of these documents were withheld in full or in large part pursuant to the [DPP].") (citation omitted); *see also id.* at Attachment 60 (withholding 116 pages of draft document under privilege claim); Updated Index at 992-93 (*Vaughn* entry asserting that Attachment 60 "is pre-decisional because it is a draft, meaning that it occurred prior to the agency establishing its final position on the subject matter discussed in the document").  "[S]imply designating a document as a 'draft'" does not make that record *per se* exempt under the privilege.  *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F.Supp.2d 1, 14 (D.D.C. 2004) (citing *Arthur Andersen & Co.*, 679 F.2d at 257).  The privilege does not protect drafts that are not actually predecisional and deliberative, as no privilege ever attaches to such drafts.  *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of State*, 955 F.Supp.2d 4, 19 (D.D.C. 2013).  The privilege also does not protect drafts that are "'adopted formally or informally, as the agency position on an issue'", as that adoption would "involve the exposure of the withheld document[] to third parties", thereby destroying the privilege.  *Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F.Supp.2d 252, 261 (D.D.C. 2004) (quoting *Arthur Andersen & Co.*, 679 F.2d at 257-58).

Defendants withheld draft records that are not predecisional. For example, Defendants withheld a Microsoft PowerPoint presentation entitled "Electrical Stimulation Devices (ESDs) for Self-Injurious Behavior (SIB) and Aggressive Behavior (AB) Section 516 Proposed Rule to Ban", dated December 10, 2015. Rodgers Decl. at Attachment 15. Defendants claim that this record is predecisional because "it is a draft" and "discusses legal and policy considerations of potential agency action regarding ESDs, including a possible ban, before the agency made a final decision". Updated Index at 531-33.

Assuming that this record is actually a draft,[11] it is unlikely that this record is predecisional. This presentation is dated more than a year <u>after</u> Defendants began drafting the Proposed Ban, *see* Rodgers Decl., Attachment 11 at CDRH_Production_2 – 006958, and a copy of this presentation was attached to an email chain to which a 132 page draft of the Proposed Ban was also attached, *see id.* at Attachments 16-17. Thus, it is more likely that this presentation explained Defendants' then-existing policy to proceed with the Proposed Ban, *see Heartland All. for Human Needs & Human Rights v. U.S. Dep't of Homeland Sec.*, 291 F.Supp.3d 69, 81 (D.D.C. 2018) ("'A document that does nothing more than explain an existing policy cannot be considered deliberative.'") (quoting *Pub. Citizen, Inc.*, 598 F.3d at 876), than that it played a role in the decision about whether to proceed with the Proposed Ban, *see Ctr. for Biological Diversity*, 279 F.Supp.3d at 150 n.17 ("[N]otwithstanding its status as a 'draft,' a document that does not reflect the genuine evolution of an agency's decisionmaking process . . . is not entitled to protection under the [DPP]".) (quotation omitted).

---

[11] This record may <u>not</u> be a draft, as it appears to be the same as another record, Rodgers Decl. at Attachment 16, which Defendants do not describe as a draft in either their declarations, *see* Kotler Decl. at ¶ 44, or the corresponding *Vaughn* entry, Updated Index at 142-44.

Moreover, Defendants withheld drafts or parts of drafts that FDA ultimately adopted. For most of the records that Defendants withheld as drafts, Defendants failed to "indicate whether the draft was (1) adopted formally or informally, as the agency position on an issue, or (2) used by the agency in its dealings with the public". *Heffernan v. Azar*, --- F.Supp.3d ---, 2018 WL 3150214, at *20 (D.D.C. June 27, 2018) (quotation omitted).  In the rare instances where Defendants addressed this issue, they acknowledged that they may have withheld information that was ultimately adopted. *See, e.g.*, Updated Index at 139-40 (indicating that portions of draft document "may or may not have been adopted in the government's final document").  Defendants were required to provide this missing information. *Wilderness Soc'y*, 344 F.Supp.2d at 14.

Defendants' omission of this crucial information masks the improper withholding of drafts.  For example, Defendants withheld in full, *see* Rodgers Decl. at Attachment 14, a "Draft Form 483" of FDA's observations during an inspection of JRC,[12] *see* Updated Index at 1607.  However, Defendants do not indicate whether the observations in this record were adopted as FDA's final position on this issue, or whether Defendants shared the observations in this document with members of the public, such as JRC.  *See generally id.*  As another example, Defendants withheld in full a draft of the Proposed Ban, without indicating whether that draft, or any portions thereof, were ultimately adopted by FDA.  *See* Rodgers Decl. at Attachment 17; *see also* Updated Index at 474-75 (entry for Attachment 17).  As a further example, Defendants withheld many draft "talking points", *see, e.g.*, Updated Index at 288-89, and "the likelihood that . . . talking points . . . have been relied upon or adopted as official positions after their

---

[12] Defendants incorrectly assert that they only withheld this record in part. *Compare* Rodgers Decl. at Attachment 14 (a record withheld in full) *with* Updated Index at 1607 (entry asserting that Attachment 14 was partially released).

preparation"—and thus publicly shared—"is particularly high",[13] *Elec. Frontier Found.*, 826 F.Supp.2d at 170.  Defendants' failure to indicate whether any parts of drafts were ultimately publicly disclosed is improper.  *See Wilderness Soc'y*, 344 F.Supp.2d at 14 (ordering production of all draft documents or amendment of *Vaughn* index where no entries indicated whether draft documents were adopted by agency or used to interact with public).

b. Defendants improperly withheld non-draft records.

Defendants improperly withheld non-draft records under the DPP.  First, Defendants improperly withheld postdecisional records by focusing on the dates on which decisions were <u>publicized</u> rather than <u>made</u>.  *See, e.g.*, Updated Index at 1799-1800.  "The timing of a record in relation to the adoption of agency policy is a crucial factor", *100Reporters LLC*, 248 F.Supp.3d at 152 (citing *Judicial Watch, Inc.*, 449 F.3d at 151), because "post-decisional documents often represent the agency's position on an issue, or explain such a position, . . . which Congress intended by FOIA to make accessible to the public", *Arthur Andersen & Co.*, 679 F.2d at 257 (quotation omitted).

For example, Defendants apparently had decided to proceed with the Proposed Ban by the Fall of 2014, *see* Rodgers Decl. at Attachment 11 (indicating that, by October of 2014, FDA was "late in the game" of drafting the Proposed Ban), even though the Proposed Ban was not published until April 25, 2016, 81 Fed. Reg. at 24386.  However, Defendants withheld records generated during the Summer of 2015, including records about purported experts and clinicians, *see, e.g., id.* at Attachment 47 (record dated August 24, 2015), on the grounds that such records

---

[13] Worse, Defendants withheld final versions of talking points, *see, e.g.*, Rodgers Decl. at Attachment 63; Updated Index at 794 (entry for Attachment 63), much of the content of which appears to be factual in nature, *see* Rodgers Decl. at Attachment 64 (unredacted copy of Attachment 63 revealing that Attachment 63 redacted factual information, including that JRC received clearance for the original GED device in 1994).

are "pre-decisional" because they were generated "before the agency had made a final decision about action regarding ESDs",[14] Updated Index at 26-27 (entry for Attachment 47).  While it may be true that a final decision on a final ban had not yet been made, the relevant final decision was whether to proceed with the Proposed Ban, *see 100Reporters LLC*, 248 F.Supp.3d at 153-54 (requiring agency to identify relevant subsidiary decision); *see also* Rodgers Decl. at Attachment 48 (record dated July 27, 2015); Updated Index at 591-92 (entry claiming that Attachment 48 "is pre-decisional because it occurred prior to FDA taking action regarding ESDs (such as proposing a rule)"), and Defendants had clearly already made that decision, *see, e.g.*, Rodgers Decl. at Attachment 46 (indicating that, by April of 2015, "FDA ha[d] decided to proceed with drafting [the Proposed Ban]").

Second, Defendants improperly withheld purely factual information.  Though the distinction between fact and opinion is not determinative under Exemption 5, *Ctr. for Biological Diversity*, 279 F.Supp.3d at 146-47, "'factual information generally must be disclosed'", and "'materials embodying officials' opinions are ordinarily exempt'", *id.* at 146 (quoting *Petroleum Info. Corp.*, 976 F.2d at 1434).  Thus, "[p]urely factual reports and scientific studies cannot be cloaked in secrecy" by this privilege.  *Id.* at 150.  Nonetheless, Defendants withheld purely factual information, including, for example, a briefing that was withheld in full, *see* Rodgers Decl. at Attachment 51, concerning "background" information about this issue, *see* Updated Index at 773-74 (entry for Attachment 51).  Defendants also withheld purely scientific

---

[14] While Defendants also withheld some records concerning purported experts, including an individual named "Gary", *see* Rodgers Decl., Attachment 49 at 2016-7184OCC00153, on the grounds that such records were allegedly predecisional because they were generated "before any decision was made about which expert witnesses to work with", Updated Index at 47-49 (entry for Attachment 49), Defendants inconsistently applied this rationale, disclosing other purported experts before a final decision had been made, *see* Rodgers Decl., Attachment 50 at JRC OES Supplemental 1 003619-20 (identifying two potential experts), as well as purported expert "Gary LaVigna" after a final decision had been made, *id.*, Attachment 47 at 2016-7184OCC00100.

information, including, for example, a "list of literature related to the aversive issue", Rodgers

Decl., Attachment 50 at JRC OES Supplemental 1 003619, 21-25; *see also* Updated Index at

595-96 (entry for Attachment 50).

Defendants' improper withholdings of non-exempt information under the privilege is

revealed by their inconsistent redactions of copies of the same records.  For example, Defendants

produced two copies of an email that Kimberly Brown Smith sent to Jacqueline Francis on

January 28, 2013 at 4:11 PM.  *See* Rodgers Decl. at Attachments 52-53.  In one copy,

Defendants redacted all of the email except for the first sentence and the first half of the second

sentence in the first paragraph under the privilege.  *See id.* at Attachment 53; *see also* Updated

Index at 124-25 (entry for Attachment 53).  However, an unredacted copy of the same email

reveals that the redacted content is not, in fact, privileged, as, for example, the second half of the

second sentence in the first paragraph merely states that JRC allegedly "uses an uncleared device

called the GED to administer electric shocks to students with psychiatric and developmental

disabilities".  Rodgers Decl., Attachment 52 at CDRH_Production_2 – 000039.  This purely

factual information is not predecisional, as FDA communicated this position to JRC nearly two

years earlier.  *See id.*, Attachment 37 at NWE-DO&DFOI00002; *see also Coastal States Gas*

*Corp.*, 617 F.2d at 867 ("[T]he [DPP] applies only to the 'opinion' or 'recommendatory' portion

of the report, not to factual information which is contained in the document".) (citing *E.P.A. v.*

*Mink*, 410 U.S. 73 (1973)).

Defendants' unavailing response is that inconsistent releases reflect "discretionary

releases of information that could have been protected under the [DPP]".  Updated Index at 1.

However, as shown by the above example, Defendants had no discretion whether to release the

information because such information was <u>not</u> protected under the privilege.  Moreover,

Defendants have assembled a significant collection of inconsistently redacted records for this

Court's review.  *See* Rodgers Decl. at Attachments 24-25, 52-53, 63-64, 65-71.[15]  These

inconsistencies reveal a substantial amount of improperly withheld information that calls into

question Defendants' entire approach to the privilege.

C.    Defendants improperly withheld records under the attorney-client privilege.

Defendants improperly withheld non-exempt records under the attorney-client privilege.

Exemption 5 incorporates this privilege.  *Mead Data Cent. v. U.S. Dep't of Air Force*, 566 F.2d

242, 252 (D.C. Cir. 1977).  The privilege "applies to 'a confidential communication between

attorney and client if that communication was made for the purpose of obtaining or providing

legal advice to the client'".  *Am. Oversight*, 311 F.Supp.3d at 341 (quoting *In re Kellogg Brown

& Root, Inc.*, 756 F.3d 754, 757 (D.C. Cir. 2014)) (citation omitted).

Defendants failed to provide Plaintiffs or this Court with sufficient information to analyze

their attorney-client privilege claims.  To justify withholding a record under the privilege, an

agency "must, at the very least, (1) describe with sufficient particularity the nature of the legal

issue or issues for which advice was sought; (2) explain whether the communications sought

legal advice, conveyed legal advice, or both; and (3) provide evidence that the communications

were confidential".  *Ctr. for Biological Diversity*, 279 F.Supp.3d at 152 (citing, *inter alia*,

*Coastal States Gas Corp.*, 617 F.2d at 862-63).  Defendants failed to provide any evidence that

most, if not all, of the withheld information was confidential.  *See*, *e.g.*, Updated Index at 18-19

(asserting privilege over an outline of an interview with a former JRC patient drafted by an

agency attorney without any indicating that the outline was kept confidential).  Further,

Defendants generally justified these withholdings merely by stating that the redactions "contain

---

[15] Each of Attachments 65 through 71 are a set of inconsistently redacted records, with an improperly redacted record followed by a less redacted copy of that record.

information provided from agency employees to agency counsel for purposes of obtaining legal advice". *Id.* at 20-21. "This meager information, however, is insufficient to conclude that the documents" were properly withheld. *Ctr. for Biological Diversity*, 279 F.Supp.3d at 152-53 (rejecting as inadequate agency's privilege justifications claiming "that the withheld information 'contains communications . . . relating to potential legal issues'") (quotation omitted).

Defendants' attorney-client privilege claims are also largely entangled with their DPP claims, further frustrating review by Plaintiffs and this Court. For example, Defendants withheld almost all slides of a PowerPoint presentation under both privileges, *see* Rodgers Decl. at Attachment 15, despite the fact that counsel only drafted "portions of this presentation", Updated Index at 531-33 (entry for Attachment 15). Had Defendants correlated specific exemptions to specific information, as they were required to do, *Vaughn*, 484 F.2d at 827, they would not have improperly withheld non-exempt information. For example, Defendants withheld all but one sentence of an email that William MacFarland sent to William Maisel on December 19, 2012 at 5:17 PM, *see* Rodgers Decl., Attachment 24 at 2016-7308OCCpart100082, claiming that all of the rest of the email was exempt under both privileges, *see* Updated Index at 78-80 (entry for Attachment 24). However, an inconsistently redacted copy of the same email, *see* Rodgers Decl., Attachment 25 at 2016-7308OCCpart100016, shows that the withheld content, which merely explains that the email forwards a draft letter to interested recipients without requesting legal advice, was not "information provided from agency employees to agency counsel for purposes of obtaining legal advice", Updated Index at 80.

Defendants additionally withheld non-exempt information under the attorney-client privilege, apparently automatically claiming the privilege whenever an attorney was connected to a record. *But see Ctr. for Biological Diversity*, 279 F.Supp.3d at 152 (explaining that sharing a

record with an attorney "does not magically render a communication privileged").  For instance, Defendants withheld in part one email, *see* Rodgers Decl. at Attachment 10, claiming privilege because "redacted segments contain information provided from agency employees to agency counsel for purposes of obtaining legal advice", Updated Index at 732-33.  However, the email is from counsel to others, *see id.*, and, in any event, the context of the email, in which counsel reports "[g]ood news", Rodgers Decl. at Attachment 10, makes it is unlikely that counsel is reporting information that was provided for purposes of obtaining legal advice.  Similarly, Defendants withheld in part an email from an HHS employee to a FDA attorney, *see* Rodgers Decl. at Attachment 48, claiming that it "contain[ed] information provided . . . for purposes of obtaining legal advice", Updated Index at 591-92.  However, Defendants did not produce a response by the FDA attorney to this supposed request for legal advice by the HHS employee, nor did Defendants explain why a FDA attorney was providing legal advice to an HHS employee.  *See Elec. Privacy Info. Ctr. v. Dep't of Justice*, 584 F.Supp.2d 65, 78-80 (D.D.C. 2008) (concluding that agency's justifications were "too vague" where they did not "indicate what agency . . . is the client for purposes of the attorney-client privilege").

       D.      <u>Defendants improperly withheld records under personal privacy claims.</u>

Defendants inappropriately applied the personal privacy exemption, thereby improperly withholding responsive records.  FOIA exempts "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy".  5 U.S.C. § 552(b)(6).  Exemption 6 covers "those 'detailed Government records on an individual which can be identified as applying to that individual'", *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1124 (D.C. Cir. 2004) (quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S.

595, 602 (1982)), and "bits of personal information, such as names and addresses, the release of

which would create a palpable threat to privacy",[16] *Judicial Watch, Inc.*, 449 F.3d at 152.

For information that qualifies for protection under Exemption 6, courts must "consider[]

the significance of the privacy interest at stake".  *Ray*, 502 U.S. at 175.  If there is "no significant

privacy interest", then "FOIA demands disclosure".  *Nat'l Ass'n of Ret. Fed. Emps. v. Homer*,

879 F.2d 873, 874 (D.C. Cir. 1989).  If there is more than a *de minimis* privacy interest, then

courts must determine "whether the public interest in disclosure outweighs the individual privacy

concerns".[17]  *Multi Ag Media LLC*, 515 F.3d at 1230 (quotation omitted).  "[T]he balance" is

tilted "in favor of disclosure".  *Morley*, 508 F.3d at 1127 (quotation omitted); *see also Jurewicz

v. U.S. Dep't of Agric.*, 741 F.3d 1326, 1332 (D.C. Cir. 2014) ("FOIA's strong presumption in

favor of disclosure is at its zenith in th[e] Exemption 6 analysis".) (quotations omitted).

"[U]nless the invasion of privacy is 'clearly unwarranted', the public interest in disclosure must

prevail".  *Ray*, 502 U.S. at 178.

Here, Defendants withheld certain purportedly exempt personal information.[18]  *See*, *e.g.*,

Updated Index at 93-94.  Defendants improperly failed to provide adequate justifications for

these withholdings, and they have improperly withheld non-exempt information.

---

[16] In the context of the current summary judgment cross-motions, Plaintiffs refrain from arguing that the information that Defendants withheld under Exemption 6 does not qualify as "similar files", though Plaintiffs reserve their right to advance this argument in the future.

