UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE JUDGE ROTENBERG EDUCATION CENTER, INC. *et al.*, Plaintiffs, v. UNITED STATES FOOD AND DRUG ADMINISTRATION, *et al.*, Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 17-2092 (BAH) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The United States Food and Drug Administration ("FDA") and the United States Department of Health and Human Services ("DHHS"), collectively "Defendants," move for summary judgment on Plaintiffs' claims under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

The FOIA requests at issue in this case concern FDA's regulation of electrical stimulation devices ("ESDs"). In an earlier ruling, this Court granted in part and denied in part the parties' cross-motions for partial summary judgment with respect to records produced from seven FDA and DHHS components (the "non-CDRH components").[1] *See Judge Rotenberg Ctr., Inc. v. U.S. Food & Drug Admin.* ("*JRC-I*"), 376 F. Supp. 3d 47 (D.D.C. 2019). On the majority of records, this Court did not grant summary judgment to either Defendants or Plaintiffs. Instead, this Court specified several issues for Defendants to address in a future *Vaughn* index or

---

[1]     Those components included FDA's Office of the Executive Secretariat ("OES"), FDA's Division of Freedom of Information ("DFOI"), FDA's New England District Office ("NWE-DO"), FDA's Office of Regulatory Affairs ("ORA"), FDA's Office of the Chief Counsel ("OCC"), DHHS's Office of the Secretary ("OS"), and DHHS's Administration for Community Living ("ACL").

declarations.  Defendants have now addressed those issues in a revised *Vaughn* index, completed production of records with appropriate redactions from an eighth component (FDA's Center for Devices and Radiological Health ("CDRH")), and adequately justified those redactions on a separate sample *Vaughn* index covering a sample (agreed upon by the parties) of CDRH records. Because Defendants have conducted adequate searches for records and provided appropriate justifications for redactions of those records, this Court should grant summary judgment to Defendants.

## I.    BACKGROUND

Many of the material facts are set forth in the Court's earlier opinion, *see JRC-I*, 376 F. Supp. 3d at 53-58, but Defendants recount them here as necessary to understand the arguments in this memorandum and to explain more recent pertinent developments.

### A.    Plaintiffs' FOIA Requests

On April 24, 2016, FDA proposed a ban on ESDs intended to treat self-injurious or aggressive behavior.  *See* Proposal to Ban Electrical Stimulation Devices Used to Treat Self-Injurious or Aggressive Behavior ("Proposed Rule"), 81 Fed. Reg. 24386 (Apr. 25, 2016).  One of the Plaintiffs here—the Judge Rotenberg Educational Center ("JRC")—manufactures and uses ESDs for that purpose.  Compl. ¶¶ 1, 4.  FDA recently finalized the ban.  *See* Banned Devices; Electrical Stimulation Devices for Self-Injurious or Aggressive Behavior, 85 Fed. Reg. 13,312 (Mar. 6, 2020) ("Final Rule").

In the months that followed FDA's issuance of the Proposed Rule—between July and December 2016—Plaintiffs filed nine FOIA requests, all of which broadly seek agency records related to JRC, ESDs, and the Proposed Rule.  *JRC-I*, 376 F. Supp. 3d at 55; Compl. Exs. A-1, A-2, A-3, A-4, A-5, A-6, F, H, J.  FDA's Division of Freedom of Information ("DFOI")

2

aggregated six substantively identical requests into one and assigned Plaintiffs' FOIA requests a total of four reference numbers. *JRC-I*, 376 F. Supp. 3d at 55. DFOI ultimately assigned all four requests to CDRH, and also assigned three of the requests to five other FDA components (DFOI, OES, OCC, NWE-DO, and ORA) and two DHHS components (OS and ACL). *Id.*

## B. Defendants' Search For and Production of Records With Appropriate Redactions

Plaintiffs filed their Complaint in this case on October 10, 2017, before receiving most of the records ultimately produced in this case. In a scheduling order issued on February 2, 2018, and modified in subsequent orders, this Court set deadlines for briefing partial summary judgment on records produced from non-CDRH components, while requiring production from CDRH to proceed on a rolling basis. The searches, productions, and ruling on the partial summary judgment motions are described in relevant detail below.

### 1. Non-CDRH Records

The facts concerning the searches and productions conducted by non-CDRH components are set forth in this Court's earlier opinion. *See JRC-I*, 376 F. Supp. 3d at 55-56. Because Plaintiffs have not disputed the adequacy of those searches, *see* Def's Reply Supp. Mot. Partial Summ. J. at 3, 5, Defendants do not repeat those facts here.

As described above, this Court granted the parties' cross-motions for partial summary judgment in part, denied them in part, and directed Defendants to supplement their justifications for withholdings on which neither party obtained summary judgment. *See JRC-I*, 376 F. Supp. 3d at 76-77. Specifically, this Court granted Defendants summary judgment with respect to (1) material withheld under Exemption 5's attorney-client privilege, *id.* at 62 n.4, (2) draft records withheld under Exemption 5's deliberative process privilege, *id.* at 71, (3) personal information

of low-level JRC employees and contact information of government employees withheld under Exemption 6, *id.* at 72 n.10, and (4) material withheld under Exemption 7(C), *id.* at 74 n.11.  *See id.* at 76.  This Court also ruled that Defendants had released all segregable non-exempt material in documents containing exempt material.  *Id.* at 75.  This Court granted Plaintiffs summary judgment with respect to (1) material withheld as nonresponsive and not otherwise withheld under one of FOIA's statutory exemptions, *id.* at 62, and (2) the withholding of the identity of a JRC employee interviewed by CBS in the document Bates-stamped JRC OES Supplemental 1 005549-53, *id.* at 73.  *See id.* at 76-77.