[17] The relevant public interest is not "the use for which the requestor seeks the information", *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1231 n.2 (D.C. Cir. 2008) (citation omitted), but rather "'the extent to which disclosure [of requested files] would serve the core purpose of the FOIA, which is contribut[ing] significantly to public understanding of the operations or activities of the government'", *id.* at 1231 (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994)) (emphasis omitted).

[18] Plaintiffs challenge all of Defendants' Exemption 6 withholdings except for Defendants' redactions of: meeting passcodes, *see*, *e.g.*, Updated Index at 4-6; telephone numbers, *see*, *e.g.*,

1.      *Defendants failed to justify their personal privacy claims.*

Defendants did not sufficiently describe the competing individual and public interests.

Exemption 6 "does not categorically exempt" information, as the interests "may vary depending

on the context".  *Am. Immigration Lawyers Ass'n*, 830 F.3d at 675 (quotation omitted).  Thus, a

categorical approach to withholding is only permissible if "the balancing analysis under

Exemption 6 would yield a uniform answer across the entire proffered category, regardless of

any variation among the individual records or persons falling within it".  *Id.*

Defendants impermissibly adopted a categorical approach to Exemption 6, even though

the interests in the withheld records are highly variable.  Defendants have withheld information

concerning: (1) individuals who publicly shared their own information and opinions, *see*, *e.g.*,

Rodgers Decl., Attachment 26 at NWE-DO&DFOI010019 (redaction of the name of an

individual who complained to FDA about JRC's GED and stated that she would be "sharing this

issue with social media such as Face Book to make the public aware"); (2) individuals who

sought to convince FDA to ban ESDs, *see*, *e.g.*, *id.*, Attachment 27 at OES000048 (redaction of

the name of a commenter on FDA's Proposed Ban); and (3) individuals who neither publicly

shared their own information nor sought to influence FDA's decisionmaking process, *see*, *e.g.*,

*id.*, Attachment 28 at NWE-DO&DFOI004293 (redactions of treatment records of twenty JRC

patients receiving GED treatment attached to letter from JRC to FDA).

In an attempt to justify these diverse withholdings, Defendants employ the same

categorical terms that amount to no more than the requisite legal conclusion that "the disclosure

of [such information] would constitute a clearly unwarranted invasion of personal privacy".  5

---

*id.* at 56; email addresses, *see*, *e.g.*, *id.* at 6; personal plans, *see*, *e.g.*, *id.* at 12; names of JRC's
lower-level employees, *see*, *e.g.*, *id.* at 1048-49; and medical records of JRC patients provided by
JRC to Defendants, *see*, *e.g.*, *id.* at 1062-63.

U.S.C. § 552(b)(6).  With respect to the first example above, Defendants assert that there is little

public interest in the complainant's redacted name, and that any public interest in disclosure is

outweighed by the individual interest in privacy.  *See* Updated Index at 1502-04.  As to the

second example above, Defendants offer no analysis of the public's interest in disclosure.  *See id.*

at 146; *see also* Kotler Decl. at ¶ 49; *Bartko v. U.S. Dep't of Justice*, --- F.3d ---, 2018 WL

3673936, at *7 (D.C. Cir. Aug. 3, 2018) ("[The government] cannot issue a blanket proclamation

that a loss of privacy would be 'unwarranted' without considering whether there is a public

interest that might well warrant it".) (citation omitted).  For the third example above, Defendants

correctly conclude that the JRC patients' interest in privacy outweighs the public's interest in

disclosure.  *See* Updated Index at 1062-63; *see also* Declaration of Barbara A. Recupero

("Recupero Decl.") at ¶ 28 [ECF No. 24-7].

      Defendants utterly failed to distinguish between the different interests that are at issue in

the above examples and the other withheld records.  It is likely that an individual, like the

complainant in the first example above, who promised to publish her identity and accusations on

social media has less of an interest in keeping her information private than a JRC patient who has

never willingly publicized her identity and medical information.  Moreover, though the public

has a cognizable interest in the disclosure of all of Defendants' information about ESDs, as

elaborated below, it is likely that the public has a greater interest in the identity of an individual

who publicly claims to have personal knowledge that ESDs are dangerous and ineffective and

personal experience with safe and effective alternative treatments[19] than in the disclosure of the

---

[19] The public's interest in the disclosure of this commenter's identity is likely even greater due to
the fact that it conflicts with FDA's conclusion that there is evidence suggesting that ESDs
reduce SIB and AB in some patients, and with the unanimous conclusion at the Panel Meeting
that "a specific subpopulation of patients exhibiting SIB or AB exists for whom pharmacological
and behavioral treatment options other than ESDs are inadequate". 81 Fed. Reg. at 24406.

identity of a patient receiving ESD treatment who has never publicly commented on such
treatment.  Defendants have improperly failed to make any showing, let alone a sufficient
showing, that the balancing analysis under Exemption 6 would yield a uniform answer across
these various records.  *See*, *e.g.*, *Am. Immigration Lawyers Ass'n*, 830 F.3d at 674-76
(concluding that agency failed to carry its burden where it sought to justify its withholdings "in
purely categorical, across-the-board terms").

2.  *Defendants improperly withheld non-exempt records under Exemption 6.*

Defendants impermissibly withheld non-exempt information under Exemption 6,
including, but is not limited to, the identities, medical conditions, and/or treatment histories of
individuals who publicized such details themselves and/or who encouraged Defendants to ban
ESDs.  These individuals include, among others, three former JRC patients, one former JRC
employee, a public commenter on the Proposed Ban, and an individual who filed a complaint
against JRC with FDA.  Even if Defendants had provided sufficient information to evaluate these
exemptions—and they have not—Defendants have failed to adequately justify withholding
information about individuals who willingly injected themselves into the public debate on ESDs.

Defendants failed to demonstrate that the disclosure of personal information "'would
compromise a substantial . . . privacy interest'" of individuals who have already publicly
disclosed their own information.  *Am. Oversight*, 311 F.Supp.3d at 345 (quoting *Am.
Immigration Lawyers Ass'n*, 830 F.3d at 673-74).  The withheld information is not "categorically
exempt" under Exemption 6 because "the privacy interest at stake may vary depending on the
context in which it is asserted".  *Judicial Watch, Inc.*, 449 F.3d at 153 (quotation omitted).
Instead, the significance of the privacy interest "depends upon the characteristics revealed . . .
and the consequences likely to ensue".  *Nat'l Ass'n of Ret. Fed. Emps.*, 879 F.3d at 877.

Here, in 2013 and 2014, "FDA clinicians interviewed three individuals formerly on ESDs at JRC by phone". 81 Fed. Reg. at 24393. In some of the released records, Defendants disclosed the identities and medical information of two of these three former adult JRC patients: Jennifer Msumba and Hillary Cook.[20]  *See* Rodgers Decl., Attachment 18 at CDRH_Production_2 – 006674 (disclosing Ms. Msumba's identity and her medical information); *see also id.* at Attachment 29 (showing that FDA interviewed Ms. Msumba on January 29, 2013); *id.* at Attachment 19 (disclosing Ms. Cook's identity). However, in other records, Defendants improperly withheld comparable information under Exemption 6. *See*, *e.g.*, *id.* at Attachment 6 (record withheld in full under Exemption 6); *see also* Updated Index at 93-94 (indicating that Attachment 6 is a document entitled, "JRC Student Interview Summary", dated February 1, 2013, three days after FDA interviewed Ms. Msumba).

Defendants have not shown that Ms. Msumba has a substantial privacy interest in such information. She has spoken repeatedly and publicly about her alleged experiences at JRC. In January 2013, she spoke with an anti-aversive advocate. *See* Rodgers Decl. at Attachment 22. In April 2014, she testified publicly by video appearance at the Panel Meeting, and she submitted a public comment to FDA. *See* Cross-Statement at ¶ 21. After the Panel Meeting, she was interviewed by a national news outlet and published at least two online videos. *See id.* at ¶ 23.

Defendants similarly have not shown that Ms. Cook has a substantial privacy interest in such information. She too repeatedly and publicly shared her personal information. Before the Panel Meeting, she was interviewed by a news organization. *See id.* at ¶ 17. Like Ms. Msumba, Ms. Cook testified publicly at the Panel Meeting, *see id.* at ¶ 21, and she was interviewed by a national news outlet after the Panel Meeting, *see id.* at ¶ 24.

---

[20] Ms. Cook is also known as Ian Cook. *See* Cross-Statement at ¶ 17.

Defendants equally failed to demonstrate that other individuals have a substantial privacy interest in the information that Defendants withheld.  For example, in an August 4, 2014 internal email, Defendants redacted the name of a former JRC employee—but not the name of any other member of the public—who was to be featured in a story about JRC that was to be published the next day by CBS's Amy Burkholder.  *See* Rodgers Decl., Attachment 30 at JRC OES Supplemental 1 005553.  Defendants provided no justification for this redaction, *see* Updated Index at 827 (entry for Attachment 30), and there is none.  In the August 5, 2014 article by CBS's Amy Burkholder, the former JRC employee, Gregory Miller, is identified.  *See* Cross-Statement at ¶ 24.  Like Ms. Msumba and Ms. Cook, Mr. Miller made public allegations against JRC at the Panel Meeting.[21]  *See id.* at ¶ 21.  Further, Defendants identified Mr. Miller by name in other released records.  *See, e.g., id.*, Attachment 31 at JRC OES Supplemental 1 005780.

Defendants additionally withheld the name of an individual who submitted a complaint to FDA about JRC's GED.  *See* Rodgers Decl., Attachment 26 at NWE-DO&DFOI010019.  While Defendants do not specify the privacy interest this person allegedly has in her identity, they assert that "any public interest in the[] disclosure [of this information] would be outweighed by the privacy interest in maintaining confidentiality".  *See* Updated Index at 1504.  There is no merit to Defendants' position, given that the individual informed FDA that "she is an advocate and believes this practice [*i.e.*, JRC's use of the GED] should not be taking place and . . . that she w[ould] be sharing this issue with social media such as Face Book to make the public aware of this issue".  Rodgers Decl., Attachment 26 at NWE-DO&DFOI010019.

Defendants redacted the personal information of these and other individuals who have willingly and publicly disclosed their own information.  But Defendants failed to offer this Court

---

[21] Mr. Miller had previously averred that he had never seen nor heard of any cruel, inhumane, or disrespectful treatment of patients by JRC staff.  *See* Rodgers Decl. at Attachments 54-55.

any reason to conclude that these individuals have a substantial interest in their privacy, such as any "consequences likely to ensue" from the re-disclosure of this already-public information. *Am. Oversight*, 311 F.Supp.3d at 346. Thus, Defendants have improperly withheld such information. *See id.* at 346-47 (holding that "the law requires far more [than automatic redaction] to warrant withholding" of information under Exemption 6, and that the disclosure of names did not constitute a clearly unwarranted invasion of personal privacy where the names "plus other identifying information" was already "out of the bag" and publicly available).

Even if these or other individuals have more than a *de minimis* privacy interest, Defendants still failed to demonstrate that such interest outweighs the public's interest in disclosure. The public has a cognizable interest in the disclosure of all of Defendants' information about ESDs. "Because the 'basic purpose of [FOIA] . . . focuses on the citizens' right to be informed about what their government is up to,' information that 'sheds light on an agency's performance of its statutory duties' is in the public interest". *Multi Ag Media LLC*, 515 F.3d at 1231 (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)). For FDA to exercise its statutory authority to ban a device, it has a statutory duty to base its banning decision on "all available data and information". 21 U.S.C. § 360f(a).

Indeed, in the Proposed Ban, FDA claimed to have considered "all available data and information". 81 Fed. Reg. at 24387. FDA expressly relied on information that it received from the former JRC patients interviewed by Defendants, *id.* at 24399, "disability rights organizations", *id.* at 23398, and "other concerned citizens", *id.* The public has a significant interest in both the information that such individuals provided to Defendants, which will reveal the information FDA found credible or not credible and the information FDA chose to highlight

or ignore, and the identities of the individuals who provided information to Defendants, which will reveal whether such individuals have first-hand knowledge or well-documented biases.

For example, Defendants withheld information concerning M.L., the third adult former JRC patient interviewed by Defendants.[22]  Though Plaintiffs have been unable to locate any unredacted records concerning M.L.'s interview, such records may be among the completely redacted records concerning FDA's interviews of the former JRC patients.[23]  *See, e.g.*, Rodgers Decl., Attachment 32 (record entitled, "JRC- Focus areas for interview with former resident"); Updated Index at 132-34 (entry for Attachment 32); Rodgers Decl., Attachment 33 (record entitled, "JRC Suggested Interview Questions"); Updated Index at 130-31 (entry for Attachment 33); Rodgers Decl. at Attachment 6 (record entitled, "JRC Student Interview Summary"); Updated Index at 93-94 (entry for Attachment 6).

FDA alleges that, during their interviews, the former JRC patients claimed that many serious adverse events resulted from GED use.  81 Fed. Reg. at 24398.  FDA expressly credited and relied on these allegations in its Proposed Ban.  *Id.* at 24399 ("Comments from individuals on whom ESDs have been used . . . provide additional support for the risks previously identified, and suggest ESDs may pose . . . additional risks").  While Defendants did not even consider the public interest in some of the records concerning these former JRC patients, *see, e.g.*, Updated Index at 132-34, this information clearly sheds light on FDA's performance of its statutory duties.  Thus, Defendants have failed to show that the public interest in disclosure is outweighed

---

[22] Defendants have disclosed the first name of the former JRC patient and the full name and employer of his guardian, and, from this information, Plaintiffs have been able to ascertain his identity.  *See* Cross-Statement at ¶ 18.

[23] If records concerning Defendants' interviews of any particular former JRC patient are not included among the records withheld by Defendants and/or among a forthcoming CDRH production, Plaintiffs reserve their right to challenge the adequacy of Defendants' searches.

by the individual interest in privacy.  *See Am. Oversight*, 311 F.Supp.3d at 347-49 (concluding

that public's interest in disclosure outweighed individuals' interests in privacy).

**V.      Defendants failed to produce all reasonably segregable non-exempt information.**

Defendants failed to demonstrate "that any reasonably segregable non-exempt parts of

records have been disclosed after redaction of exempt information".  *100Reporters LLC*, 2018

WL 2976007, at *3 (citation omitted).  Defendants' failure to disclose all reasonably segregable

non-exempt information is shown by: their failure to describe the amount and location of non-

exempt information; their failure to disclose additional information after withdrawing certain

exemption claims; and their withholding in full of more than half of the pages they "produced".

FOIA requires Defendants to "'disclose all reasonably segregable, nonexempt portions of

the requested record(s)'".  *Pub. Emps. for Envtl. Responsibility*, 2018 WL 2464463, at *3

(quoting *Assassination Archives & Research Ctr. v. C.I.A.*, 334 F.3d 55, 58 (D.C. Cir. 2003));

*see also* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to

any person requesting such record after deletion of the portions which are exempt . . .").  Indeed,

"[i]t has long been a rule in this Circuit that non-exempt portions of a document must be

disclosed unless they are inextricably intertwined with exempt portions".  *Mead Data Cent., Inc.*,

566 F.2d at 260 (citations omitted); *see also* 21 C.F.R. § 20.22(a) ("If a record contains both

disclosable and nondisclosable information, the nondisclosable information will be deleted and

the remaining record will be disclosed unless the two are so inextricably intertwined that it is not

feasible to separate them . . .").  "So important is this requirement that '[b]efore approving the

application of a FOIA exemption, the district court must make specific findings of segregability

regarding the documents to be withheld'".  *Elec. Frontier Found.*, 826 F.Supp.2d at 173 (quoting

*Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007)) (emphasis omitted).

A *Vaughn* index and declarations averring that agency employees conducted a line-by-line review of redacted records and determined that no reasonably segregable non-exempt information could be produced can be sufficient to satisfy an agency's burden.  *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.2d 771, 776 (D.C. Cir. 2002).  Nonetheless, the agency "'must provide a detailed justification for [the] non-segregability'" of withheld records.  *Elec. Frontier Found.*, 826 F.Supp.2d at 173 (quoting *Johnson*, 310 F.3d at 776).  The agency should provide a description of "what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document".  *Mead Data Cent., Inc.*, 566 F.2d at 261.

Defendants' inadequate segregability claims are based entirely on conclusory statements that they conducted line-by-line reviews of redacted records and produced all reasonably segregable non-exempt information.  *See*, *e.g.*, Recupero Decl. at ¶ 20.  Where, as here, FOIA requests seek records regarding the "straight-forward task of making factual determinations" from scientific evidence, "this conclusory statement is wholly insufficient to meet [the agencies'] burden of demonstrating that nonexempt material related to facts and science cannot be segregated and disclosed".  *Ctr. for Biological Diversity*, 279 F.Supp.3d at 149-50.  Further, the Updated Index does not provide any indication about the amount and location of the non-exempt information included in the redacted records.  *See*, *e.g.*, Updated Index at 531-33 (failing to describe the proportion of "facts [that] are inextricably intertwined with the deliberative analysis" and to identify the slides that contain such facts).  Thus, Defendants failed to provide the minimum information necessary to support their claim that they produced all reasonably segregable non-exempt information.  *See Ctr. for Biological Diversity*, 279 F.Supp.3d at 152 (ordering agency to "provide a particularized explanation of non-segregability for *each* document").

Defendants withheld reasonably segregable factual information.  For example, Defendants withheld all content of one email chain under Exemption 5.  *See* Rodgers Decl. at Attachment 59.[24]  Defendants admit that this record contains "background information", but they fail to indicate how much of the document is background information, and whether that background information is located in one or more of the redacted bullet points in the email chain. *See* Updated Index at 1161; *see also* Rodgers Decl. at Attachment 59.  Defendants should have produced such purely factual background information.  *See Ctr. for Biological Diversity*, 279 F.Supp.3d at 149 ("'Exemption 5 applies only to the deliberative portion of a document and not to any purely factual, non-exempt information the document contains'".) (quoting *Army Times Publ'g Co. v. Dep't of Air Force*, 998 F.2d 1067, 1071 (D.C. Cir. 1993)); *see also Elec. Frontier Found.*, 826 F.Supp.2d at 174 (explaining that court was unable to conduct segregability analysis because documents withheld in full as "background" information "could . . . be purely factual 'background' information not subject to protection under the [DPP]").