The Court denied the parties' cross-motions in all other respects.  For all withholdings based on Exemption 5's deliberative process privilege as to which the Court did not grant Defendants summary judgment, the Court ruled that Defendants must (a) "update their *Vaughn* indices to identify with adequate specificity the agency decision to which a record relates," *id.* at 67, and (b) "explain the dynamic between the author or individual sending, and the individual receiving, the withheld record at issue" by, for example, stating whether a record is "from a subordinate to a superior, from a superior to a subordinate, or . . . from peer to peer," *id.* at 69.  For all withholdings based on Exemption 6 as to which neither party was granted summary judgment, the Court ruled that Defendants must take a more nuanced approach to considering the privacy and public interests required to be balanced in applying Exemption 6.  *Id.* at 74.

Since this Court's ruling, Defendants have produced the records on which Plaintiffs were awarded summary judgment with revised redactions consistent with this Court's opinion.  Those records include non-responsive material and JRC OES Supplemental 1 005549-53 without the employee's name redacted.  *See* Joint Status Report, ECF No. 41 at 6 (Apr. 18, 2019); Joint Status Report, ECF No. 44 at 5 (July 29, 2019).

In addition, the parties have had extensive discussions intended to narrow their disputes over other redactions to the non-CDRH records. Pursuant to both those discussions and Defendants' independent review of previously produced records, Defendants released additional material in order to provide to Plaintiffs as much non-privileged information as possible.

Specifically, following discussions with Plaintiffs, Defendants produced certain material previously withheld under Exemption 6 that, upon further review, Defendants determined could be released, *see* 2d. Suppl. Decl. Barbara A. Recupero ("Recupero 2d Suppl. Decl.") ¶ 6; Suppl. Decl. David Mednick ("Mednick Suppl. Decl.") ¶ 5, while Plaintiffs agreed not to challenge Exemption 6 withholdings of meeting passcodes, telephone numbers, email address of otherwise identified senders and recipients, personal information of low-level JRC employees who were employees at the time the record was generated (except for Gregory Miller), personal plans of Defendants' employees, and medical information of current and former JRC patients submitted to FDA by JRC, *see* Joint Status Report, ECF No. 44 at 6 (July 29, 2019). And, on January 14, 2020, Defendants released additional material previously withheld under Exemption 5 that Defendants determined could be released. *See* 2d Suppl. Decl. Sarah Kotler ("Kotler 2d Suppl. Decl.") ¶ 7; Mednick Suppl. Decl. ¶ 6. Finally, Defendants have revised their justifications for Exemption 5 and Exemption 6 claims as directed by this Court, and submit with this Motion their Post-Summary Judgment *Vaughn* Index For Non-CDRH Records ("the Non-CDRH Index"). *See* Kotler 2d Suppl. Decl. ¶ 9; Mednick Suppl. Decl. ¶ 8; Recupero 2d Suppl. Decl. ¶ 8; Gaylord Decl. ¶ 7; 2d Suppl. Decl. Richard Nicholls ("Nicholls 2d Suppl. Decl.") ¶ 7; Suppl. Decl. Melissa Pickworth ("Pickworth Suppl. Decl.") ¶ 6; Suppl. Decl. Eric F. Stein ("Stein Suppl. Decl.") ¶ 6.

To further elucidate the relationships between authors and recipients of records, Defendants also submit historical organizational charts that show the organizational structure of relevant FDA components during the time period covered by responsive records, as well as lists showing the positions held of senders and recipients of emails during the relevant time period. *See* Non-CDRH Index; *see also* Decl. Candace Boston Decl. ("Boston Decl.") ¶ 33; Kotler 2d Suppl. Decl. ¶ 10; Recupero 2d Suppl. Decl. ¶ 9; Suppl. Decl. Melissa Pickworth Decl. ("Pickworth Suppl. Decl.") ¶ 7.

## 2.      CDRH Records

CDRH's Division of Information Disclosure ("CDRH-DID") is the division within CDRH that is responsible for processing and responding to FOIA requests for CDRH records. Boston Decl. ¶ 2.  When DFOI assigns CDRH a FOIA request, CDRH-DID searches CDRH's records systems to identify potentially responsive records, after which it determines whether the records should be released in full, redacted in part, or withheld in their entirety.  *Id.* ¶¶ 6-7. CDRH-DID then generally responds directly to the FOIA requester with any records that can be fully or partially released.  *Id.* ¶ 8.