Further, the withheld records include redactions that contain reasonably segregable information that Defendants agreed to produce despite their claim that such information is JRC's confidential commercial information.  For example, when Defendants first produced one record, they withheld it in full, claiming numerous exemptions, including the exemption for confidential commercial information at 5 U.S.C. § 552(b)(4) ("Exemption 4").  *See* Rodgers Decl. at Attachment 3.  Defendants justified the Exemption 4 redaction on the basis that the information included "the characteristics and usage of JRC's GED (ESD) devices[ and] information about the numbers and qualification of JRC staff present in the facility".  Index at 126.

---

[24] Defendants claim to have partially released this record, *see* Updated Index at 1161 (entry for Attachment 59), presumably because the email headers and signature blocks are visible.

Defendants then agreed to Plaintiffs' request to remove the redactions purportedly made to protect JRC's confidential commercial information, *see* Rodgers Decl. at Attachment 4, removed such redactions, and reproduced such records, *see id.* at Attachment 5.  Among other records, Defendants re-produced the record described in the preceding paragraph without Exemption 4 redactions,[25] *see id.* at Attachment 6, and Defendants are no longer claiming Exemption 4 for this record, *see* Updated Index at 93-94.  Nonetheless, the record remains entirely redacted, even though the characteristics of JRC's GED devices and the staffing levels at JRC are facts that could be reasonably segregated.  *See Mead Data Cent., Inc.*, 566 F.2d at 260 ("The focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material").

Finally, Defendants withheld in full approximately 12,642 pages of records,[26] *see generally* Updated Index, out of approximately 24,241 pages of produced records, *see* Memo. at 20-21.  Some of the records withheld in full are as long as 174 pages in length, *see, e.g.*, Updated Index at 333-35, and "[m]aterial is more likely to be reasonably segregable in longer documents", *Nat'l Ass'n of Criminal Def. Lawyers v. Dep't of Justice Exec. Office for U.S. Attorneys*, 844 F.3d 246, 257 (D.C. Cir. 2016) (citation omitted).  For example, Defendants redacted in full 116 pages of a draft of FDA's Executive Summary for the Panel Meeting under

---

[25] The re-produced record erroneously includes the residual "(b) (4)" designation.  *See* Rodgers Decl. at Attachment 6, *see also id.* at Attachment 4; Updated Index at 93-94.

[26] This number, which represents the sum of the entries in the "[p]ages withheld in [f]ull" column of Defendants' Updated Index, is clearly under-inclusive.  Defendants withheld in full some records where the corresponding *Vaughn* entries state that "0" pages were withheld in full, *see, e.g.*, Rodgers Decl. at Attachment 61; Updated Index at 1880 (entry for Attachment 61).  Similarly, Defendants withheld in full other records where the corresponding *Vaughn* entries state that the records were partially released, *see, e.g.*, Rodgers Decl. at Attachment 14; Updated Index at 1607 (entry for Attachment 14).  Finally, Defendants' Updated Index does not even include entries for all records that they withheld.  *See, e.g.*, Rodgers Decl. at Attachment 43.

Exemption 5.  *See* Rodgers Decl. at Attachment 60; *see also* Updated Index at 992 (entry for

Attachment 60).  However, the final version of the same document shows that at least some of

the draft likely included reasonably segregable non-exempt background information, such as the

"[r]egulatory [h]istory" of the "[d]evice['s] [c]lassification".  *See* Rodgers Decl., Attachment 12

at § 3.1.  Defendants have thus impermissibly withheld reasonably segregable non-exempt

information.  *See Nat'l Ass'n of Criminal Def. Lawyers*, 844 F.3d at 256-58 (remanding for

consideration of whether lengthy document contained reasonably segregable information).

## VI.    Plaintiffs are entitled to summary judgment and other appropriate relief.

For the reasons set forth above, this Court should deny Defendants' Motion and grant

Plaintiffs' Cross-Motion.  This Court should also enjoin Defendants from withholding

attachments to responsive records and non-responsive information in responsive records, and

order Defendants to produce to Plaintiffs all such withheld attachments and information.

Additionally, this Court should enjoin Defendants from withholding records under Exemptions 5

and 6, and order Defendants to produce to Plaintiffs all such withheld records.  *See Shapiro v.*

*U.S. Dep't of Justice*, 969 F.Supp.2d 18, 38 (D.D.C. 2013) (Howell, J.) (where agency had not

carried its burden of showing that withheld information was exempt under FOIA, ordering

agency to make such records available); *see also* 5 U.S.C. § 552(a)(4)(B).

Alternatively, with respect to the records that Defendants withheld under Exemptions 5

and 6, this Court should order Defendants to produce to this Court unredacted copies of the

sample of records withheld under Exemptions 5 and 6 and attached to the Rodgers Declaration

for an *in camera* inspection, and, if this Court determines that Defendants improperly withheld

any of such records, enjoin Defendants from withholding records under Exemptions 5 and 6 and

order Defendants to produce to Plaintiffs all such withheld records.[27]  FOIA authorizes this Court

to "examine the contents of . . . agency records in camera to determine whether such records or

any part thereof shall be withheld under any of the exemptions", 5 U.S.C. § 552(a)(4)(B), and

this Court has broad discretion to examine such records, *Spirko v. U.S. Postal Serv.*, 147 F.3d

992, 996 (D.C. Cir. 1998), including the discretion to examine a representative sample of a large

number of withheld records, *see 100Reporters LLC*, 248 F.Supp.3d at 166-67 (ordering agency

to produce "representative documents for review *in camera*" based, in part, on "expansive

withholdings").  Where, as here, a *Vaughn* index is "insufficiently detailed to permit meaningful

review of exemption claims", judicial review of the withheld records is "particularly

appropriate".  *Spirko*, 147 F.3d at 996 (quotation and citation omitted).  Even if Defendants'

Updated Index was sufficiently detailed, this Court could still conduct an *in camera* inspection

"on the basis of an uneasiness, on a doubt that [s]he wants satisfied before [s]he takes

responsibility for a de novo determination".  *Id.* (quotation omitted).

Alternatively, with respect to the records that Defendants withheld under Exemptions 5

and 6, this Court should order Defendants to supplement their *Vaughn* index for all records

withheld under Exemptions 5 and 6, and, after Defendants file their supplemental *Vaughn* index,

allow Plaintiffs to file a renewed dispositive motion.  *See*, *e.g.*, *Ctr. for Auto Safety*, 133

F.Supp.3d at 136-38 (where "fundamental problem" was insufficiently detailed *Vaughn* index,

ordering supplementation for any responsive records that agency continued to withhold).

---

[27] Alternatively, this Court should appoint a special master to evaluate each withholding.  *See Vaughn*, 484 F.2d at 828 (explaining that, on remand, "[t]he trial judge may . . . appoint a special master to undertake an evaluation of the information"); *see also* Fed. R. Civ. P. 53(a)(1)(C) (providing that a district court may appoint a special master to "address pretrial . . . matters that cannot be effectively and timely addressed" by a district court).

Respectfully submitted,

**The Judge Rotenberg Educational Center, Inc. and Paul E. Peterson, Ph.D.,**

  /s/ Edward J. Longosz, II
Edward J. Longosz, II (D.C. Bar No. 368932)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
1717 Pennsylvania Avenue, Northwest, 12th Floor
Washington, D.C. 20006
T: 202 659 6619
F: 202 659 6699
elongosz@eckertseamans.com

  /s/ Michael P. Flammia
Michael P. Flammia (*Pro Hac Vice*)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
2 International Place, 16th Floor
Boston, MA 02110
T: 617 342 6854
F: 617 342 6899
mflammia@eckertseamans.com

**The J.R.C. Parents and Friends Association, Inc. and Paul E. Peterson, Ph.D.,**

  /s/ Max D. Stern
Max D. Stern (*Pro Hac Vice*)
TODD & WELD, LLP
1 Federal Street
Boston, MA 02110
T: 617 624 4712
F: 617 227 5777
mdstern@toddweld.com

## CERTIFICATE OF SERVICE

I hereby certify that I filed and served copies of the foregoing document through the Court's electronic transmission facilities on this 7th day of September, 2018.

  /s/ Edward J. Longosz, II
Edward J. Longosz, II

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
THE JUDGE ROTENBERG                  )
EDUCATIONAL CENTER, INC., *et al.*,    )
                                                    )
        *Plaintiffs,*                                )
                                                    )
                v.                                   )          Civil Action No. 1:17-cv-02092-BAH
                                                    )
U.S. FOOD AND DRUG                       )
ADMINISTRATION, *et al.*,                   )
                                                    )
        *Defendants.*                             )
_____)

**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE ISSUE**
**AND PLAINTIFFS' STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE ISSUE**

        Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 7(h) of the Rules of

the U.S. District Court for the District of Columbia, Plaintiffs, The Judge Rotenberg Educational

Center, Inc. ("JRC"), The J.R.C. Parents and Friends Association, Inc. ("Parents Association"),

and Paul E. Peterson, Ph.D. ("Dr. Peterson") (collectively, "Plaintiffs"), hereby submit this

Response to the Statement of Material Facts as to which There Is No Genuine Issue of

Defendants, U.S. Food and Drug Administration ("FDA") and U.S. Department of Health and

Human Services ("HHS") (collectively, "Defendants"),[1] and this Statement of Material Facts as

to which There Is No Genuine Issue, in support of Plaintiffs' Opposition to Defendants' Motion

for Partial Summary Judgment and Plaintiffs' Cross-Motion for Partial Summary Judgment.

_____
[1] Plaintiffs submit this Response to Defendants' Statement of Material Facts as to which There Is
No Genuine Issue solely for the purpose of the pending summary judgment cross-motions.
Plaintiffs' responses do not constitute Plaintiffs' admissions of any fact for any other purpose,
and Plaintiffs reserve the right to dispute any facts herein at any trial of this matter.

## I.     PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

1.      Plaintiffs filed a Complaint for Declaratory and Injunctive Relief (ECF No. 1) ("Complaint" or "Compl.") on October 10, 2017, under FOIA, seeking production of government agency records related to electrical stimulation devices ("ESDs").  Compl. ¶ 1.

**Plaintiffs' Response:  Undisputed that Plaintiffs filed a Complaint for Declaratory and Injunctive Relief ("Complaint" or "Compl.") on October 10, 2017, under the Freedom of Information Act ("Act" or "FOIA"), 5 U.S.C. § 552.  The remainder of Defendants' statement purports to describe Plaintiffs' Complaint, which speaks for itself and is the best evidence as to its content.  *See generally* Compl. [ECF No. 1].**

2.      On July 19, 2016, Plaintiff Paul E. Peterson, PhD ("Plaintiff Peterson"), submitted to FDA six FOIA requests that were substantively identical.  Declaration of Sarah Kotler ("Kotler Decl.") ¶ 15; Compl. ¶ 22.  FOIA Request 2016-7308 sought, among other things, records related to: FDA inspections of JRC; the Neurological Devices Panel of the Medical Devices Advisory Committee; and FDA's proposed ban of ESDs.  Kotler Decl. ¶ 29; Compl. Exhibits A-1 through A-6.  It further sought communications about JRC or ESDs between agency employees and (1) other state, federal, or international governmental agencies; (2) representatives of disability advocacy organizations or human rights organizations; and (3) members of the April 24, 2014 Neurological Devices Panel of the Medical Devices Advisory Committee.  *Id.*

**Plaintiffs' Response:  Undisputed that, on July 19, 2016, Dr. Peterson submitted to FDA six FOIA requests.  The remainder of Defendants' statement purports to describe Dr. Peterson's FOIA requests, which speak for themselves and are the best evidence as to their content.  *See generally* Compl. at Exs. A-1 – A-6 [ECF Nos. 1-1 – 1-6].**

3.      FDA aggregated the six requests submitted by Plaintiff Peterson on July 19, 2016,
and assigned them a reference number ("FOIA Number") 2016-7308.  Kotler Decl. ¶ 15; Compl.
¶¶ 22-23, 26, Exhibits A-1 through A-6.  FDA's aggregation did not modify the scope of
Plaintiff Peterson's FOIA requests, but instead sought to reduce duplicative document
productions.  Kotler Decl. ¶ 15.

**Plaintiffs' Response:  Undisputed that FDA assigned the six requests submitted by Dr.
Peterson on July 19, 2016 the reference number ("FOIA Number") 2016-7308 ("First
Request").  The remainder of Defendants' statement concerns information only available to
Defendants, and, as Plaintiffs lack information about the remainder of Defendants'
statement, Plaintiffs neither admit nor deny the remainder of Defendants' statement.**

4.      On August 23, 2016, Plaintiff Peterson submitted to FDA a FOIA request
seeking, among other things, records related to meetings from January 2012 through the present
between FDA employees and stakeholders interested in electrical stimulation devices ("ESDs");
communications between HHS and FDA about ESDs between January 2012 and the present;
documents obtained, received, or created by FDA analyzing literature about ESDs dating from
January 2012 through the present; and communications or records of communications between
FDA employees and former patients of JRC dating from January 2012 through the present.
Kotler Decl. ¶ 28; Compl. Exhibit F.  FDA assigned this request FOIA Number 2016-7184.
Kotler Decl. ¶ 16; Compl. ¶ 37.

**Plaintiffs' Response:  Undisputed that, on August 23, 2016, Dr. Peterson submitted to FDA
a FOIA request.  Undisputed that FDA assigned this request FOIA Number 2016-7184
("Second Request").  The remainder of Defendants' statement purports to describe Dr.**

Peterson's Second Request, which speaks for itself and is the best evidence as to its content. *See generally* Compl. at Ex. F [ECF No. 1-11].

5.      Plaintiff Peterson submitted an additional request to FDA on August 23, 2016. Kotler Decl. ¶ 17; Compl. ¶ 47, Exhibit H.  Plaintiff Peterson's request sought materials related to expert opinions from three individuals about electrical stimulation devices.  Compl. Exhibit H. FDA assigned this request FOIA Number 2016-7106.  Kotler Decl. ¶ 17; Compl. ¶ 50.

**Plaintiffs' Response:  Undisputed that Dr. Peterson submitted an additional request to FDA on August 23, 2016.  Undisputed that FDA assigned this request FOIA Number 2016-7106 ("Third Request").  The remainder of Defendants' statement purports to describe Dr. Peterson's Third Request, which speaks for itself and is the best evidence as to its content.** *See generally* **Compl. at Ex. H [ECF No. 1-13].**

6.      On December 27, 2016, attorneys submitted on behalf of Plaintiff the Judge Rotenberg Educational Center ("JRC") a FOIA request seeking, among other things, requests for information related to statements made in FDA's Federal Register notice announcing a proposed ban on electrical stimulation devices.  Kotler Decl. ¶ 18; Mednick Decl. ¶ 27; Compl. ¶ 55, Exhibit J.  FDA assigned this request FOIA Number 2017-1440.  Kotler Decl. ¶ 18; Compl. ¶ 57.

**Plaintiffs' Response:  Undisputed that, on December 27, 2016, attorneys submitted on behalf of JRC a letter to FDA.  Undisputed that FDA treated this letter as a FOIA request and assigned this letter FOIA Number 2017-1440 ("Fourth Request") (collectively, with the First through Third Requests, "Requests").  The remainder of Defendants' statement purports to describe the Fourth Request, which speaks for itself and is the best evidence as to its content.** *See generally* **Compl. at Ex. J [ECF No. 1-15].**

<u>FDA's Process for Responding to FOIA Requests</u>

7.      FDA's Division of Freedom of Information ("DFOI") is the office responsible for

FDA compliance with FOIA.  Kotler Decl. ¶ 7; *see* 21 C.F.R. §§ 20.30, 20.40. DFOI receives

FOIA requests by fax, mail, and electronically via the FDA website.  Kotler Decl. ¶ 7.

**Plaintiffs' Response:  Undisputed that FDA's Division of Freedom of Information**

**("DFOI") is the office responsible for FDA compliance with FOIA.  The remainder of**

**Defendants' statement concerns information only available to Defendants, and, as Plaintiffs**

**lack information about the remainder of Defendants' statement, Plaintiffs neither admit**

**nor deny the remainder of Defendants' statement.  Further responding, the remainder of**

**Defendants' statement is immaterial to the pending summary judgment cross-motions, and**

**so no response by Plaintiffs is required.**

8.      DFOI can also receive requests for FDA records that have been sent by requestors

to other parts of the agency and then forwarded to DFOI.  Kotler Decl. ¶ 8.  Although these

records requests do not comply with FDA regulations, if they are re-routed to DFOI, they are

treated in the same manner as FOIA requests.  Kotler Decl. ¶ 8; *see* 21 C.F.R. §§ 20.30, 20.40;

*see also* 5 U.S.C. § 552(a)(3)(A).

**Plaintiffs' Response:  To the extent that Defendants imply that any or all of Plaintiffs'**

**FOIA Requests "do not comply with FDA regulations", Defendants' statement is a legal**

**conclusion that Plaintiffs dispute.  The remainder of Defendants' statement concerns**

**information only available to Defendants, and, as Plaintiffs lack information about the**

**remainder of Defendants' statement, Plaintiffs neither admit nor deny the remainder of**

**Defendants' statement.  Further responding, Defendants' statement is immaterial to the**

**pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

9.      FDA uses an electronic tracking system, the Agency Information Management

Systems ("AIMS"), to log, store, and track FOIA requests.  Kotler Decl. ¶ 9.  Under the AIMS

system, when DFOI receives a paper or email FOIA request, a DFOI employee converts the

request into PDF format, logs and uploads the request into AIMS, and assigns the request a

FOIA Number.  *Id.*  A FOIA Number begins with four digits reflecting the calendar year in

which the request was received, followed by the number of FOIA requests received by DFOI to

date in that particular calendar year.  *Id.*

**Plaintiffs' Response:  Defendants' statement concerns information only available to**

**Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs**

**neither admit nor deny Defendants' statement.  Further responding, Defendants' statement**

**is immaterial to the pending summary judgment cross-motions, and so no response by**

**Plaintiffs is required.**

10.     Under the AIMS system, when a FOIA request is logged in, AIMS generates a

letter to the requester acknowledging FDA's receipt of the request (the "acknowledgement

letter").  Kotler Decl. ¶ 10; *see* Compl. ¶¶ 26, 37, 50, 57, Exhibits C, I, L.  The acknowledgement

letter provides the request's assigned FOIA Number, and invites the requester to contact DFOI

with any questions related to the request.  Kotler Decl. ¶ 10; *see* Compl. Exhibits C, I, L.