CDRH-DID recorded receiving Plaintiffs' FOIA requests between August 2016 and February 2017.  *Id.* ¶ 9.   Subject-matter experts from four CDRH offices—the Office of Compliance, the Office of Surveillance and Biometrics, the Office of Device Evaluation, and the Office of the Center Director—determined who within their offices was most likely to have responsive records in their possession, and those individual staff members then searched their paper and electronic files and provided any potentially relevant responsive records to CDRH-DID for review and production.  *Id.* ¶ 11.   CDRH-DID also directed FDA's Office of Information Management and Technology ("OIMT") to search the Outlook electronic mail boxes

for three former FDA employees—Peter Como, Steven Silverman, and Lawrence Park—using the search terms "JRC," Judge Rotenberg Center," "aversive," "ban," "Tristam Smith," "Gary LaVigna," "Fredda Brown," and "James Eason." *Id.* ¶ 13. OIMT provided any potentially responsive records to CDRH-DID for review and production. *Id.* ¶ 13-14.

CDRH produced records on a rolling basis: 5,114 pages on February 28, 2018; 10,001 pages on April 30, 2018; 10,016 pages on June 28, 2018; 10,024 pages on August 27, 2018; 10,097 pages on October 26, 2018; 10,091 pages on December 21, 2018; 10,027 pages on April 1, 2019; 10,012 pages on May 30, 2019; and 9,261 pages on July 29, 2019. *Id.* ¶¶ 15-23. In addition, on August 16, 2019, CDRH released an additional 63 pages of records that it had referred to the Department of State and that the Department of State reviewed for exempt material. *Id.* ¶ 27.

Following discussions with Plaintiffs, CDRH re-produced on November 27, 2019, portions of four earlier productions that contained imaging errors that had made certain material illegible. *Id.* ¶ 28. On December 16, 2019, CDRH produced 32 pages of records that had been referred to other offices or agencies. *Id.* ¶ 29. And, on March 16 and 20, 2020, CDRH-DID released certain less-redacted versions of records previously withheld under Exemptions 4, 5, and 6, and produced additional records that had been referred to other agencies. *Id.* ¶¶ 30-31.

In reviewing and redacting records, CDRH-DID conduced a careful page-by-page, line-by-line review of all records and ensured that any segregable information within these records was released. *Id.* ¶ 34. Pursuant to the parties' agreement reflected in the July 29, 2019, Joint Status Report, CDRH explained challenged redactions to a sample of CDRH records in a sample *Vaughn* Index, titled the Sample *Vaughn* Index For CDRH Records ("CDRH Index"). *Id.* ¶ 35;

*id.* Attach. 1 ("CDRH Index").[2]  The CDRH Index provides, when applicable, the Bates number

range for each record, the date of each record, whether the redactions are whole or partial, the

reason for withholding an explanation for each record, the number of pages withheld for each

record, the relationship between sender and recipient and whether each record is a draft.  *Id.* ¶ 36.

The CDRH Index also includes introductory notes to assist in its interpretation.  *Id.*

As set forth in the CDRH Index, CDRH withheld certain material based on Exemptions

4, 5, and 6.  *Id.* ¶ 37; *id.* Attach. 1.  Defendants submit that index along with this Motion,

together with historical organizational charts that show the organizational structure of relevant

FDA components during the time period covered by responsive records and lists showing the

positions held of senders and recipients of emails during the relevant time period.[3]

---

[2]     The parties agreed upon the procedure for determining the sample of records to be
included on the CDRH Index.  That agreement was set forth in the July 29, 2019 Joint Status
Report, and modified by later agreement, as set forth in the October 31, 2019 Joint Status Report.
As set forth in those joint status reports, the procedure called for Defendants to obtain a sample
of records containing Exemption 5 withholdings by selecting any record with such withholdings
corresponding to every 32nd page of the CDRH productions, then every 26th page in reverse
sequential order of the CDRH productions, then every 20th page of the CDRH production.  In
addition, Defendants were required to index (1) all records produced after July 29, 2019, (2)
disputed withholdings under Exemption 6, and (3) 200 additional records designated by
Plaintiffs. Defendants also have indexed disputed withholdings under Exemption 4.

[3]     Although this memorandum sets forth the facts relevant to disposition of Defendants'
Motion, additional description of the parties' discussions about Defendants' productions,
withholdings, *Vaughn* indices, and other matters may be found in the parties' joint status reports
submitted since this Court's earlier ruling.  *See* Joint Status Report, ECF No. 41 (Apr. 18, 2019);
Joint Status Report, ECF No. 44 (July 29, 2019); Joint Status Report, ECF No. 45 (Oct. 31,
2019); Joint Status Report, ECF No. 48 (Mar. 25, 2020); Suppl. Status Report, ECF No. 49 (Apr.
7, 2020).