**Plaintiffs' Response:  Defendants' statement concerns information only available to**

**Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs**

**neither admit nor deny Defendants' statement.  Further responding, Defendants' statement**

**is immaterial to the pending summary judgment cross-motions, and so no response by**

**Plaintiffs is required.**

11.      FDA's FOIA program is decentralized.  Kotler Decl. ¶ 11.  After a FOIA request

is received and logged by DFOI, the request is assigned to the FDA office(s) reasonably likely to

possess responsive records (the "action offices(s)"), which then process(es) the request.  *Id.*

**Plaintiffs' Response:  Defendants' statement concerns information only available to**

**Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs**

**neither admit nor deny Defendants' statement.  Further responding, Defendants' statement**

**is immaterial to the pending summary judgment cross-motions, and so no response by**

**Plaintiffs is required.**

12.      Sometimes DFOI personnel assign requests to DFOI itself for processing.  Kotler

Decl. ¶ 11.  DFOI will be assigned to requests for records previously produced in response to

other FOIA requests. *Id.*

**Plaintiffs' Response:  Defendants' statement concerns information only available to**

**Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs**

**neither admit nor deny Defendants' statement.  Further responding, Defendants' statement**

**is immaterial to the pending summary judgment cross-motions, and so no response by**

**Plaintiffs is required.**

13.      If a request is assigned to the Office of the Executive Secretariat ("OES"), which

is DFOI's parent office, DFOI personnel also direct OES's search for responsive materials by

assigning the request to OES personnel who are expected to have responsive records.  Kotler

Decl. ¶ 12.  If DFOI personnel are uncertain about how a particular request should be assigned

within OES, DFOI personnel will consult with OES staff to identify individuals reasonably

expected to have responsive records.  *Id.*

**Plaintiffs' Response:  Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs neither admit nor deny Defendants' statement.  Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

14.     For FDA components outside of OES, once an action office is assigned a FOIA request, it searches for potentially responsive records. Kotler Decl. ¶ 13.  The action office then identifies responsive records and determines whether they should be released in full, redacted in part, or withheld in their entirety under any applicable FOIA exemption or other statutory or regulatory provision. *Id.*  If records can be released in full or in part, the action office responds directly to the requestor.  *Id.*

**Plaintiffs' Response:  Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs neither admit nor deny Defendants' statement.  Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

<u>DFOI's Processing of Plaintiffs' FOIA Requests</u>

15.     DFOI sent letters of receipt that acknowledged all of Plaintiffs' FOIA requests. Kotler Decl. ¶ 19; *see* Compl. ¶¶ 26, 50, 57, Exhibits C, I, L.

**Plaintiffs' Response:  Undisputed that FDA sent to Plaintiffs the letters that are attached to the Complaint as Exhibit C [ECF No. 1-8], Exhibit I [ECF No. 1-14], and Exhibit L [ECF No. 1-17], which speak for themselves and are the best evidence as to their content. Disputed that DFOI sent to Plaintiffs a letter of receipt that acknowledged the Second**

**Request.  Further responding, Defendants' statement is immaterial to the pending**

**summary judgment cross-motions, and so no response by Plaintiffs is required.**

16.     DFOI assigned requests 2016-7184, 2016-7308, and 2017-1440 to FDA's OCC.

Kotler Decl. ¶ 22; Mednick Decl. ¶ 12.  DFOI did not assign request 2016-7106 to OCC because

the records sought by that request, which was related to expert opinions used to support a

proposed rulemaking, were not considered likely to be in the custody of OCC.  Kotler Decl. ¶ 22.

**Plaintiffs' Response:  Defendants' statement purports to describe the First, Second, and**

**Fourth Requests, which speak for themselves and are the best evidence as to their content.**

***See generally* Compl. at Exs. A-1 – A-6, F, J.  The remainder of Defendants' statement**

**concerns information only available to Defendants, and, as Plaintiffs lack information**

**about the remainder of Defendants' statement, Plaintiffs neither admit nor deny the**

**remainder of Defendants' statement.  Further responding, Defendants' statement is**

**immaterial to the pending summary judgment cross-motions, and so no response by**

**Plaintiffs is required.**

17.     DFOI initially assigned requests 2016-7184 and 2016-7308 to FDA's New

England District Office.  Kotler Decl. ¶ 23; Recupero Decl. ¶ 8.  Request 2017-1440 was also

subsequently assigned to the New England District Office after conversations between Plaintiffs'

counsel and government counsel in March and April 2018.  Kotler Decl. ¶ 23; Recupero Decl.

¶ 14.  Request 2016-7106 was not assigned to the New England District Office.  Kotler Decl.

¶ 23.

**Plaintiffs' Response:  Undisputed that Plaintiffs' counsel and government counsel had**

**conversations in March and April 2018 about the inadequacy of the initial search**

**conducted by FDA's New England District Office ("NWE-DO") in response to Plaintiffs'**

Requests.  The remainder of Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about the remainder of Defendants' statement, Plaintiffs neither admit nor deny the remainder of Defendants' statement. Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.

18.     DFOI assigned all of Plaintiffs' FOIA requests (numbers 2016-7106, 2016-7184, 2016-7308, and 2017-1440) to the Division of Information Disclosure in FDA's Center for Devices and Radiological Health.  Kotler Decl. ¶ 24.

**Plaintiffs' Response:  Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs neither admit nor deny Defendants' statement.  Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

19.     FDA's Office of Regulatory Affairs headquarters office was assigned FOIA requests 2016-7184, 2016-7308, and 2017-1440 after conversations between Plaintiffs' counsel and government counsel in March and April 2018.  Kotler Decl. ¶ 25; Pickworth Decl. ¶ 8.

**Plaintiffs' Response:  Undisputed that Plaintiffs' counsel and government counsel had conversations in March and April 2018 about a search of FDA's Office of Regulatory Affairs ("ORA").  The remainder of Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about the remainder of Defendants' statement, Plaintiffs neither admit nor deny the remainder of Defendants' statement.  Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

20.     DFOI initially also made a partial referral of FOIA Request 2016-7184 to the

DHHS FOIA Office, but that office did not produce responsive records at that time.  Kotler Decl.

¶ 26.  Following conversations between Plaintiffs' counsel and government counsel in March

and April 2018, two components within DHHS – the Office of the Secretary and the

Administration for Community Living – agreed to search for and produce, with appropriate

redactions, records responsive to Plaintiffs' FOIA requests 2016-7184, 2016-7308, and 2017-

1440.  Kotler Decl. ¶ 26; Marquis Decl. ¶ 9; Nicholls Decl. ¶ 6; *see* Updated *Vaughn* Index.

**Plaintiffs' Response:  Undisputed that Plaintiffs' counsel and government counsel had**

**conversations in March and April 2018 about searches of HHS's Office of the Secretary**

**("OS") and Administration for Community Living ("ACL").  To the extent that**

**Defendants' statement implies that OS and ACL produced records "with appropriate**

**redactions", Defendants' statement is a legal conclusion that Plaintiffs dispute.  The**

**remainder of Defendants' statement concerns information only available to Defendants,**

**and, as Plaintiffs lack information about the remainder of Defendants' statement, Plaintiffs**

**neither admit nor deny the remainder of Defendants' statement.  Further responding,**

**Defendants' statement is immaterial to the pending summary judgment cross-motions, and**

**so no response by Plaintiffs is required.**

*DFOI Initial Search for and Production of Records*

21.     Shortly after initially receiving Plaintiffs' FOIA Requests, DFOI attempted to

locate records that had been released in response to previous FOIA requests that might also be

responsive to the Plaintiffs' Requests.  Kotler Decl. ¶ 31.  DFOI staff searched the subject field

in AIMS for "judge Rotenberg."  *Id.*  DFOI personnel located twenty-three pages of records that

had been produced with appropriate redactions in response to previous FOIA requests and were

responsive to request 2016-7308.  *Id.*; *see* Updated *Vaughn* Index.  DFOI produced those records with appropriate redactions to Plaintiff Peterson by mail on or about September 7, 2016.  *Id.*; *see* Updated *Vaughn* Index.  These records are located at NWE-DOandDFOI00002 through 00024; some of these records are identical to records later produced separately by the New England District Office.  Kotler Decl. ¶ 31; *see* Recupero Decl. ¶ 11.

**Plaintiffs' Response:  Undisputed that DFOI produced 23 pages of redacted records responsive to the First Request to Dr. Peterson by mail on or about September 7, 2016. Undisputed that some of these records are identical to records later produced separately by NWE-DO.  Disputed that the records located at NWE-DO&DFOI00002-24 are identical to the records that DFOI produced to Dr. Peterson by mail on or about September 7, 2016. *Compare* Compl. at ¶ 27 *and id.* at Ex. D [ECF No. 1-9] (including records with "(b)(4)" redactions) *with* Updated *Vaughn* Index ("Updated Index") at 1046-48 [ECF No. 24-9] (omitting entries for "(b)(4)" redactions).  Defendants' statement that DFOI produced these records "with appropriate redactions" is a legal conclusion that Plaintiffs dispute. The remainder of Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about the remainder of Defendants' statement, Plaintiffs neither admit nor deny the remainder of Defendants' statement.**

22.    DFOI personnel also directed an initial search for responsive records from OES by assigning requests 2016-7184 and 2016-7308 to individual OES staff who were reasonably expected to have responsive records.  Kotler Decl. ¶ 32.

**Plaintiffs' Response:  Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs neither admit nor deny Defendants' statement.  Further responding, Defendants' statement**

is immaterial to the pending summary judgment cross-motions, and so no response by
Plaintiffs is required.

23.    DFOI personnel reviewed, redacted, and produced with appropriate redactions
records found by OES personnel that were responsive to requests 2016-7184 and 2016-7308.
Kotler Decl. ¶ 32; *see* Updated *Vaughn* Index.  DFOI made an initial production, with
appropriate redactions, of OES records that were responsive to requests 2016-7184 and 2016-
7308 to Plaintiff Peterson by email on September 28, 2016.  Kotler Decl. ¶ 33; *see* Updated
*Vaughn* Index.

**Plaintiffs' Response:  Undisputed that DFOI produced redacted records held by FDA's
Office of the Executive Secretariat ("OES") responsive to the First and Second Requests to
Dr. Peterson by email on or about September 28, 2016.  Defendants' statement that DFOI
produced these records "with appropriate redactions" is a legal conclusion that Plaintiffs
dispute.  The remainder of Defendants' statement concerns information only available to
Defendants, and, as Plaintiffs lack information about the remainder of Defendants'
statement, Plaintiffs neither admit nor deny the remainder of Defendants' statement.**

24.    DFOI supplemented its production of OES records by email to Plaintiff Peterson
with six pages of responsive materials stamped with Bates numbers OES000055 through
OES000060.  Kotler Decl. ¶ 34.

**Plaintiffs' Response:  Undisputed.**

*DFOI Supplemental Search for and Production of Records*

25.    Following conversations between Plaintiffs' counsel and government counsel in
March and April 2018, DFOI staff directed an expanded search for records responsive to FOIA
requests 2016-7184, 2016-7308, and 2017-1440 held in the custody of OES.  Kotler Decl. ¶ 35.

The expanded search included all individuals listed as being employees of "FDA's Office of the

Commissioner" in FDA counsel's March 2, 2018, cover letter to Plaintiffs' counsel (ECF No. 19,

Exhibit #2) (the "Cover Letter").  Kotler Decl. ¶ 35.

**Plaintiffs' Response:  Undisputed that a March 2, 2018 letter from FDA's counsel to**

**Plaintiffs' counsel ("Cover Letter") listed individuals as current or former employees of**

**FDA's Office of the Commissioner ("OC"), [ECF No. 19-2], that Plaintiffs' counsel and**

**government counsel had conversations in March and April 2018, and that government**

**counsel agreed that OES would conduct an expanded search for records responsive to the**

**First, Second, and Fourth Requests that would include all individuals listed as current and**

**former employees of FDA's OC in the Cover Letter.  The remainder of Defendants'**

**statement concerns information only available to Defendants, and, as Plaintiffs lack**

**information about the remainder of Defendants' statement, Plaintiffs neither admit nor**

**deny the remainder of Defendants' statement.  Further responding, Defendants' statement**

**is immaterial to the pending summary judgment cross-motions, and so no response by**

**Plaintiffs is required.**

26.     To conduct the supplemental search for records in the custody of current

employees, DFOI staff sent an email to current FDA employees listed in the Cover Letter, asking

them to search their files for any records responsive to Plaintiffs' FOIA requests using the search

terms Judge Rotenberg Center (JRC) and electrical stimulation devices (ESDs). Kotler Decl.

¶ 36.

**Plaintiffs' Response:  Defendants' statement concerns information only available to**

**Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs**

**neither admit nor deny Defendants' statement.  Further responding, Defendants' statement**

**is immaterial to the pending summary judgment cross-motions, and so no response by**

**Plaintiffs is required.**

27.     For former OES staff who were listed in the Cover Letter, DFOI staff directed

FDA's Office of Information Management and Technology ("OIMT") staff to search former

employees' Outlook files for responsive records.  Kotler Decl. ¶ 37.  DFOI staff directed OIMT

to search records from the period January 2012 to the time of the search (April 2018) for the

following search terms: Judge Rotenberg Center (JRC) and electrical stimulation devices

(ESDs).  *Id.*

**Plaintiffs' Response:  Defendants' statement concerns information only available to**

**Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs**

**neither admit nor deny Defendants' statement.  Further responding, Defendants' statement**

**is immaterial to the pending summary judgment cross-motions, and so no response by**

**Plaintiffs is required.**

28.     DFOI made supplemental productions of approximately 9,359 pages of

appropriately redacted OES records that were responsive to requests 2016-7184, 2016-7308, and

2017-1440 to Plaintiff Paul Peterson and Plaintiffs' counsel Michael Flammia on July 2 and 11,

2018.  Kotler Decl. ¶ 38; *see* Updated *Vaughn* Index.  The first set was sent by letter dated July

2, 2018, and included records with Bates numbers JRC OES Supplemental 1 000001 through

JRC OES Supplemental 1 001190 and JRS OES Supplemental 1 001191 through JRS OES

Supplemental 1 001791.  The second set was sent by cover letter dated July 11, 2018, and

included records with Bates numbers JRS OES Supplemental 1 001792 through JRS OES

Supplemental 1 009712 (excluding Bates numbers JRC OES Supplemental 1 002947 through

JRC OES Supplemental 1 003239, which were inadvertently omitted from the Bates numbers applied to the responsive records).  Kotler Decl. ¶ 38; *see* Updated *Vaughn* Index.

**Plaintiffs' Response:  Undisputed, except that Defendants' statement that DFOI produced "appropriately redacted" records is a legal conclusion that Plaintiffs dispute.**

*Additional DFOI Communications with Plaintiffs*

29.      In April and May 2017, the Director of DFOI had communications with Plaintiffs' representatives about their FOIA Requests.  Kotler Decl. ¶ 20.

**Plaintiffs' Response:  Undisputed.  Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

30.      On February 13, 2018, the Director of DFOI produced to Plaintiff Peterson OCC records that had been referred to, and redacted by, the Department of State.  Kotler Decl. ¶ 27; *see* Stein Decl. ¶ 6.

**Plaintiffs' Response:  Undisputed that, on or about February 13, 2018, the Director of DFOI produced to Dr. Peterson redacted records.  The remainder of Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about the remainder of Defendants' statement, Plaintiffs neither admit nor deny the remainder of Defendants' statement.**

OCC's Processing of and Responses to Plaintiffs' FOIA Requests

31.      After a FOIA request that appears to seek documents in the custody of OCC is received and logged by FDA's Division of Freedom of Information, the request is forwarded through the AIMS system to OCC, which then processes the request.  Mednick Decl. ¶ 6; *see* Kotler Decl. ¶¶ 7-13.

**Plaintiffs' Response:  Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs neither admit nor deny Defendants' statement.  Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

32.     Once OCC is assigned a FOIA request related to medical devices, a paralegal specialist consults with the Deputy Chief Counsel for Program Review for Devices and Tobacco, to determine which individuals within the Office of the Chief Counsel can be expected to have responsive documents.  Mednick Decl. ¶ 7.  Once those individuals expected to have responsive records are identified, the OCC paralegal specialist circulates the request to them.  *Id.*  In some cases for which individuals likely to have responsive documents cannot be immediately determined, the request is circulated more broadly.  *Id.*

**Plaintiffs' Response:  Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs neither admit nor deny Defendants' statement.  Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

33.     The individuals to whom the request was circulated then search their files, including computer and paper files, for any responsive records.  Mednick Decl. ¶ 8.

**Plaintiffs' Response:  Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs neither admit nor deny Defendants' statement.  Further responding, Defendants' statement**

**is immaterial to the pending summary judgment cross-motions, and so no response by**

**Plaintiffs is required.**

34.     An OCC government information specialist reviews the records collected by

individuals within OCC and determines whether they are responsive to the request.  Mednick

Decl. ¶ 9.  If they are responsive, the government information specialist determines whether the

records should be released in full, released in part, or withheld in their entirety under any

applicable FOIA exemption.  *Id.*

**Plaintiffs' Response:  Defendants' statement concerns information only available to**

**Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs**

**neither admit nor deny Defendants' statement.  Further responding, Defendants' statement**

**is immaterial to the pending summary judgment cross-motions, and so no response by**

**Plaintiffs is required.**

35.     In some cases involving records in OCC's custody, other FDA components or

other federal government agencies may be better able to determine whether the record is exempt

from disclosure under the FOIA, have an interest in the record, and/or the record may have

originated with them.  Mednick Decl. ¶ 10.  In these situations, OCC will often either consult

with the other component or agency in OCC's review of the records, or refer the records to them

for processing.  *Id.*

**Plaintiffs' Response:  Defendants' statement concerns information only available to**

**Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs**

**neither admit nor deny Defendants' statement.  Further responding, Defendants' statement**

**is immaterial to the pending summary judgment cross-motions, and so no response by**

**Plaintiffs is required.**

36.     If responsive records can be released in full or in part, OCC provides those records to the requestor, except for any records referred to other FDA components or other federal agencies for processing.  Mednick Decl. ¶ 11.