        In addition to the foregoing, Defendants note that, in order to assist the Plaintiffs in
understanding the bases for withholdings, Defendants have provided Plaintiffs with various
supplemental indices.  These include an index to assist Plaintiffs in matching attachments
missing from the production of records from the New England District Office with their parent
emails, indices to assist Plaintiffs in matching records referred to various other agencies with
versions of those records containing the agencies' redactions, and indices to assist Plaintiffs in

## II.   LEGAL STANDARD

FOIA requires all federal agencies to disclose agency records, upon written request, except for those records that are protected from disclosure by nine exemptions or fall within three categories of excluded records. *See* 5 U.S.C. § 552(b). "Summary judgment is the routine vehicle by which most FOIA actions are resolved." *Wheeler v. U.S. Dep't of Justice*, 403 F. Supp. 2d 1, 5 (D.D.C. 2005). Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is any fact that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, a defendant agency is entitled to summary judgment in a FOIA case when it demonstrates that it has conducted an adequate search for responsive records, and that each responsive record that it has located either has been produced to the plaintiffs or is exempt from disclosure. *See, e.g.*, *Fed. Open Market Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 352 (1979); *Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980); *Landmark Legal Found. v. U.S. Envtl. Prot. Agency,* 272 F. Supp. 2d 59 (D.D.C. 2003). An agency can meet its burden through affidavits, declarations, *Vaughn* indices, or a combination of those methods. *Nat'l Sec. Counselors v. CIA*, 206 F. Supp. 3d 241, 249 (D.D.C. 2016); *see also Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C. Cir. 1973). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*,

---

matching pages of re-processed productions to the original pages when re-processing resulted in a change of pagination. Defendants do not believe these materials are necessary to this Court's review and, not wanting to overburden the Court with unnecessary materials, Defendants do not submit them here. Defendants reserve the right to submit these materials with their next brief should Plaintiff raise issues to which they are relevant.

473 F.3d 370, 374-75 (D.C. Cir. 2007); *accord Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715

F.3d 937, 940-41 (D.C. Cir. 2013).

## III.   ARGUMENT

Defendants have satisfied their obligations under FOIA to conduct adequate searches for

responsive records and to provide appropriate justifications for invoking exemptions.  *See Wolf*,

473 F.3d at 374-75.  They have also appropriately released segregable non-exempt portions of

records containing exempt material.

### A.   Defendants have conducted adequate searches for records.

As a threshold matter, Defendants have conducted adequate searches for responsive

records.  In evaluating an agency's search for records, "the issue to be resolved is not whether

there might exist any other documents possibly responsive to the request, but rather whether the

*search* for those documents was *adequate*."  *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476,

1485 (D.C. Cir. 1984) (emphasis in original).  The government is not required "to search every

record in [a] system or conduct a perfect search."  *Ramstack v. Dep't of Army*, 607 F. Supp. 2d

94, 105 (D.D.C. 2009) (citations omitted).  Rather, "[t]he adequacy of the search . . . is judged by

standard of reasonableness and depends, not surprisingly, on the facts of each case," as may be

shown by "reasonably detailed, nonconclusory affidavits submitted in good faith."  *Weisberg*,

745 F.2d at 1485.

This Court need not entangle itself with the searches for records conducted by the non-

CDRH components.  Plaintiffs conceded the issue when they did not dispute the adequacy of

those searches during briefing of the parties' cross-motions for partial summary judgment on the

non-CDRH productions.  *See JRC-I*, 376 F. Supp. 3d at 74 n.11 (holding that Plaintiffs failed to

preserve any challenge to Defendants' Exemption 7(c) withholdings when they did not dispute

those challenges in the earlier round of summary judgment) (citing *DeSilva v. U.S. Dep't of Hous. & Urban Dev.*, 36 F. Supp. 3d 65, 70 (D.D.C. 2014)); Defs.' Mot. Partial Summ. J. at 18-21 (explaining adequacy of the non-CDRH components' searches).

CDRH also conducted adequate searches for records.  CDRH employees in four offices likely to have responsive records conducted searches of their files under the direction of CDRH-DID, and OIMT conducted an electronic search of three former employees' emails using broad search terms designed to locate all responsive records.  Boston Decl. ¶¶ 11-13.  CDRH then produced those records over the course of nine rolling productions and several supplemental productions, ultimately producing over 80,000 pages with appropriate redactions.  *Id.* ¶ 14.

Accordingly, this Court should conclude that Defendants' searches for responsive records to Plaintiffs' FOIA Requests were adequate.

**B.      Defendants' withholdings are proper and justified.**

Defendants produced to Plaintiffs the responsive records uncovered by their adequate searches with appropriate withholdings under Exemptions 4, 5 and 6.  Defendants have provided appropriate explanations for these withholdings.

**1.      Defendants properly withheld material pursuant to Exemption 4.**

Exemption 4 protects "trade secrets and commercial or financial information obtained from a person that is privileged or confidential."  5 U.S.C. § 552(b)(4).  This case involves four disputed claims of Exemption 4.  The disputed withheld material consists of the amount a contract witness billed FDA for her work, as well as citations to and copies of unpublished article manuscripts.  *See* CDRH Index Entries Nos. 1642, 1655, 1656, 1657.  The CDRH Index provides sufficient explanations detailing why this information is both "commercial or financial" and "confidential."

11

First, the disputed material is "commercial or financial information."  Information is considered "commercial or financial" when "the provider of the information has a commercial interest in the information submitted to the agency."  *Baker & Hostetler LLP v. Dep't of Commerce*, 473 F.3d 312, 319 (D.C. Cir. 2006).  As explained in the CDRH Index, the contract witness has a commercial interest in the amount she billed for her work because (1) she and the government agreed on this amount as compensation for her services and (2) disclosure of the amount could place her at a competitive disadvantage in future negotiations.  Additionally, authors have a commercial interest in their unpublished articles, including interests related to their reputations and ability to secure publication of future drafts.