**Plaintiffs' Response:  Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs neither admit nor deny Defendants' statement.  Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

*OCC Search for Records Responsive to FOIA Request 2016-7184*

37.     On November 10, 2016, an OCC paralegal circulated request 2016-7184 to a distribution list that included all OCC attorneys, OCC paralegals, and certain other OCC staff.  Mednick Decl. ¶ 14.  Those individuals were asked to search their files for responsive records and to respond by indicating whether they found records they believed were responsive to the request.  *Id.*  They were specifically asked to search for documents responsive to the following portion of Plaintiff Peterson's request: "Communications, and any documents relating to communications, between DHHS officials and FDA employees regarding ESDs used to treat SIB/AB, dating from January 2012 to the present."  *Id.*

**Plaintiffs' Response:  Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs neither admit nor deny Defendants' statement.  Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

38.     Potentially responsive records were submitted to an OCC government information specialist who reviewed the records to determine whether they were responsive and, if so, reviewed them for information exempt from disclosure under FOIA.  Mednick Decl. ¶ 15. Information the OCC government information specialist proposed to redact as exempt underwent a second-level review by an OCC attorney.  *Id.*

**Plaintiffs' Response:  Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs neither admit nor deny Defendants' statement.  Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

39.     Upon reviewing records responsive to Plaintiffs' FOIA Requests, OCC determined that certain records should be referred to other components of DHHS or the Department of Justice ("DOJ") because the records originated with those entities and/or those entities would be better able to determine whether the records are exempt from disclosure under FOIA.  Mednick Decl. ¶ 16.  Pursuant to federal agency guidance, FDA referred those records to DHHS and DOJ.  *Id.*

**Plaintiffs' Response:  Defendants' statement that FDA's Office of Chief Counsel ("OCC") referred certain records to HHS and the Department of Justice ("DOJ") "[p]ursuant to federal agency guidance" is a legal conclusion that Plaintiffs do not admit.  The remainder of Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about the remainder of Defendants' statement, Plaintiffs neither admit nor deny the remainder of Defendants' statement.  Further responding, Defendants'**

statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.

40.    After reviewing and redacting the records to remove information exempt from disclosure under FOIA, 5 U.S.C. § 552(b), OCC produced appropriately redacted records, temporarily withholding all information that had been referred to other federal agencies pending review by those other agencies, to Plaintiff Paul Peterson by email on December 4, 2017. Mednick Decl. ¶ 17; *see* Updated *Vaughn* Index.

**Plaintiffs' Response:  Undisputed that OCC produced redacted records to Dr. Peterson, by way of Plaintiffs' counsel, by email on or about December 4, 2017.  Defendants' statements that the information that OCC redacted from the records was "exempt from disclosure under FOIA" and that the records that OCC produced were "appropriately redacted" are legal conclusions that Plaintiffs dispute.  The remainder of Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about the remainder of Defendants' statement, Plaintiffs neither admit nor deny the remainder of Defendants' statement.**

41.    DOJ reviewed and redacted the portions of the OCC's production of records responsive to FOIA request 2016-7184 referred to it and had those records produced to Plaintiffs with certain redactions on March 19, 2018, June 13, 2018, and June 18, 2018.  Hermilla Decl. ¶ 5; Mednick Decl. ¶ 18; *see* Updated *Vaughn* Index.  DHHS reviewed and redacted the portions of the OCC's production of records responsive to FOIA request 2016-7184 referred to it and had the appropriately redacted materials produced to Plaintiff Peterson or Plaintiffs' counsel on or about April 3, 2018 and May 14, 2018.  Marquis Decl. ¶¶ 7-8; Mednick Decl. ¶ 19; *see* Updated *Vaughn* Index.

**Plaintiffs' Response:  Undisputed that Plaintiffs or Plaintiffs' counsel received productions of redacted records from Defendants or Defendants' counsel on or about March 19, 2018, April 3, 2018, May 14, 2018, June 13, 2018, and June 18, 2018.  Defendants' statement that the records that HHS had produced were "appropriately redacted" is a legal conclusion that Plaintiffs dispute.  The remainder of Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about the remainder of Defendants' statement, Plaintiffs neither admit nor deny the remainder of Defendants' statement.**

*OCC Search for Records Responsive to FOIA Request 2016-7308*

42.     On January 12, 2017, an OCC paralegal circulated request 2016-7308 to a distribution list that included all OCC attorneys, OCC paralegals, and certain other OCC staff. Mednick Decl. ¶ 21.  Those individuals were asked to search their files for responsive records and to respond by indicating whether they found documents that may be responsive to the request. *Id.*  Specifically, they were asked to search for records responsive to portions 1f (communications and records related to the Office of the Attorney General of Massachusetts), 1p (communications and records related to DOJ), and 2 (communications or records related to affiliates of disability advocacy or human rights organizations) of the request. *Id.*

**Plaintiffs' Response:  Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs neither admit nor deny Defendants' statement.  Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

43.     Potentially responsive records were provided to an OCC government information specialist who reviewed the records to determine whether they were responsive and, if so, reviewed them for information exempt from disclosure under FOIA.  Mednick Decl. ¶ 22. Information the OCC government information specialist proposed to redact as exempt underwent a second-level review by an OCC attorney.  *Id.*

**Plaintiffs' Response:  Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs neither admit nor deny Defendants' statement.  Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

44.     Upon reviewing records responsive to Plaintiffs' FOIA Requests, OCC determined that certain records should be referred to DOJ or the Department of State because the records originated with those entities and/or those entities would be better able to determine whether the records are exempt from disclosure under FOIA.   Mednick Decl. ¶ 23.  Pursuant to federal agency guidance, FDA referred those records to DOJ and the Department of State.  *Id.*

**Plaintiffs' Response:  Defendants' statement that OCC referred certain records to DOJ or the Department of State ("DOS") "[p]ursuant to federal agency guidance" is a legal conclusion that Plaintiffs do not admit.  The remainder of Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about the remainder of Defendants' statement, Plaintiffs neither admit nor deny the remainder of Defendants' statement.  Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

45.      After reviewing and redacting the records to remove information exempt from disclosure under FOIA, 5 U.S.C. § 552(b), OCC produced appropriately redacted records, temporarily withholding all information that had been referred to other federal agencies pending review by those other agencies, to Plaintiff Paul Peterson by email on December 4, 2017. Mednick Decl. ¶ 23; *see* Updated *Vaughn* Index.

**Plaintiffs' Response:  Undisputed that OCC produced redacted records to Dr. Peterson, by way of Plaintiffs' counsel, by email on or about December 4, 2017.  Defendants' statements that the information that OCC redacted from the records was "exempt from disclosure under FOIA" and that the records that OCC produced were "appropriately redacted" are legal conclusions that Plaintiffs dispute.  The remainder of Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about the remainder of Defendants' statement, Plaintiffs neither admit nor deny the remainder of Defendants' statement.**

46.      DOJ reviewed and redacted the portions of the OCC's production of records responsive to FOIA request 2016-7308 referred to it and had those appropriately redacted records produced to Plaintiffs on March 19, 2018, June 13, 2018, and June 18, 2018.  Hermilla Decl. ¶ 5; Mednick Decl. ¶ 25; *see* Updated *Vaughn* Index.

**Plaintiffs' Response:  Undisputed that Plaintiffs or Plaintiffs' counsel received productions of redacted records from Defendants or Defendants' counsel on or about March 19, 2018, June 13, 2018, and June 18, 2018.  Defendants' statement that the records that DOJ had produced were "appropriately redacted" is a legal conclusion that Plaintiffs dispute.  The remainder of Defendants' statement concerns information only available to Defendants,**

**and, as Plaintiffs lack information about the remainder of Defendants' statement, Plaintiffs**

**neither admit nor deny the remainder of Defendants' statement.**

47.     The Department of State reviewed and redacted the portions of the OCC's

production of records responsive to FOIA request 2016-7308 referred to it. *See* Stein Decl. ¶¶ 6,

9-18.  On or about February 13, 2018, FDA's Department of Freedom of Information sent to

Plaintiffs the records that OCC had referred to the Department of State, as the Department of

State had redacted those records.  *See* Kotler Decl. ¶ 27; Stein Decl. ¶ 6; Mednick Decl. ¶ 26.

**Plaintiffs' Response:  Undisputed that, on or about February 13, 2018, DFOI sent to Dr.**

**Peterson redacted records.  The remainder of Defendants' statement concerns information**

**only available to Defendants, and, as Plaintiffs lack information about the remainder of**

**Defendants' statement, Plaintiffs neither admit nor deny the remainder of Defendants'**

**statement.**

*OCC Search for Records Responsive to FOIA Request 2017-1440*

48.     An OCC paralegal assigned request 2017-1440 to three agency attorneys on May

10, 2017.  Mednick Decl. ¶ 28.  Those individuals, chosen because they were known to have

knowledge of the relevant project, were asked to search their files for records responsive to

JRC's request for "[a]ll documents or other information pertaining to the 'three individuals

formerly on ESDs at JRC' who FDA clinicians interviewed by phone, as referenced in 81 Fed.

Reg. 24386 at 24393."  *Id.*  The individuals were asked to respond by indicating whether they

found records they believed may be responsive to the request, and to notify the OCC paralegal if

they believed other individuals within OCC had responsive records.  *Id.*

**Plaintiffs' Response:  Undisputed that, in the Fourth Request, JRC requested "[a]ll**

**documents or other information pertaining to the 'three individuals formerly on ESDs at**

**JRC' who FDA clinicians interviewed by phone, as referenced in 81 Fed. Reg. 24386 at**

**24393." The remainder of Defendants' statement concerns information only available to**

**Defendants, and, as Plaintiffs lack information about the remainder of Defendants'**

**statement, Plaintiffs neither admit nor deny the remainder of Defendants' statement.**

49.     Potentially responsive records were provided to an OCC government information

specialist who reviewed the records to determine whether they were responsive and, if so,

reviewed them for information exempt from disclosure under FOIA. Mednick Decl. ¶ 29.

Information the OCC government information specialist proposed to redact as exempt underwent

a second-level review by an OCC attorney. *Id.*

**Plaintiffs' Response: Defendants' statement concerns information only available to**

**Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs**

**neither admit nor deny Defendants' statement. Further responding, Defendants' statement**

**is immaterial to the pending summary judgment cross-motions, and so no response by**

**Plaintiffs is required.**

50.     Upon reviewing records responsive to Plaintiffs' FOIA Requests, OCC

determined that certain records should be referred to DOJ because the records originated with

DOJ and/or DOJ would be better able to determine whether the records are exempt from

disclosure under FOIA. Mednick Decl. ¶ 30. Pursuant to federal agency guidance, FDA referred

those records to DOJ. *Id.*

**Plaintiffs' Response: Defendants' statement that OCC referred certain records to DOJ**

**"[p]ursuant to federal agency guidance" is a legal conclusion that Plaintiffs do not admit.**

**The remainder of Defendants' statement concerns information only available to**

**Defendants, and, as Plaintiffs lack information about the remainder of Defendants'**

**statement, Plaintiffs neither admit nor deny the remainder of Defendants' statement.**

**Further responding, Defendants' statement is immaterial to the pending summary**

**judgment cross-motions, and so no response by Plaintiffs is required.**

51.     After reviewing and redacting the records to remove information exempt from

disclosure under FOIA, 5 U.S.C. § 552(b), OCC produced appropriately redacted records,

temporarily withholding all information that had been referred to other federal agencies pending

review by those other agencies, to Plaintiff JRC by mail on December 22, 2017.  Mednick Decl.

¶ 31; *see* Updated *Vaughn* Index.

**Plaintiffs' Response:  Undisputed that OCC produced redacted records to JRC, by way of**

**Plaintiffs' counsel, by mail on or about December 21, 2017.  Defendants' statements that**

**the information that OCC redacted from the records was "exempt from disclosure under**

**FOIA" and that the records that OCC produced were "appropriately redacted" are legal**

**conclusions that Plaintiffs dispute.  The remainder of Defendants' statement concerns**

**information only available to Defendants, and, as Plaintiffs lack information about the**

**remainder of Defendants' statement, Plaintiffs neither admit nor deny the remainder of**

**Defendants' statement.**

52.     DOJ reviewed and redacted the portions of the OCC's production of records

responsive to FOIA request 2017-1440 referred to it and had those appropriately redacted

records produced to Plaintiffs on March 19, 2018, June 13, 2018, and June 18, 2018.  Hermilla

Decl. ¶ 5; Mednick Decl. ¶ 32; *see* Updated *Vaughn* Index.

**Plaintiffs' Response:  Undisputed that Plaintiffs or Plaintiffs' counsel received productions**

**of redacted records from Defendants or Defendants' counsel on or about March 19, 2018,**

**June 13, 2018, and June 18, 2018.  Defendants' statement that the records that DOJ had**

**produced were "appropriately redacted" is a legal conclusion that Plaintiffs dispute.  The**

**remainder of Defendants' statement concerns information only available to Defendants,**

**and, as Plaintiffs lack information about the remainder of Defendants' statement, Plaintiffs**

**neither admit nor deny the remainder of Defendants' statement.**

*OCC Supplemental Production*

53.      As it prepared to submit its initial *Vaughn* index, OCC determined that it had

inadvertently omitted records from its previous productions it had made to Plaintiffs.  Mednick

Decl. ¶ 33.  Those omissions included records that had previously been referred to DOJ and/or

the Department of State.  Mednick Decl. ¶ 33.  Those omissions also included records

subsequently referred to DHHS.  Mednick Decl. ¶ 33; Marquis Decl.  ¶ 8.  OCC produced those

appropriately redacted files, temporarily withholding all information that had been referred to

other federal agencies pending review by those other agencies, to Plaintiffs by mail on March 5,

2018.  Mednick Decl. ¶ 33; *see* Updated *Vaughn* Index.

**Plaintiffs' Response:  Undisputed that OCC produced redacted records to Plaintiffs, by**

**way of Plaintiffs' counsel, by mail on or about March 5, 2018.  Defendants' statement that**

**the records that OCC produced were "appropriately redacted" is a legal conclusion that**

**Plaintiffs dispute.  The remainder of Defendants' statement concerns information only**

**available to Defendants, and, as Plaintiffs lack information about the remainder of**

**Defendants' statement, Plaintiffs neither admit nor deny the remainder of Defendants'**

**statement.**

54.      The Department of State reviewed and redacted the portions of the OCC

Supplemental production referred to it and had them produced with appropriate redactions to

Plaintiffs on or about February 13, 2018.  Stein Decl. ¶ 6; Kotler Decl. ¶ 27; Mednick Decl. ¶ 34; *see* Updated *Vaughn* Index.

**Plaintiffs' Response:  Undisputed that, on or about February 13, 2018, Dr. Peterson received a production of redacted records from Defendants or Defendants' counsel. Defendants' statement that DOS had the records produced "with appropriate redactions" is a legal conclusion that Plaintiffs dispute.  The remainder of Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about the remainder of Defendants' statement, Plaintiffs neither admit nor deny the remainder of Defendants' statement.**

55.      DOJ reviewed and redacted the portions of the OCC Supplemental production referred to it and had them produced with appropriate redactions to Plaintiffs on March 19, 2018, June 13, 2018, and June 18, 2018.  Hermilla Decl. ¶ 5; Mednick Decl. ¶ 35; *see* Updated *Vaughn* Index.

**Plaintiffs' Response:  Undisputed that Plaintiffs or Plaintiffs' counsel received productions of redacted records from Defendants or Defendants' counsel on or about March 19, 2018, June 13, 2018, and June 18, 2018.  Defendants' statement that DOJ had the records produced "with appropriate redactions" is a legal conclusion that Plaintiffs dispute.  The remainder of Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about the remainder of Defendants' statement, Plaintiffs neither admit nor deny the remainder of Defendants' statement.**

56.      DHHS reviewed and redacted the portions of the OCC Supplemental production referred to it and had them produced with appropriate redactions to Max Stern, counsel for

Plaintiff Peterson, on May 15, 2018.  Marquis Decl. ¶ 8; Mednick Decl. ¶ 36; *see* Updated

*Vaughn* Index.

**Plaintiffs' Response:  Undisputed that Max Stern is co-counsel for Dr. Peterson, and that**

**Mr. Stern received a production of redacted records from Defendants or Defendants'**

**counsel on or about May 14, 2018.  Defendants' statement that HHS had the records**

**produced "with appropriate redactions" is a legal conclusion that Plaintiffs dispute.  The**

**remainder of Defendants' statement concerns information only available to Defendants,**

**and, as Plaintiffs lack information about the remainder of Defendants' statement, Plaintiffs**

**neither admit nor deny the remainder of Defendants' statement.**

*Bates Numbers*

57.    To assist with indexing and review of agency redactions in litigation, OCC

personnel also added Bates numbers to all documents that had been produced by the agency to

that point.  Mednick Decl. ¶ 37.  By cover letter dated March 5, 2018, OCC re-produced with

Bates numbers (and appropriate redactions) all of the documents that it had previously produced

to Plaintiffs.  *Id.*

**Plaintiffs' Response:  Undisputed that, on or about March 5, 2018, Plaintiffs or Plaintiffs'**

**counsel received redacted and Bates numbered records from Defendants or Defendants'**

**counsel.  Defendants' statement that the records were produced "with . . . appropriate**

**redactions" is a legal conclusion that Plaintiffs dispute.  The remainder of Defendants'**

**statement concerns information only available to Defendants, and, as Plaintiffs lack**

**information about the remainder of Defendants' statement, Plaintiffs neither admit nor**

**deny the remainder of Defendants' statement.**

58.     In productions made to one or more Plaintiffs on December 4, 2017, December

22, 2017, and March 5, 2018, OCC released, with appropriate redactions, a total of over 2,800

pages of OCC records.  Mednick Decl. ¶ 38; *see* Updated *Vaughn* Index.