Second, the CDRH Index demonstrates that the disputed material is "confidential.  The term "confidential" bears its ordinary meaning and is not limited to information the disclosure of which would cause "substantial competitive harm."  *Food Marketing Inst. v. Argus Leader Media* ("*FMI*"), 139 S. Ct. 2356, 2361-65 (2019).  Under longstanding D.C. Circuit precedent, information is "confidential" if "it is of a kind that would customarily not be released to the public by the person from whom it was obtained."  *Critical Mass Energy Project v. Nuclear Reg. Comm.* ("*Critical Mass*"), 975 F.2d 871, 879 (D.C. Cir. 1982) (en banc).[4]  Neither a contractor's negotiated billing rate nor unpublished manuscripts would normally be released by the contractor or authors.  Defendants have therefore met both prongs of Exemption 4 and are entitled to summary judgment on their claims of that Exemption.

---

[4]     While the *FMI* Court posed, but declined to decide, the question whether privately held information loses its confidential character for purposes of Exemption 4 "if it's communicated to the government without assurances that the government will keep it private," 139 S. Ct. at 2363, *Critical Mass* remains the governing precedent in the D.C. Circuit.  *Ctr. for Investigative Reporting*, Civ. A. No. 18-2901, 2019 WL 7372663, at *11 (D.D.C. Dec. 31, 2019); *cf. Gellman v. Dept. of Homeland Sec.*, Civ. A. No. 16-635, 2020 WL 1323896, at *11 & n. 12 (D.D.C. Mar. 20, 2020).

**2.      Defendants sufficiently justified their Exemption 5 withholdings.**

Exemption 5 incorporates two types of agency privileges relevant to this proceeding: the deliberative process privilege and the attorney-client privilege.  *Sears, Roebuck & Co.*, 421 U.S. at 149; *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 462 (D.C. Cir. 2014); *see Montrose Chem. Corp. v. Train*, 491 F.2d 63, 68-71 (D.C. Cir. 1974).

**a.      Defendants properly withheld information protected by the deliberative process privilege.**

The deliberative process privilege is a form of executive privilege that protects from disclosure deliberative, pre-decisional communications within the executive branch of the federal government.  *Nat'l Sec. Archive*, 752 F.3d at 462.  The deliberative process privilege protects intra-agency or inter-agency communications that are (1) pre-decisional and (2) deliberative.  *Id.* A record is pre-decisional if it occurred "before any final agency decision on the relevant matter," *id.* at 463, and deliberative if it "reflects the give-and-take of the consultative process," *Public Citizen, Inc., v. OMB*, 598 F.3d at 874.  The purpose of the privilege is to protect the candid and frank discussion that would be unlikely to occur if agency employees had to operate "in a fishbowl," and underlying rationale of the privilege is that "agency officials should be judged by what they decided, not for matters they considered before making up their minds." *Nat'l Sec. Archive*, 752 F.3d at 462 (internal quotation marks omitted).

Because of the size and nature of Plaintiffs' FOIA Requests, it is not feasible to effectively capture in this memorandum justifications for all information withheld.  Fulsome justifications are provided for each contested record in either the Non-CDRH Index or the CDRH Index.  Broadly speaking, the material withheld pursuant to the deliberative process privilege falls into one of two categories: (a) drafts and (b) intra-agency and inter-agency memoranda and

13

email exchanges discussing potential courses of action an agency (most often FDA) was considering with respect to certain situations. *JRC-I*, 376 F. Supp. 3d at 63; Boston Decl. ¶¶ 40-41; Defs.' Mot. Partial Summ. J. at 26-28; CDRH Index; Non-CDRH Index. Defendants have provided appropriate justifications for their claims of deliberative process privilege as to both. *See Judicial Watch*, 715 F.3d at 940-41; *Wolf*, 473 F.3d at 374-75.

### i. Drafts

As previously noted, this Court granted Defendants summary judgment on deliberative process privilege claims as to draft records produced from non-CDRH components.[5] *JRC-I*, 376 F. Supp. 3d at 71.

CDRH's searches also uncovered many documents that were in draft form, including draft letters to JRC, drafts of the Proposed Rule, and draft responses to public inquiries. *See, e.g.*, Boston Decl. ¶ 41; *see generally* CDRH Index. Many of these documents contained edits and comments from reviewers. *See* CDRH Index. As this Court explained in its prior ruling, "[d]ocuments designated as 'drafts' are not *per se* covered under the deliberative process privilege, but rather must meet the same two criteria as any other record." *JRC-I*, 376 F. Supp. 3d at 69 (citing *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257-58 (D.C. Cir. 1982)). "A draft does not lose its deliberative character by resembling the version that ultimately becomes the working law, but rather its deliberative character is lost if the draft—formally or informally—becomes the working law." *Id.* at 70. The CDRH Index entries for drafts state that these drafts

---

[5]     Pursuant to the parties' agreement reflected in the July 29, 2019, Joint Status Report, the Non-CDRH Index omits records—including draft records—that Plaintiffs have informed Defendants will not be disputed in Plaintiffs' forthcoming opposition and dispositive cross-motion. However, the list of undisputed records Plaintiffs provided to Defendants suggests that Plaintiffs intend to dispute certain draft records. Defendants reiterate their position that this Court resolved the issue of all draft records when it granted summary judgment in Defendants' favor. The Non-CDRH Index continues to list these records due to Plaintiffs' apparent intent to challenge them but reiterates Defendants' position.

are not in final form or would reveal editorial judgment of agency employees or deliberation over the contents of the draft through redline edits and comments or comparison to the final version. As with the non-CDRH drafts, the Court should grant Defendants summary judgment with respect to the drafts contained in the CDRH productions.