**Plaintiffs' Response:  Undisputed that, in productions made to one or more Plaintiffs on or**

**about December 4, 2017, December 21, 2017, and March 5, 2018, OCC released a total of**

**over 2,800 pages of redacted records.  Defendants' statement that OCC released these**

**records "with appropriate redactions" is a legal conclusion that Plaintiffs dispute.**

New England District Office's Processing of and Responses to Plaintiffs' FOIA Requests

59.     When the New England District Office is assigned a FOIA request from DFOI, a

search is conducted, as appropriate, of the New England District Office file rooms; FDA

computer databases, including Documentum, Compliance Management Services, and Online

Search and Retrieval; and, as necessary, the personal paper and computer files of individual New

England District Office personnel.  Recupero Decl. ¶ 7.  In the event that records of former FDA

employees need to be searched, the New England District Office directs FDA's Office of

Information Management and Technology to perform an appropriate search.  *Id.*

**Plaintiffs' Response:  Defendants' statement concerns information only available to**

**Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs**

**neither admit nor deny Defendants' statement.  Further responding, Defendants' statement**

**is immaterial to the pending summary judgment cross-motions, and so no response by**

**Plaintiffs is required.**

*New England District Office Initial Search for and Production of Records*

60.     After initially being assigned Plaintiffs' requests 2016-7184 and 2016-7308 in

2016, a New England District Office government information specialist searched for responsive

records and located 16 pages of records that were responsive to both requests.  Recupero Decl.

¶ 11.  Those records included a May 23, 2011, untitled letter from FDA to the Judge Rotenberg

Center; October 17, 2012 Form FDA-483 List of Inspectional Observations from an FDA

inspection of the Judge Rotenberg Center; and the Judge Rotenberg Center's December 22,

2012, response to FDA's December 7, 2012, warning letter.  *Id.*  They are located in FDA's

production at NWE-DO&DFOI00002 through 00006, NWE-DO&DFOI00011 through 00013,

and NWE-DO&DFOI00017 through 00024.  *Id.*

**Plaintiffs' Response:  Undisputed that the May 23, 2011 Untitled Letter from FDA to JRC,**

**the October 17, 2012 Form FDA-483, and JRC's December 21, 2012 response to FDA's**

**December 7, 2012 Warning Letter are responsive to the First and Second Requests, and**

**that such records (without attachments) are located in FDA's production at NWE-**

**DO&DFOI00002-6, NWE-DO&DFOI00011-13, and NWE-DO&DFOI00017-24.  The**

**remainder of Defendants' statement concerns information only available to Defendants,**

**and, as Plaintiffs lack information about the remainder of Defendants' statement, Plaintiffs**

**neither admit nor deny the remainder of Defendants' statement.**

61.     The government information specialist redacted the records to remove

information that was exempt from production under FOIA and produced the appropriately

redacted records to Plaintiff Paul Peterson on September 26, 2016.   Recupero Decl. ¶ 12; *see*

Updated *Vaughn* Index.

**Plaintiffs' Response:  Undisputed that Dr. Peterson received a production of redacted**

**records on or about September 26, 2016.  Defendants' statements that the redacted**

**information was "exempt from production under FOIA" and that the produced records**

**were "appropriately redacted" are legal conclusions that Plaintiffs dispute.  The remainder**

of Defendants' statement concerns information only available to Defendants, and, as

Plaintiffs lack information about the remainder of Defendants' statement, Plaintiffs neither

admit nor deny the remainder of Defendants' statement.

*New England District Office Supplemental Search for and Production of Records*

62.     Following conversations between Plaintiffs' counsel and FDA counsel, the New

England District Office agreed to conduct a supplemental search for records responsive to

Plaintiffs' FOIA requests 2016-7184, 2016-7308, and 2017-1440.  Recupero Decl. ¶ 14.  The

supplemental search included all New England District Office staff listed in the Cover Letter.  *Id.*

**Plaintiffs' Response:  Undisputed that the Cover Letter lists current and former NWE-DO**

**employees, that Plaintiffs' counsel and FDA's counsel had conversations about the**

**inadequacy of NWE-DO's initial search, and that FDA's counsel agreed that NWE-DO**

**would conduct a supplemental search for records responsive to the First, Second, and**

**Fourth Requests that would include all NWE-DO employees listed in the Cover Letter.**

**The remainder of Defendants' statement concerns information only available to**

**Defendants, and, as Plaintiffs lack information about the remainder of Defendants'**

**statement, Plaintiffs neither admit nor deny the remainder of Defendants' statement.**

**Further responding, Defendants' statement is immaterial to the pending summary**

**judgment cross-motions, and so no response by Plaintiffs is required.**

63.     As part of the supplemental search, the government information specialist sent an

email with FOIA requests 2016-7184, 2016-7308, and 2017-1440 attached to New England

District Office staff, including the New England District Director, all New England District

Office compliance officers, and all New England District Office inspections branch device

supervisors.  Recupero Decl. ¶ 16.  The email asked them to search their files for responsive

records and also asked them to direct any of their employees likely to have responsive records to search their files for responsive records. *Id.*

**Plaintiffs' Response:  Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs neither admit nor deny Defendants' statement.  Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

64.     For former New England District Office staff listed in the Cover Letter, the government information specialist directed FDA's Office of Information Management and Technology staff to search former employees' files for responsive records.  Recupero Decl. ¶ 17. The government information specialist directed them to search records from the period January 2000 to the time of the search (March 2018) for the following search terms: JRC, Judge Rotenberg, ESD, ban proposal, electric stimulations devices, CMS Case 151253, Rotenberg.  *Id.*

**Plaintiffs' Response:  Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs neither admit nor deny Defendants' statement.  Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

65.     The New England District Office Government Affairs specialist and New England District Office staff working under her supervision gathered the responsive records and reviewed them for information that was exempt from production under FOIA.  Recupero Decl. ¶ 18.  They made appropriate redactions to protect exempt information and produced responsive records to Plaintiffs, specifically producing 562 appropriately redacted pages with Bates numbers

NWE-DO&DFOI000025 through NWE-DO&DFOI000586 to Plaintiffs' counsel Max Stern on

May 2, 2018. *Id.*; *see* Updated *Vaughn* Index. The government information specialist

subsequently produced an additional 10,205 appropriately redacted pages with Bates numbers

NWE-DO&DFOI000587 through NWE-DO&DFOI010792 to Plaintiffs' counsel Max Stern,

Edward Longosz, and Michael Flammia on June 15, 2018, and June 20, 2018. *Id.*; *see* Updated

*Vaughn* Index.

**Plaintiffs' Response: Defendants' statements that NWE-DO "made appropriate redactions**

**to protect exempt information" and produced "appropriately redacted pages" are legal**

**conclusions that Plaintiffs dispute. Undisputed that Mr. Stern received a production of**

**approximately 562 redacted and Bates numbered pages on or about May 2, 2018, and that**

**Plaintiffs' counsel received a production of approximately 10,205 redacted and Bates**

**numbered pages on June 15 and 20, 2018. The remainder of Defendants' statement**

**concerns information only available to Defendants, and, as Plaintiffs lack information**

**about the remainder of Defendants' statement, Plaintiffs neither admit nor deny the**

**remainder of Defendants' statement.**

     66.    During its review of responsive materials, the New England District Office found

records that originated with FDA's Center for Devices and Radiological Health ("CDRH").

Recupero Decl. ¶ 19. The New England District Office referred those records to CDRH, which

intends to produce them as appropriate with its subsequent productions. *Id.*

**Plaintiffs' Response: Defendants' statement concerns information only available to**

**Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs**

**neither admit nor deny Defendants' statement.**

     <u>ORA Headquarters' Processing of and Responses to Plaintiffs' FOIA Requests</u>

67.     Following conversations between Plaintiffs' counsel and FDA counsel, ORA headquarters agreed to conduct a search for records responsive to Plaintiffs' FOIA requests 2016-7184, 2016-7308, and 2017-1440.  Pickworth Decl. ¶ 8.  ORA's search included all ORA staff who had never worked in the New England District Office and who were listed in the Cover Letter.  *Id.*  Specifically, ORA searched for records from current FDA employee Janice Sheehy and former FDA employees Sharon McCoy, Robert Wesley, and Eugene Leger.  *Id.*

**Plaintiffs' Response:  Undisputed that the Cover Letter lists current and former employees of ORA, that Plaintiffs' counsel and FDA's counsel had conversations about a search of ORA, and that FDA's counsel agreed that ORA would conduct a search for records responsive to the First, Second, and Fourth Requests that would include all ORA employees listed in the Cover Letter.  The remainder of Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about the remainder of Defendants' statement, Plaintiffs neither admit nor deny the remainder of Defendants' statement.  Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

68.     To initiate ORA's search, a FOIA officer sent an email to Janice Sheehy. Pickworth Decl. ¶ 12.  The email asked Ms. Sheehy to search her files for records for the search time frame of 2000 to present for any of the following search terms — "JRC", "Judge Rotenberg", "ESD", "ban proposal", "electric simulations devices", "CMS Case 151253", or "Rotenberg."  *Id.*  ORA staff asked Ms. Sheehy to identify any other individuals that had worked in Office of Enforcement at the time that would have any responsive records.  *Id.*

**Plaintiffs' Response:  Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs**

**neither admit nor deny Defendants' statement.  Further responding, Defendants' statement**
**is immaterial to the pending summary judgment cross-motions, and so no response by**
**Plaintiffs is required.**

69.     For former ORA staff who were listed in the Cover Letter (Sharon McCoy,
Robert Wesley, and Eugene Leger), ORA staff directed FDA's Office of Information
Management and Technology staff to search certain former employees' files for responsive
records.  Pickworth Decl. ¶ 13.  ORA staff then directed Office of Information Management and
Technology staff to search records from the period January 2000 to the time of the search (April
2018) for the following search terms: JRC, Judge Rotenberg, ESD, ban proposal, electric
stimulations devices, CMS Case 151253, Rotenberg.  *Id.*  The Office of Information
Management and Technology staff expanded the search to include JRC OR "Judge Rotenberg"
OR ESD OR "ban proposal" OR "Electrical Stimulation Devices" OR "CMS Case 151253" OR
Rotenberg OR "Judge Rotenburg" OR Rotenburg with date range from 2000 to present.  *Id.*
**Plaintiffs' Response:  Defendants' statement concerns information only available to**
**Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs**
**neither admit nor deny Defendants' statement.  Further responding, Defendants' statement**
**is immaterial to the pending summary judgment cross-motions, and so no response by**
**Plaintiffs is required.**

70.     ORA staff gathered the records collected and reviewed them for responsiveness to
the FOIA requests and for information that was exempt from production under FOIA.  Pickworth
Decl. ¶ 14.  ORA staff made appropriate redactions to protect exempt information and produced
responsive records with appropriate redactions to Plaintiffs.  *Id.*; *see* Updated *Vaughn* Index.

**Plaintiffs' Response:  Defendants' statements that ORA "made appropriate redactions to protect exempt information" and produced records "with appropriate redactions" are legal conclusions that Plaintiffs dispute.  Undisputed that Plaintiffs or Plaintiffs' counsel received redacted records from ORA.  The remainder of Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about the remainder of Defendants' statement, Plaintiffs neither admit nor deny the remainder of Defendants' statement.**

71.     ORA produced 10 appropriately redacted pages with Bates numbers ORA000001 through ORA000010 to Plaintiff Peterson and Plaintiffs' counsel Michael Flammia on June 4, 2018.  Pickworth Decl. ¶ 14; *see* Updated *Vaughn* Index.  ORA subsequently produced an additional 372 appropriately redacted pages with Bates numbers ORA000011 through ORA000382 to Plaintiff Peterson and Plaintiffs' counsel Michael Flammia on June 29, 2018. *Id.*; *see* Updated *Vaughn* Index

**Plaintiffs' Response:  Undisputed, except that Defendants' statement that ORA produced "appropriately redacted" pages is a legal conclusion that Plaintiffs dispute.**

 DHHS's Office of the Secretary's Processing of and Responses to Plaintiffs' FOIA Requests

72.     The Office of the Secretary of DHHS produced two sets of appropriately redacted records in response to Plaintiffs' FOIA Requests.  Marquis Decl. ¶ 6.  The Office of the Secretary redacted and produced FDA records that were referred to it by FDA. *Id.*; *see* Updated *Vaughn* Index.  The Office of the Secretary also searched its own files for records responsive to Plaintiffs' FOIA requests and produced those records, appropriately redacted, to Plaintiffs. *Id.*; *see* Updated *Vaughn* Index.

**Plaintiffs' Response:  Defendants' statement that OS produced "appropriately redacted**

**records" is a legal conclusion that Plaintiffs dispute.  Undisputed that Plaintiffs or**

**Plaintiffs' counsel received redacted records from HHS.  The remainder of Defendants'**

**statement concerns information only available to Defendants, and, as Plaintiffs lack**

**information about the remainder of Defendants' statement, Plaintiffs neither admit nor**

**deny the remainder of Defendants' statement.**

*Office of the Secretary Production of Records Referred from FDA*

73.     FDA referred 26 pages of records to the Office of the Secretary on December 15,

2017.  Marquis Decl. ¶ 7.  These records included information that originated with DHHS.  *Id.*

Personnel from the Freedom of Information/Privacy Acts Division of the Office of the Secretary

reviewed the records referred from FDA, redacted them to remove information exempt from

disclosure under FOIA, and produced the appropriately redacted records to Plaintiff Peterson on

April 3, 2018.  *Id.*; *see* Updated *Vaughn* Index.

**Plaintiffs' Response:  Defendants' statements that OS redacted "information exempt from**

**disclosure under FOIA" and that OS produced "appropriately redacted records" are legal**

**conclusions that Plaintiffs dispute.  Undisputed that HHS produced 26 pages of redacted**

**records to Dr. Peterson on or about April 3, 2018.  The remainder of Defendants' statement**

**concerns information only available to Defendants, and, as Plaintiffs lack information**

**about the remainder of Defendants' statement, Plaintiffs neither admit nor deny the**

**remainder of Defendants' statement.**

74.     The records reviewed by personnel from the Freedom of Information/Privacy

Acts Division of the Office of the Secretary for information exempt from disclosure contained in

records that originated with DHHS are located at the following locations within FDA's productions to the Plaintiffs:

- 2016-7184OCC000049 through 2016-7184OCC000050

- 2016-7184OCC000060 through 2016-7184OCC000061

- 2016-7184OCC000076 thorough 2016-7184OCC000078

- 2016-7184OCC000090 through 2016-7184OCC000092

- 2016-7184OCC000100 through 2016-7184OCC000102

- 2016-7184OCC000114 through 2016-7184OCC000115

- 2016-7184OCC000121 through 2016-7184OCC000123

- 2016-7184OCC000150 through 2016-7184OCC000156

- 2016-7184OCC000174.

Marquis Decl. ¶ 7.

**Plaintiffs' Response:  Undisputed that the 26 pages of redacted records that HHS produced to Dr. Peterson on or about April 3, 2018 are stamped with the Bates numbers in Defendants' statement.  The remainder of Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about the remainder of Defendants' statement, Plaintiffs neither admit nor deny the remainder of Defendants' statement.  Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

75. FDA referred an additional 58 pages of records to the Office of the Secretary on April 6, 2018.  Marquis Decl. ¶ 8.  Personnel from the Freedom of Information/Privacy Acts Division of the Office of the Secretary again reviewed those records and redacted them to remove information exempt from disclosure under FOIA.  *Id.*  FDA produced those records as

redacted by the Office of the Secretary to Max Stern, counsel for Plaintiff Peterson, by cover

letter dated May 14, 2018.  *Id.*; Mednick Decl. ¶¶ 19, 36.  Those records are located within the

productions to the Plaintiffs at OCCSupp000004 through OCCSupp000061.  Marquis Decl. ¶ 8.

**Plaintiffs' Response:  Defendants' statement that OS redacted "information exempt from**

**disclosure under FOIA" is a legal conclusion that Plaintiffs dispute.  Undisputed that FDA**

**produced 58 pages of redacted records that were Bates numbered as OCCSupp00004-61 to**

**Mr. Stern.  The remainder of Defendants' statement concerns information only available to**

**Defendants, and, as Plaintiffs lack information about the remainder of Defendants'**

**statement, Plaintiffs neither admit nor deny the remainder of Defendants' statement.**

*Production of Office of the Secretary Records*

76.     Following conversations between Plaintiffs' counsel and FDA counsel, DHHS's

Office of the Secretary agreed to conduct a search for records responsive to Plaintiffs' FOIA

requests 2016-7184, 2016-7308, and 2017-1440.  Marquis Decl. ¶ 9.  The Office of the

Secretary's search included all staff from the Office of the Secretary who were listed in FDA

counsel's March 2, 2018, Cover Letter.  *Id.*

**Plaintiffs' Response:  Undisputed that the Cover Letter lists current and former OS**

**employees, that Plaintiffs' counsel and FDA's counsel had conversations about a search of**

**OS, and that FDA's counsel agreed that OS would conduct a search for records responsive**

**to the First, Second, and Fourth Requests that would include all OS employees listed in the**

**Cover Letter.  The remainder of Defendants' statement concerns information only**

**available to Defendants, and, as Plaintiffs lack information about the remainder of**

**Defendants' statement, Plaintiffs neither admit nor deny the remainder of Defendants'**

**statement.  Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

77.     Personnel from the Office of the Secretary's Freedom of Information/Privacy Acts Division sent an e-mail and file records search form to the HHS Office of the Chief Information Officer (OCIO) on May 10, 2018.  Marquis Decl. ¶ 13.  OCIO was directed to conduct an automated search of the e-mail accounts of the following custodians:  Sylvia Burwell, Jocelyn Samuels, Robinsue Frohboese, Andrea Palm, Averi Pakulis, Robert Clark, Douglas Steiger, and David Horowitz.  *Id.*  OCIO searched for responsive e-mails using the following search terms:  "JRC", "Judge Rotenberg", "ESD", "Ban Proposal", "Electric Stimulation Devices", "CMS Case 151253", and  "Rotenberg".  *Id.*  OCIO searched for e-mails within the following timeframe:  January 1, 2012, through May 10, 2018.  *Id.*

**Plaintiffs' Response:  Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs neither admit nor deny Defendants' statement.  Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

78.     Personnel from the Freedom of Information/Privacy Acts Division of the Office of the Secretary gathered the responsive records and reviewed them for information that was exempt from production under FOIA.  Marquis Decl. ¶ 14.  They made appropriate redactions to protect exempt information and produced responsive records to Plaintiffs.  *Id.*; *see* Updated *Vaughn* Index.  The Office of the Secretary produced 756 appropriately redacted pages with Bates numbers HHS-ESD Page 000001 through HHS-ESD Page 000756 to Plaintiff Peterson and Plaintiffs' counsel Michael Flammia on June 15, 2018.  *Id.*; *see* Updated *Vaughn* Index.