### ii. Memoranda, email exchanges, and other non-draft records

In its prior ruling, this Court directed Defendants to supplement their justifications for claims of deliberative process privilege with respect to non-draft records from non-CDRH components by (1) identifying with greater specificity the decisions to which deliberations relate and (2) indicating whether such records were sent from subordinates to superiors, superiors to subordinates, or peers to peers. *See id.* at 67, 69. Defendants have now done both, following this Court's guidance to create the CDRH Index.

The Non-CDRH Index now states with reasonable specificity the decisions to which deliberative material relates. For example, certain entries that previously cited "compliance efforts" as the relevant decision-making process now cite more specific decision-making processes, including whether to require a new 510(k), *see, e.g.*, Non-CDRH Index Entry No. 739; whether to issue a warning letter, *see, e.g.*, Non-CDRH Index Entry No. 755; and the requirements for the design of a study, *see, e.g.*, Non-CDRH Index Entry No. 1368.

To be sure, for certain records, Defendants continue to cite as the relevant decision issuance of the Proposed Rule, s*ee, e.g.*, Non-CDRH Index Entry No. 1060, or more general decision-making processes (such as whether or not to take "compliance measures" or "enforcement action"). Such reliance is appropriate for these records. In keeping with this Court's ruling, Defendants cite issuance of the Proposed Rule when that is, in fact, the relevant decision. Defendants do not cite it as a catch-all decision for records that "have not been

connected to an identifiable decisionmaking process." *JRC-I*, 376 F. Supp. 3d at 67.  Similarly, Defendants recognize that "the withheld records *may* in fact pertain to a litany of subsidiary decisions," *id.* (emphasis added), and sought to identify specific subsidiary decisions when they do, in fact, exist.  But Defendants appropriately rely on more general descriptions where, for example, records contain open-ended discussions about possible compliance measures in general without being connected to any particular compliance measure.  *See, e.g.*, Non-CDRH Index Entries 1063, 1067; *see also Judicial Watch, Inc. v. U.S. Dept. of Housing & Urban Develop.*, 20 F. Supp. 3d 247, 259 (D.D.C. 2014) ("The agency need not identify a specific final agency decision.") (quoting *Dent v. Exec. Office for U.S. Attorneys*, 926 F. Supp. 2d 257, 268 (D.D.C. 2013); *Gold Anti-Trust Action Comm. v. Board of Governors*, 762 F. Supp. 2d 123, 135-36 (D.D.C. 2011) ("[E]ven if an internal discussion does not lead to adoption of a specific government policy, its protection under Exemption 5 is not foreclosed as long as the document was generated as part of a definable decision-making process.") (citing *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992)).

Additionally, the Non-CDRH Index and accompanying organizational charts and lists show the decision-making dynamic between senders and recipients of records.  The Non-CDRH Index contains a column indicating whether the communications redacted in a particular record were from subordinates to superiors, superiors to subordinates, peers to peers, or some combination thereof; the introductory note to the Non-CDRH Index explains that the designation "peer to peer" generally includes individuals who were not in the same component or reporting line.  In order to help Plaintiffs and the Court match these designations with particular communications within records, Defendants also provide historical organizational charts showing positions within various relevant FDA components across the time-period covered by

16

responsive records.  Boston Decl. ¶ 33; Kotler 2d Suppl. Decl. ¶ 10; Recupero 2d Suppl. Decl. ¶ 9; Pickworth Suppl. Decl. ¶ 7; *see* Non-CDRH Index.  Defendants have also provided separate lists identifying key senders and recipients of responsive material who occupied those positions over the relevant time.  Boston Decl. ¶ 36; Kotler 2d Suppl. Decl. ¶ 10; Recupero 2d Suppl. Decl. ¶ 9; Pickworth Suppl. Decl. ¶ 7; *see* Non-CDRH Index; CDRH Index.  This information, combined with the remainder of Defendants' justifications for claims of deliberative process privilege, is enough to sustain Defendants' claims of this privilege.  This is so even though some of that information is incomplete[6] or shows that redacted material was sent from peers to peers or superiors to subordinates.  "Even if the relationship between the author and recipient of challenged records is not one of subordinate and superior officials, when the role of the author is as an advice-giver rather than a decision-maker, this militates in favor of the document qualifying as part of the deliberative process."  *Judicial Watch, Inc. v. Dep't of Justice*, 20 F. Supp. 3d 260, 271 (D.D.C. 2014).