**Plaintiffs' Response:  Defendants' statements that OS "made appropriate redactions to protect exempt information" and "produced . . . appropriately redacted pages" are legal conclusions that Plaintiffs dispute.  Undisputed that OS produced 756 pages of redacted records that were Bates numbered as HHS-ESD Page 000001-756 to Dr. Peterson and Michael Flammia, co-counsel for Dr. Peterson, on or about June 15, 2018.  The remainder of Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about the remainder of Defendants' statement, Plaintiffs neither admit nor deny the remainder of Defendants' statement.**

<u>Department of Health and Human Services' Administration for Community Living's Processing of and Responses to Plaintiffs' FOIA Requests</u>

79.     Following conversations between Plaintiffs' counsel and FDA counsel, the Administration for Community Living agreed to conduct a search for records responsive to Plaintiffs' FOIA requests 2016-7184, 2016-7308, and 2017-1440.  Nicholls Decl. ¶ 6.  The Administration for Community Living searched for files in the custody of Kathy Greenlee, Sharon Lewis, and James Toews, who were the only staff from the Administration for Community Living who were listed in FDA counsel's March 2, 2018, Cover Letter.  *Id.*

**Plaintiffs' Response:  Undisputed that the Cover Letter lists current and former employees of ACL, that Plaintiffs' counsel and FDA's counsel had conversations about a search of ACL, and that FDA's counsel agreed that ACL would conduct a search for records responsive to the First, Second, and Fourth Requests that would include all ACL employees listed in the Cover Letter.  The remainder of Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about the remainder of Defendants' statement, Plaintiffs neither admit nor deny the remainder of Defendants'**

**statement.  Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

80.     The Chief of Staff for the Administration for Community Living searched through the electronic files retained per the agency's records schedules for Kathy Greenlee, Sharon Lewis, and James Toews, opening each folder and file individually utilizing Windows Explorer, Microsoft Excel, PowerPoint and Word, and Adobe Acrobat Pro to search for key terms and content.  Nicholls Decl. ¶ 10.

**Plaintiffs' Response:  Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs neither admit nor deny Defendants' statement.  Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

81.     The Administration for Community Living's Chief of Staff also searched the email archive files available for Kathy Greenlee, Sharon Lewis, and James Toews for key terms and content.  Nicholls Decl. ¶ 10.  The search terms used were JRC, Judge Rotenberg Center, ESD, ban proposal, electric stimulations devices, shock, and abuse.  *Id.*  The Administration for Community Living searched for records created between January 2012 and the date of the search (June 2018).  *Id.*

**Plaintiffs' Response:  Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs neither admit nor deny Defendants' statement.  Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

82.     The Administration for Community Living produced 485 pages with appropriate redactions with Bates numbers HHS ACL ESD 000001 through HHS ACL ESD 000485 to Plaintiff Peterson and Plaintiffs' counsel Michael Flammia on July 6, 2018.  Nicholls Decl. ¶ 11; *see* Updated *Vaughn* Index.

**Plaintiffs' Response:  Defendants' statement that ACL "produced . . . pages with appropriate redactions" is a legal conclusion that Plaintiffs dispute.  Undisputed that ACL produced 485 pages of redacted records that were Bates numbered as HHS ACL ESD 000001-485 to Dr. Peterson and Mr. Flammia on or about July 6, 2018.**

DOJ's Law Enforcement Records

83.     DOJ's Civil Rights Division is responsible for the enforcement of numerous criminal civil rights statutes as well as civil enforcement statutes and regulations.  Hermilla Decl. ¶ 4.

**Plaintiffs' Response:  Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about Defendants' statement, Plaintiffs neither admit nor deny Defendants' statement.  Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

84.     The Civil Rights Division opened an investigation of the Judge Rotenberg Center (JRC) for the alleged violation of Title III of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12181-12189, and DOJ's implementing regulation, 28 C.F.R. Part 36.  Hermilla Decl. ¶ 4.  Title III of the ADA prohibits discrimination against individuals with disabilities by public accommodations, including residential non-profit schools, 42 U.S.C.

§ 12181(7).  *Id.*  DOJ is authorized to investigate alleged violations of Title III. 42 U.S.C.

§ 12188(b)(1)(A)(i); *id.*

**Plaintiffs' Response:  The second and third sentences in Defendants' statement are legal conclusions that Plaintiffs do not admit.  The remainder of Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about the remainder of Defendants' statement, Plaintiffs neither admit nor deny the remainder of Defendants' statement.  Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

85.     The Attorney General may commence a civil action in an appropriate United States District Court where he determines that (i) any person or group of persons is engaged in a pattern or practice of discrimination under Title III; or (ii) any person or group of persons has been discriminated against under Title III and such discrimination raises an issue of general public importance. 42 U.S.C. §§ 12188(b)(1)(B).  Hermilla Decl. ¶ 4; .

**Plaintiffs' Response:  Defendants' statement is a legal conclusion that Plaintiffs do not admit.  Further responding, Defendants' statement is immaterial to the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

Redactions and Withholdings from Documents Produced to Plaintiffs

86.     Records produced to Plaintiffs were reviewed for information exempt from disclosure under FOIA, 5 U.S.C. § 552(b).  Kotler Decl. ¶¶ 40, 42; Recupero Decl. ¶¶ 12, 18; Mednick Decl. ¶¶ 15, 22, 29, 39, 41; Hermilla Decl. ¶ 5; Stein Decl. ¶¶ 6-8; Pickworth Decl. ¶ 14; Marquis Decl. ¶¶ 7-8, 14; Nicholls Decl. ¶ 11.

**Plaintiffs' Response:  Undisputed that Defendants produced to Plaintiffs certain redacted records.  To the extent that Defendants imply that the information redacted from such**

**records was "exempt from disclosure under FOIA", Defendants' statement is a legal conclusion that Plaintiffs dispute.  The remainder of Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about the remainder of Defendants' statement, Plaintiffs neither admit nor deny the remainder of Defendants' statement.**

87.     Review for exempt information was done carefully on a page-by-page, line-by-line basis, and no further information from withheld or partially withheld responsive documents could be made without revealing the information protected by U.S.C. section 552(b).  Kotler Decl. ¶ 40; Recupero Decl. ¶ 20; Mednick Decl. ¶ 39; Hermilla Decl. ¶ 7; Stein Decl. ¶ 11; Pickworth Decl. ¶ 15; Marquis Decl. ¶ 15; Nicholls Decl. ¶ 15.

**Plaintiffs' Response:  Undisputed that Defendants withheld from Plaintiffs certain records in full and in part.  Defendants' statement that "no further information from partially withheld responsive documents could be made without revealing information protected by [FOIA]" is a legal conclusion that Plaintiffs dispute.  The remainder of Defendants' statement concerns information only available to Defendants, and, as Plaintiffs lack information about the remainder of Defendants' statement, Plaintiffs neither admit nor deny the remainder of Defendants' statement.**

88.     All redactions and withholdings from records produced to Plaintiffs were documented the Updated *Vaughn* Index for *The Judge Rotenberg Educational Center, Inc. et al., v. U.S. Food and Drug Administration*, et al., No. 17-cv-2092-BAH (D.D.C.) ("Updated *Vaughn* Index") filed by the government on July 12, 2018.  Kotler Decl. ¶ 41; Recupero Decl. ¶ 21; Mednick Decl. ¶ 40; Hermilla Decl. ¶ 8; Pickworth Decl. ¶ 16; Marquis Decl. ¶ 16; Nicholls Decl. ¶ 16.  The government's Updated *Vaughn* Index provides, if applicable, a detailed

description of each document withheld in part or in full, the date of the document, the author and intended recipient of the document, the start and end pages of the document, a claim of relevant exemptions for each redaction, and a particularized explanation of the redacted information. *Id.*; *see* Updated *Vaughn* Index.

**Plaintiffs' Response:  Disputed that Defendants documented all redactions and withholdings from records produced to Plaintiffs in the Updated Index.  *See*, *e.g.*, Declaration of Matthew D. Rodgers ("Rodgers Decl.") at Attachment 43 (withholding in part record under 5 U.S.C. § 552(b)(5) and (b)(6)); Updated Index at 520-22 (missing entry for Attachment 43).  Undisputed that Defendants' Updated Index contains columns for the following information: "Description"; "Document Disposition"; "No. of Pages withheld in Full"; "Date"; "Author"; "Recipient(s)"; "'CC' Recipient(s)"; "Start Bates"; "End Bates"; and "Reason(s) for Withholding and Explanation".  Defendants' statements that the Updated Index provides "a detailed description" of each withheld record and "a particularized explanation" of all redacted information are legal conclusions that Plaintiffs dispute.  Defendants' statement that the Updated Index claims "relevant" exemptions for redactions is a legal conclusion that Plaintiffs dispute.  Disputed that the Updated Index provides information about "each document withheld in part or in full".  *See*, *e.g.*, Rodgers Decl. at Attachment 43 (withholding in part record under 5 U.S.C. § 552(b)(5) and (b)(6)); Updated Index at 520-22 (missing entry for Attachment 43).  Disputed that the Updated Index provides the date of each document "if applicable".  *See*, *e.g.*, Updated Index at 732-33 (omitting date of withheld email).  Disputed that the Updated Index provides the author and intended recipient of each document "if applicable".  *See*, *e.g.*, *id.* at 128-30 (failing to identify the author of a Microsoft Excel file and the recipient of that file, which was**

attached to an email).  **Disputed that the Updated Index provides the start and end pages of each document "if applicable".**  *See*, *e.g.*, **Rodgers Decl., Attachment 60 at JRC OES Supplemental 1 009154 (withholding in full 116 pages under 1 Bates number); Updated Index at 992-93 (entry for Attachment 60 providing 1 Bates number for 116 pages withheld in full).  Disputed that the Updated Index provides a claim of exemption for each redaction "if applicable".**  *See*, *e.g.*, **Rodgers Decl. at Attachment 62 (withholding in part record under 5 U.S.C. § 552(b)(5)); Updated Index at 1581 (entry for Attachment 62 providing no claim of exemption).  Disputed that the Updated Index provides all exemptions claimed for each redaction.**  *See*, *e.g.*, **Rodgers Decl., Attachment 9 at 1 (purportedly reserving Defendants' right to assert additional justifications where records indicate more justifications than Updated Index);** *id.*, **Attachment 42 at JRC OES Supplemental 1 004489 (justifying redactions as non-responsive and under 5 U.S.C. § 552(b)(5)); Updated Index at 752-53 (entry for Attachment 42 justifying redactions only under 5 U.S.C. § 552(b)(5)).**

89.    The government's Updated *Vaughn* Index documents that information redacted by the government in its productions was exempt from disclosure under exemptions 5 (intra-agency or inter-agency communications not available by law), 6 (personal privacy information in personnel, medical, and similar files), and/or 7(C) (personal privacy information in records compiled for law enforcement purposes) of FOIA, 5 U.S.C. §§ 552(b), (5), (6) and (7)(C). Kotler Decl. ¶ 42; Recupero Decl. ¶ 22; Mednick Decl. ¶ 41; Hermilla Decl. ¶ 9; Pickworth Decl. ¶ 17; Marquis Decl. ¶ 17; Nicholls Decl. ¶ 17;  *see* Updated *Vaughn* Index.

**Plaintiffs' Response:  Undisputed that the Updated Index documents that Defendants purport to have withheld information as non-responsive and under 5 U.S.C. § 552(b)(5) ("Exemption 5"), (b)(6) ("Exemption 6"), and (b)(7)(C) ("Exemption 7").  Defendants'**

statement that the redacted information was actually "exempt from disclosure" is a legal conclusion that Defendants dispute.

90.     Information withheld pursuant to Exemption 5 of FOIA included information protected by the deliberative process privilege and the attorney-client privilege.  Kotler Decl. ¶¶ 44-47; Recupero Decl. ¶¶ 24-26; Mednick Decl. ¶¶ 43-44; Hermilla Decl. ¶ 11; Stein Decl. ¶¶ 7-18; Pickworth Decl. ¶¶ 19-21; Marquis Decl. ¶ 19-21; Nicholls Decl. ¶¶ 18-19;  *see* Updated *Vaughn* Index.

**Plaintiffs' Response:  Undisputed that Defendants purport to withhold under Exemption 5 information that they claim is protected by the deliberative process privilege and/or the attorney-client privilege.  Defendants' statement that the withheld information is actually "protected by the deliberative process privilege and the attorney-client privilege" is a legal conclusion that Plaintiffs dispute.**

91.     The government withheld information subject to Exemption 6 of FOIA, 5 U.S.C. § 552(b)(6).  Kotler Decl. ¶¶ 48-49; Recupero Decl. ¶¶ 27-28; Mednick Decl. ¶¶ 45-46; Hermilla Decl. ¶ 12-13; Pickworth Decl. ¶ 22; Marquis Decl. ¶¶ 22-23; Nicholls Decl. ¶ 20;  *see* Updated *Vaughn* Index.  This information includes, among other things, medical information and contact information that would constitute a clearly unwarranted invasion of personal privacy.  Kotler Decl. ¶ 49; Recupero Decl. ¶ 28; Mednick Decl. ¶ 46; Hermilla Decl. ¶ 13; Pickworth Decl. ¶ 22; Marquis Decl. ¶ 23; Nicholls Decl. ¶ 20;  *see* Updated *Vaughn* Index.

**Plaintiffs' Response:  Undisputed that Defendants purport to withhold under Exemption 6 medical, contact, and other information.  Defendants' statement that the disclosure of the withheld information "would constitute a clearly unwarranted invasion of personal privacy" is a legal conclusion that Plaintiffs dispute.**

92.     DOJ withheld information subject to Exemption 7(C) of FOIA, 5 U.S.C. §

552(b)(7)(C).  Hermilla Decl. ¶¶ 9, 14-15.  Redacted information includes, among other things,

personal contact information contained in records compiled for law enforcement purposes.

Hermilla Decl. ¶ 15.

**Plaintiffs' Response:  Undisputed that Defendants purport to withhold certain information**

**under Exemption 7.  To the extent that Defendants imply that the information they**

**withheld is actually exempt under Exemption 7, Defendants' statement is a legal conclusion**

**that Plaintiffs do not admit.  Further responding, Defendants' statement is immaterial to**

**the pending summary judgment cross-motions, and so no response by Plaintiffs is required.**

## II.     PLAINTIFFS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

1.      JRC is a residential program that currently provides care and treatment to 274

patients from 13 states, Washington, D.C., and the U.S. Virgin Islands, who engage in severe

problem behaviors, including self-injurious behavior ("SIB") and aggressive behavior ("AB").

*See* Declaration of Glenda P. Crookes ("Crookes Decl.") at ¶ 3.  JRC currently provides

supplemental treatment with the Graduated Electronic Decelerator ("GED"), an electrical

stimulation device ("ESD"), to 48 of its patients from 5 states, all of whom engage in life-

threatening and treatment-resistant SIB and AB, and for each of whom a probate court judge has

made an individualized determination that ESD treatment is the most effective, least-restrictive

treatment for their severe behaviors.  *See id.*

2.      According to FDA, JRC is the only program in the country that offers ESD

treatment to patients who require it.  81 Fed. Reg. 24386, 24390.

3.      JRC was formerly known as the Behavior Research Institute, Inc. ("BRI").  *See*

Rodgers Decl., Attachment 34 at 2016-7308OCCpart200624.  JRC received 510(k) clearance for

its first GED model on December 5, 1994.  *See* U.S. FOOD & DRUG ADMIN., 510(K) PREMARKET

NOTIFICATION,

https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfPMN/pmn.cfm?ID=K911820 (last visited

Sept. 6, 2018).

4.      By January 2000, JRC had developed enhanced versions of the GED with

additional safety features.  *See* Rodgers Decl., Attachment 34 at 2016-7308OCCpart200624; *see*

*also id.*, Attachment 38 at CDRH_Production_2 – 001150.

5.      On February 14, 2000, after conducting an inspection, FDA advised that JRC was

"exempt form [*sic*] 510(k) notices, and the [GED] device [wa]s considered to be within the

practice of medicine".  *See id.*, Attachment 34 at 2016-7308OCCpart200625.  In a

contemporaneous internal communication, NWE-DO's Karen Archdeacon wrote that FDA "did

not observe any indications that the patients/clients were at risk" from the GED devices during

the inspection of JRC.  *See id.* at Attachment 35.

6.      In 2010, the Commonwealth of Massachusetts contacted FDA about the clearance

status of the GED devices.  *See id.*, Attachment 36 at ORA000228.

7.      In a recent decision following a lengthy trial between JRC and its state regulator,

the Massachusetts Department of Developmental Services ("DDS"), the Massachusetts Probate

Court found that DDS regulated JRC in bad faith in 2010 because, in part, DDS's General

Counsel, Marianne Meacham, *see id.*, Attachment 7 at 2, and DDS's Commissioner, Elin Howe,

*see id.* at ¶ 98, removed information favorable to JRC about the GED's clearance status with

FDA from a purportedly independent report concerning JRC's certification to use the GED, *see*

*id.* at ¶¶ 105, 122, 131.

8. FDA then suddenly reversed its position, claiming that the GED was a medical device under FDA's jurisdiction, and that JRC was required to submit a second 510(k) notice for modifications made to the original FDA-cleared GED device. *See id.* at Attachment 37.