What is true for the non-CDRH records is also true for the CDRH records.  CDRH's searches uncovered a significant number of intra-agency and inter-agency memoranda and email exchanges discussing potential courses of action an agency (most often FDA) was considering with respect to certain situations.  *See* Boston Decl. ¶¶ 40-41; *see generally* CDRH Index.  These types of materials form the core of the deliberative process privilege.  They involve candid

---

[6]     Defendants collected these organizational charts and developed these lists of senders and recipients in recent months in a good-faith effort to aid the Court and Plaintiffs.  Although Defendants made every effort to be thorough and accurate in their attempt to locate records and other information regarding employment history spanning approximately one decade, Defendants recognize that the lists do not consist of complete and precise records of the various positions senders and recipients held during the period covered by responsive communications. This results, in part, from the difficulty of accounting for all instances when employees (some of whom have left FDA) were temporarily and/or informally detailed to other positions, or briefly served in positions in an acting capacity.

conversations among agency employees about the appropriateness of different regulatory approaches as well as opinions and recommendations about how to best effectuate the regulatory approaches being considered. *See generally* CDRH Index. Following this Court's guidance in its prior ruling, Defendants identify in the CDRH Index the specific decision-making processes, including subsidiary decisions, to which deliberative material in these records relate. The CDRH Index also designates records as containing communications from subordinates to superior, superiors to subordinate, peers to peers, or some combination thereof, and the accompanying organizational charts and lists enable this Court and the parties to understand the dynamic between senders and recipients. Defendants performed a page-by-page, line-by-line review of these memoranda and email chains and released as much information as possible, including most email "headers" and any non-deliberative, non-privileged relevant information contained in the body of the communications. Further release of information from these memoranda and email communications would result in government employees performing their regulatory functions in a "fishbowl," and in a manner not conducive to effective decision-making.

Defendants have offered appropriate justifications that are both "logical" and "plausible" for their claims of deliberative process privilege in both the Non-CDRH Index and the CDRH Index. Accordingly, this Court should grant Defendants summary judgment on those claims.

### b. Defendants properly withheld material protected by the attorney-client privilege.

The attorney-client privilege protects communications between clients and their attorneys and thereby promotes "[u]ninhibited confidence in the inviolability of the relationship [which] is viewed as essential to the protection of a client's legal rights, and to the proper functioning of the adversary system." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir.

1980).  This privilege covers "confidential communications between an attorney and a client relating to a legal matter for which the client has sought professional advice."  *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977).  These communications include all documents reflecting a client's attempt to obtain legal counsel and advice, and not merely discussions held in the context of litigation.  *Coastal States Gas Corp.*, 617 F.2d at 862. The client may be a government agency, and the attorney may be an agency lawyer.  *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997).

This Court has already granted Defendants summary judgment on their attorney-client privilege claims over non-CDRH records, *see JRC-I*, 376 F. Supp. 3d at 62 n.4, and Defendants therefore do not address those claims here.[7]  Summary judgment in Defendants' favor is also appropriate with respect to the CDRH records.  The CDRH records withheld under the attorney-client privilege in this case include communications between FDA staff and agency attorneys within FDA's OCC.  *See*, *e.g.*, CDRH Index Entries Nos. 2, 3, 4, 13.  These communications

---

[7]    Plaintiffs have informed this Court that, notwithstanding the grant of summary judgment to Defendants, they intend to renew their challenge to Defendants' attorney-client privilege withholdings in non-CDRH records.  *See* Joint Status Report, ECF No. 48, at 9-13 (Mar. 25, 2019).  Defendants reiterate their view that they have already been awarded summary judgment on these withholdings, and that any further challenges to those withholdings should be rejected outright.  This includes arguments that Defendants' attorney-client privilege withholdings are overbroad, insufficiently specific, or deficient in any other respect.  As with draft records, Defendants omit attorney-client privileged records from the Non-CDRH Index to the extent Plaintiffs have indicated the records are unchallenged, but Defendants include such records that Plaintiffs do intend to challenge while noting that this Court granted Defendants summary judgment on the attorney-client privilege withholdings in those records.

This Court's prior ruling did not direct Defendants to revise their attorney-client privilege justifications in any respect.  Notably, Plaintiffs did not move for reconsideration or clarification of that ruling.  Nor did Plaintiffs seek to appeal that ruling.  And, Plaintiffs did not inform Defendants that they intended to renew challenges to Defendants' attorney-client privilege justifications until December 16, 2019, approximately nine months after this Court's ruling and two months after Defendants revised their *Vaughn* index to comport with this Court's directives. *See* Joint Status Report, ECF No. 48, at 10.

occurred for the purposes of seeking and/or providing legal advice within the context of an attorney-client relationship between agency counsel and agency staff.  They also include email exchanges among agency attorneys within OCC discussing legal advice that they would subsequently provide to agency staff.  In order to protect the inviolable relationship between agency staff and agency counsel in OCC, the government properly withheld information protected by the attorney-client privilege under Exemption 5 of FOIA.

### 3.    Defendants sufficiently justified their Exemption 6 withholdings.

FOIA Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  As a threshold matter, the material for which Defendants claim Exemption 6 qualifies as "personnel, medical, or similar files."  *Id.*; *Reed v. NLRB*, 927 F.2d 1249, 1250-51 (D.C. Cir. 1991).  "Similar files" include any "[g]overnment records on an individual which can be identified as applying to that individual."  *Reed*, 927 F.2d at 1251 (citing *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 601-02 (1982)).  Plaintiffs did not contest that the records withheld under Exemption 6 in the non-CDRH productions meet this requirement.  *See JRC-I*, 376 F. Supp. 3d at 72 (holding that Defendants "correctly state" that they satisfied the threshold inquiry with respect to medical files); Pls. Cross-Mot. Partial Summ. J. 31-40 (not challenging this threshold inquiry); Pls. Reply Supp. Cross-Mot. Partial Summ. J. 16-19 (same).  Likewise, the CDRH records withheld under Exemption 6 satisfy the threshold requirement for reasons set forth in the Boston Declaration and CDRH Index.  *See* Boston Decl ¶¶ 43-44; *see, e.g.*, CDRH Index Entry No. 1606.