9. Although JRC disagreed with FDA's new position, *see id.*, Attachment 38 at CDRH_Production_2 – 001150, JRC informed FDA that it would seek 510(k) clearance for the GED devices, *see id.* at CDRH_Production_2 – 001151. JRC then prepared a 510(k) notice. *See id.*, Attachment 1 at 002.

10. During a January 9, 2013 meeting between FDA and JRC, FDA requested that JRC first file a pre-submission in order to discuss the content of the 510(k) notice. *See id.*

11. On January 10, 2013, Ms. Archdeacon spoke with Ms. Howe about DDS's inspections of JRC and information sharing between FDA and DDS. *See id.*, Attachment 39 at NWE-DO&DFOI009801.

12. On January 29, 2013, FDA conducted a telephonic interview of former JRC patient Jennifer Msumba concerning her allegations about JRC and the GED. *See id.*, Attachment 18 at CDRH_Production_2 – 006674; *see also id.* at Attachment 23; *id.*, Attachment 29 at 2017-1440OCC00001. Ms. Msumba had previously shared her accusations with an anti-aversive advocate. *See id.* at Attachment 22.

13. JRC filed the pre-submission that FDA had requested on February 1, 2013, *see id.*, Attachment 1 at 001, and FDA scheduled a meeting with JRC to discuss the pre-submission for March 25, 2013, *see id.*, Attachment 2 at 2.

14. FDA cancelled this meeting days before it was scheduled to occur. *See id.*

15. Instead, on March 22, 2013, FDA met with anti-aversive advocacy groups, including the National Council on Disability, Disability Rights International, the National

Disability Rights Network, and the Arc, "to discuss FDA's role in assessing the use of aversive devices by the JRC".  *See id.*, Attachment 12 at JRC OES Supplemental 1 002729.

16.     FDA also spoke with two other former JRC patients concerning their allegations about JRC and the GED in 2013 and 2014.  81 Fed. Reg. at 24393.

17.     One former JRC patient interviewed by FDA was Hillary Cook, *see* Rodgers Decl. at Attachment 19, who is also known as Ian Cook, *see id.*, Attachment 21 at CDRH_Production_2 – 006028.  Ms. Cook had previously been interviewed by a news organization about this issue.  *See Lawmakers Consider Proposals Banning The Use Of Skin Shock Therapy*, WBUR (July 26, 2011), http://www.wbur.org/news/2011/07/26/shock-therapy-2.

18.     The other former JRC patient interviewed by FDA was M.L.  While Defendants have not disclosed this individual's full name, Defendants have disclosed this individual's first name as well as the full name and employer of his guardian, *see* Rodgers Decl. at Attachment 20, and, from this information, Plaintiffs have been able to ascertain M.L.'s identity.  Crookes Decl. at ¶ 5.

19.     FDA never responded to JRC's requests to reschedule the pre-submission meeting and never provided JRC with comments on the pre-submission that JRC had submitted at FDA's request, *see id.* at ¶ 6, in violation of its own guidance, *see* U.S. FOOD & DRUG ADMIN., GUIDANCE FOR INDUS. & FOOD & DRUG ADMIN. STAFF, REQUESTS FOR FEEDBACK ON MED. DEVICE SUBMISSIONS: THE PRE-SUBMISSION PROGRAM & MEETINGS WITH FOOD & DRUG ADMIN. STAFF at 18 (2017), https://www.fda.gov/downloads/medicaldevices/deviceregulationandguidance/guidancedocuments/ucm311176.pdf (last visited Sept. 6, 2018) (stating that FDA's "written feedback will be provided . . . no later than 70 days from receipt" of pre-submission).

20.     JRC received no further communications from FDA after FDA cancelled the pre-submission meeting until JRC received last-minute notice of a meeting concerning ESDs that was to be held on April 24, 2014 by the Neurological Devices Panel of the Medical Devices Advisory Committee of the Center for Devices and Radiological Health ("CDRH") of FDA ("Panel Meeting").  *See* Crookes Decl. at ¶ 7.

21.     At the Panel Meeting, Ms. Msumba publicly testified by video against JRC's GED, and Ms. Cook and former JRC employee Gregory Miller publicly testified in person against JRC's GED.  *See* Rodgers Decl. at Attachment 21.  Ms. Msumba also submitted a public comment to FDA against JRC's GED.  *See id.* at Attachment 45.

22.     At the Panel Meeting, approximately half of the panelists concluded that ESDs provide a therapeutic benefit, and the panelists unanimously concluded that there are patients who engage in SIB or AB for whom pharmacological and behavioral treatment options other than ESDs are inadequate.  81 Fed. Reg. at 24401, 06.

23.     After the Panel Meeting, Ms. Msumba was interviewed by a national news outlet about her story.  *See* Amy Burkholder, *Controversy over shocking people with autism, behavioral disorders*, CBS NEWS (Aug. 5, 2014 5:00 PM), https://www.cbsnews.com/news/controversy-over-shocking-people-with-autism-behavioral-disorders/.  She has also published at least two online videos about her alleged experience.  *See, e.g.*, Jen Msumba, (Jen Msumba Music), YouTube (Dec. 31, 2016), https://www.youtube.com/watch?v=6B_ej5zyWp0; Jen Msumba, (Jen Msumba Music), YouTube (Feb. 16, 2017), https://www.youtube.com/watch?v=JI-Utl8pRVE.

24.     Ms. Cook was also interviewed by a national news outlet about her story after the Panel Meeting, *see* Anna Schecter, *Shock Treatment: Ban Proposed for School's 'Electrical*

*Stimulation'*, NBC NEWS (Apr. 25, 2014 11:34 AM), https://www.nbcnews.com/health/health-news/shock-treatment-ban-proposed-schools-electrical-stimulation-n89761, as was Mr. Miller, *see* Amy Burkholder, *Controversy over shocking people with autism, behavioral disorders*, CBS NEWS (Aug. 5, 2014 5:00 PM), https://www.cbsnews.com/news/controversy-over-shocking-people-with-autism-behavioral-disorders/.

25.     FDA published its Proposal To Ban Electrical Stimulation Devices Used To Treat Self-Injurious or Aggressive Behavior ("Proposed Ban") in the Federal Register on April 25, 2016.  81 Fed. Reg. at 24386.  If implemented as a final rule, the Proposed Ban would prohibit JRC from providing GED treatment for the SIB and AB of D.P. and other current and future patients.  *See id.*  As of that date, FDA had only previously banned a single device over thirty years ago.  S*ee* FOOD & DRUG ADMIN., MED. DEVICE BANS, LIST OF MED. DEVICE BANS, https://www.fda.gov/medicaldevices/safety/medicaldevicebans/default.htm (last visited Sept. 6, 2018).

26.     FDA did not provide JRC with any notice of the Proposed Ban other than through the publication of the Proposed Ban in the Federal Register on April 25, 2016, *see* Crookes Decl. at ¶ 8, despite FDA's acknowledgment that JRC is the only provider that will be affected by its Proposed Ban, *see* 81 Fed. Reg. at 24390.

27.     Notwithstanding FDA's determination in the Proposed Ban that ESDs "present an unreasonable and substantial risk of illness or injury that cannot be corrected or eliminated by labeling", *id.* at 24386, and Defendants' suggestion that the use of ESDs constitutes torture, *see* Memorandum of Points and Authorities in Support of Defendants' Motion for Partial Summary Judgment ("Memorandum" or "Memo.") at 3 [ECF No. 25], FDA has not published a final rule implementing the Proposed Ban, *see id.* (stating that "FDA has not taken any final agency action

with respect to the Proposed [Ban]"), in the more than two years since the comment period on

the Proposed Ban closed on July 25, 2016, 81 Fed. Reg. 32258, 32258.

28.     FDA has not, however, withdrawn the Proposed Ban, which could, therefore, be

implemented at any time and without advance notice.  *See* Memo. at 24 (stating that there is "an

ongoing rulemaking proceeding currently pending before FDA").

29.     On July 19, 2016, Dr. Peterson, the father and legal guardian of D.P., an adult

male patient who is receiving GED treatment for his SIB and AB at JRC, and a member of the

Parents Association, *see* Crookes Decl. at ¶ 4, submitted to FDA six FOIA requests for records

concerning the GED and the Proposed Ban, *see* Compl. at Exs. A-1 – A-6, which FDA

aggregated as the First Request and docketed as FOIA Number 2016-7308, *see* Declaration of

Sarah Kotler ("Kotler Decl.") at ¶ 4 [ECF No. 24-2].

30.     On August 23, 2016, Dr. Peterson submitted to FDA two additional FOIA

requests, the Second and Third Requests, for records concerning the GED and the Proposed Ban,

*see* Compl. at Exs. F, H, which FDA docketed as FOIA Number 2016-7184, *see id.* at Ex. G

[ECF No. 1-12], and FOIA Number 2016-7106, *see id.* at Ex. I.

31.     On December 27, 2016, Mr. Flammia sent a letter to FDA on behalf of JRC.  *See*

Compl. at Ex. J.  JRC argued that, as the sole target of FDA's Proposed Ban, JRC had a due

process right to view and comment on all of the information on which FDA relied, and that

FDA's failure to produce such information to JRC constituted procedural error under the

Administrative Procedure Act.  *See id.* at 67.  JRC therefore requested that FDA produce

information and records concerning the GED and the Proposed Ban.  *See id.* at 67-71.

32.     On February 15, 2017, FDA informed Mr. Flammia that it was treating his letter

as the Fourth Request, which FDA docketed as FOIA Number 2017-1440.  *See* Compl. at Ex. L.

33.     On February 27, 2017, Mr. Stern sent a letter to FDA on behalf of the Parents

Association that incorporated by reference the Fourth Request, thereby joining the Fourth

Request as a requestor.  *See* Compl., Ex. M at 8 [ECF No. 1-18].

34.     Defendants have estimated that they may hold as many as 60,000 pages of records

responsive to Plaintiffs' FOIA Requests.  *See* Supplemental Joint Meet and Confer Report at 8

[ECF No. 16].

35.     Nonetheless, by the Fall of 2017, Defendants had only produced: 23 pages of

records from FDA's DFOI, Kotler Decl. at ¶ 31; Compl. at Ex. D; 16 pages of records from

FDA's NWE-DO, Declaration of Barbara A. Recupero ("Recupero Decl.") at ¶¶ 11-12; and 53

pages of records from FDA's OES, Kotler Decl. at ¶ 33; Compl. at Ex. E [ECF No. 1-10].

36.     Therefore, Plaintiffs initiated this litigation on October 10, 2017.  *See* Compl.

37.     In March and April of 2018, Plaintiffs' counsel and Defendants' counsel

conferred about their disagreements.  *See* Joint Status Report and Request to Extend the

Scheduling Order at 4 [ECF No. 21].

38.     During these discussions, Plaintiffs requested the removal of redactions that

Defendants purportedly made to protect JRC's confidential commercial information pursuant to

5 U.S.C. § 552(b)(4), and Defendants agreed and removed these redactions.  *See* Joint Status

Report and Request to Extend the Scheduling Order at 8; *see also* Rodgers Decl. at Attachments

4-5.

39.     Defendants claim that they have produced approximately 24,241 pages of records.

*See* Memo. at 20-21.

40.     Defendants produced over 20,000 of these pages of records during the month

before Defendants filed their Motion for Partial Summary Judgment [ECF No. 25] and produced

their Updated Index.  *See* Plaintiffs' Consent Motion to Modify the Scheduling Order at 2 [ECF No. 26].

41.     Defendants withheld attachments to records that Defendants determined were responsive to Plaintiffs' FOIA Requests without justifying these withholdings.  *See*, *e.g.*, Rodgers Decl., Attachment 72 (referencing attachment); Updated Index at 52-54 (omitting entry for referenced attachment to Attachment 72).

42.     According to Defendants, they have withheld in full more than half of the pages of records that they "produced", withholding approximately 12,642 pages of records.  *See generally* Updated Index.

43.     The records that Defendants withheld in full are as long as 174 pages in length. *See*, *e.g.*, *id.* at 333-35 (entry for a 174-page record withheld in full).

44.     Defendants also withheld in part many additional pages of the records that they "produced".  *See generally id.* (indicating that approximately 1,340 records were withheld in part and included 0 pages withheld in full).

45.     Defendants claim that the records and/or information that they withheld is exempt from production: as non-responsive, *see*, *e.g.*, *id.* at 157; under the deliberative process privilege, *see*, *e.g.*, *id.* at 2; under the attorney-client privilege, *see*, *e.g.*, *id.* at 3; as private personal information, *see*, *e.g.*, *id.* at 2; and as information compiled for law enforcement purposes, *see*, *e.g.*, *id.* at 7.

46.     Defendants withheld information that Defendants determined was non-responsive to Plaintiffs' FOIA Requests contained in records that Defendants determined were responsive to Plaintiffs' FOIA Requests.  *See*, *e.g.*, *id.* at 157-58 (indicating that Defendants withheld non-responsive information in responsive email).

47.     Defendants did not include all of the records and information that they withheld in the Updated Index.  *See, e.g.*, Rodgers Decl. at Attachment 43 (withholding in part record under 5 U.S.C. § 552(b)(5) and (b)(6)); Updated Index at 520-22 (missing entry for Attachment 43).

48.     Defendants also did not include all justifications for each withholding in the Updated Index.  Plaintiffs' counsel requested that Defendants' counsel confirm that, to the extent that there were inconsistent justifications for withholdings as between the redacted records and the Updated Index, the justifications in the Updated Index were controlling.  *See* Rodgers Decl., Attachment 9 at 2.  Defendants' counsel responded to Plaintiffs' counsel that Defendants "reserve[d] the right . . . to seek to amend the Updated Vaughn index in the event [of such] an inconsistency".  *Id.* at 1.

49.     For some records, Defendants asserted more justifications for withholdings on the records than in the Updated Index.  *See, e.g., id.*, Attachment 42 at JRC OES Supplemental 1 004489 (justifying redactions as non-responsive and under 5 U.S.C. § 552(b)(5)); Updated Index at 752-53 (entry for Attachment 42 justifying redactions only under 5 U.S.C. § 552(b)(5)).

50.     In the Updated Index, Defendants did not include a date for each record that has a date.  *See, e.g.*, Updated Index at 732-33 (omitting date of withheld email).

51.     In the Updated Index, Defendants did not include the author and recipient for each record that has an author and a recipient.  *See, e.g., id.* at 128-30 (failing to identify the author of a Microsoft Excel file and the recipient of that file, which was attached to an email).

52.     In the Updated Index, Defendants did not include the total number of pages of each record.  *See, e.g.*, Rodgers Decl., Attachment 60 at JRC OES Supplemental 1 009154 (withholding in full 116 pages under 1 Bates number); Updated Index at 992-93 (entry for Attachment 60 providing 1 Bates number for 116 pages withheld in full).

{K0750138.1}

53.     In the Updated Index, Defendants did not accurately state whether each record was entirely or partially withheld.  *Compare* Rodgers Decl. at Attachment 14 (a record withheld in full) *with* Updated Index at 1607 (entry asserting that Attachment 14 was partially released).

54.     In the Updated Index, Defendants did not accurately state the total number of pages withheld in full for each record.  *Compare* Rodgers Decl. at Attachment 61 (a record withheld in full) *with* Updated Index at 1880 (entry for Attachment 61 asserting that "0" pages were withheld in full).

55.     In the Updated Index, for records withheld in part, Defendants did not include the number of pages containing withheld information for each record.  *See*, *e.g.*, Updated Index at 2 (indicating that an eleven page record was partially withheld without indicating the number of pages that contained withheld information).

56.     In the Updated Index, Defendants did not include the nature of the decision-making authority vested in the offices or persons issuing the records and the positions in the chain of command of the parties to the records for each record that they withheld under a deliberative process privilege claim.  *See*, *e.g.*, *id.* at 755-57 (for record withheld in part under a deliberative process privilege claim, failing to identify the positions and responsibilities of individuals in an email chain).

57.     In the Updated Index, Defendants did not indicate whether communications were confidential for each record that they withheld under an attorney-client privilege claim.  *See*, *e.g.*, *id.* at 18-19 (asserting privilege over an outline of an interview with a former JRC patient drafted by an agency attorney without any indicating that the outline was kept confidential).

58.     In the Updated Index, Defendants did not address the public interest in disclosure for each record that they withheld under an Exemption 6 claim.  *See*, *e.g.*, *id.* at 18-19 (asserting Exemption 6 without any discussion of public interest in disclosure).

59.     In the Updated Index, Defendants did not indicate the proportion of information that is non-exempt in each record and how that material is dispersed throughout each record. *See*, *e.g.*, *id.* at 531-33 (failing to describe the proportion of "facts [that] are inextricably intertwined with the deliberative analysis" and to identify the slides that contain such facts).

60.     In the Updated Index, Defendants did not include the statutory authority for each withholding.  *See*, *e.g.*, Rodgers Decl. at Attachment 62 (withholding in part record under 5 U.S.C. § 552(b)(5)); Updated Index at 1581 (entry for Attachment 62 providing no claim of exemption).

[This space is intentionally blank.]

Respectfully submitted,

**The Judge Rotenberg Educational Center, Inc. and
Paul E. Peterson, Ph.D.,**

   /s/ Edward J. Longosz, II
Edward J. Longosz, II (D.C. Bar No. 368932)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
1717 Pennsylvania Avenue, Northwest, 12th Floor
Washington, D.C. 20006
T: 202 659 6619
F: 202 659 6699
elongosz@eckertseamans.com

   /s/ Michael P. Flammia
Michael P. Flammia (*Pro Hac Vice*)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
2 International Place, 16th Floor
Boston, MA 02110
T: 617 342 6854
F: 617 342 6899
mflammia@eckertseamans.com

**The J.R.C. Parents and Friends Association, Inc. and
Paul E. Peterson, Ph.D.,**

   /s/ Max D. Stern
Max D. Stern (*Pro Hac Vice*)
TODD & WELD, LLP
1 Federal Street
Boston, MA 02110
T: 617 624 4712
F: 617 227 5777
mdstern@toddweld.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed and served copies of the foregoing document through the Court's electronic transmission facilities on this 7th day of September, 2018.

   /s/ Edward J. Longosz, II
Edward J. Longosz, II

{K0750138.1}