After the threshold inquiry is satisfied, a court must weigh the relevant privacy interests in nondisclosure and the public interests in disclosure and determine "whether, on balance,

disclosure would work a clearly unwarranted invasion of personal privacy." *Reed*, 927 F.2d at 1252 (citing *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)). Only "official information that sheds light on an agency's performance of its statutory duties" merits disclosure under FOIA, while "disclosure of information about private citizens that is accumulated in various governmental files" would "reveal[] little or nothing about an agency's own conduct." *Reed*, 927 F.2d at 1251 (quoting *U. S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

In its earlier ruling on non-CDRH records, this Court directed Defendants to take a more nuanced approach to assessing both the private and public interests that must be balanced in applying Exemption 6. *See JRC-I*, 376 F. Supp. 3d at 73-74.  In particular, this Court directed that Defendants consider context, including whether and to what extent public comments made by individuals identified in records reduce their privacy interests. *See id.* at 73.  While Defendants "cannot . . . ignor[e] information sitting on the face of the record," this Court indicated that they "need not scour the internet to determine what public comments an individual identified in a responsive record has made." *Id.*  In addition, this Court directed Defendants to consider whether and to what extent individuals' public comments and participation in the proposed rulemaking enhances the public interest in disclosing their identities. *See id.* at 74.

Defendants' revised justifications adhere to these principles.  For example, in Non-CDRH Index Entry No. 1071, Defendants more fully explained their reasoning for withholding identifying information of an individual who wrote to FDA and information about the medical treatment of that individual's relative.  Defendants acknowledged that the individual who had written to FDA "has made public comments about JRC" and that these comments "arguably diminish the privacy interest of that citizen."  Defendants explained, however, that they did not

21

regard that privacy interest as "eliminated" because there is no evidence that the individual intended this particular communication—which contains personal privacy information both about the individual and the relative—to become public. Defendants also acknowledged the "public interest in disclosing opinions and other information regarding JRC and the use of ESDs that were before FDA" but deemed that interest adequately served by the fact that "the redactions are minimal and do not conceal the substance of the citizen's communication in any significant way." Other entries in the Non-CDRH Index contain similarly nuanced justifications. *See* Non-CDRH Index Entries Nos. 97, 154, 155, 160, 161, 162, 990, 991, 1089, 1190, 1208, 1209, 1211, 1212, 1214, 1231, 1271, 1277. Defendants' Exemption 6 justifications for records in the CDRH Index are likewise appropriately balanced.

For these reasons, Defendants have satisfied their burden to justify their withholdings under Exemption 6.

### C.    Defendants properly evaluated records for segregability.

Defendants have also satisfied its obligation to provide Plaintiffs with "[a]ny reasonably segregable portion" of the requested records "after delet[ing those] portions which are exempt . . . ." 5 U.S.C. § 552(b); *see, e.g., Billington v. Dep't of Justice*, 233 F.3d 581, 586 (D.C. Cir. 2000); *Fla. Immigrant Advocacy Ctr. v. NSA*, 380 F. Supp. 2d 1332, 1337 (S.D. Fla. 2005). This Court had already so held with respect to non-CDRH records. *See JRC-I*, 376 F. Supp. 3d at 75. And, with respect to CDRH records, government personnel conducted a careful page-by-page, line-by-line review of all records and disclosed all reasonably segregable information. *See* Boston Decl. ¶ 34. No further information from withheld or partially withheld responsive documents could be released without revealing material protected from disclosure under 5 U.S.C. § 552(b). *Id; see* Defs' SMF ¶¶ 116-20, 124-27; CDRH Index.

**CONCLUSION**

For the foregoing reasons, Defendants request that this Court grant their motion and enter summary judgment in their favor.  A proposed order accompanies this submission.

Dated: May 4, 2020

Respectfully submitted,

TIMOTHY J. SHEA, DC Bar #437437
United States Attorney

DANIEL F. VAN HORN, DC Bar #924092
Chief, Civil Division

By:    /s/ Robert A. Caplen
ROBERT A. CAPLEN, DC Bar #501480
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC 20530
(202) 252-2523
robert.caplen@usdoj.gov

Of Counsel:
ROBERT P. CHARROW
General Counsel
Department of Health and Human Services

STACY CLINE AMIN
Chief Counsel
Food and Drug Administration
Deputy General Counsel
Department of Health and Human Services

PERHAM GORJI
Deputy Chief Counsel for Litigation

NOAH T. KATZEN
Associate Chief Counsel

SETH I. HELLER
Associate Chief Counsel
U.S. Department of Health and Human Services
Office of the General Counsel
Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 29003

*Attorneys for Defendants*

24