UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUDGE ROTENBERG EDUCATIONAL CENTER, INC., *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 17-2092 (BAH) |
| U.S. FOOD AND DRUG ADMINISTRATION, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' SUPPLEMENTAL BRIEF CONCERNING
FORESEEABLE HARM PROTECTED BY FDA'S FOIA WITHHOLDINGS**

**TABLE OF CONTENTS**

BACKGROUND ........................................................................................................................ 1

STANDARD OF REVIEW ....................................................................................................... 1

ARGUMENT ............................................................................................................................ 3

I.    Defendants' Withholdings Under FOIA Exemption 4 Protect Individuals
      from Reasonably Foreseeable Financial or Business Harm ................................... 3

II.   Defendants' Withholdings under FOIA Exemption 5 Protect the Integrity
      of Defendants' Decision Making Process and Counsels' Legal Advice ................ 4

      A.    Defendants' Assertion of the Deliberative Process Privilege over
            the Remaining Non-CDRH Records and CDRH Records.......................... 4

      B.    Defendants' Assertion of Attorney-Client Privilege in CDRH
            Records ..................................................................................................... 10

III.  Defendants' Withholdings Under FOIA Exemption 6 Protect Private
      Personal Information Provided to FDA ................................................................ 11

CONCLUSION....................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Am. Ctr. for Law & Just. v. Dep't of Just.*, 325 F. Supp. 3d 162 (D.D.C. 2018).......................... 10

*Cause of Action Inst. v. Exp. -Imp. Bank of the U.S.*, Civ. A. No. 19-1915 (JEB),
  2022 WL 252028 (D.D.C. Jan. 27, 2022) ................................................................................... 4

*CIA v. Sims*, 471 U.S. 159 (1985) ................................................................................................ 2

*Ctr. for Med. Progress v. U.S. Dep't of Health & Human Servs.*,
  Civ. A. No. 21-642 (BAH), 2022 WL 4016617 (D.D.C. Sept. 3, 2022) .......................... 2, 3, 12

*Ecological Rights Found. v. U.S. Envtl. Prot. Agency*,
  Civ. A. No. 19-980 (BAH), 2021 WL 535725 (D.D.C. Feb. 13, 2021),
   *vacated in part on reconsideration*, 541 F. Supp. 3d 34 (D.D.C. 2021) ................................ 11

*Greenspan v. Bd. of Governors of Fed. Reserve Sys.*,
  Civ. A. No. 21-1968 (TNM), 2022 WL 17356879 (D.D.C. Dec. 1, 2022) ......................... 2, 3, 8

*John Doe Agency v. John Doe Corp.*, 493 U.S. 146 (1989) ............................................................ 2

*Judicial Watch, Inc. v. Dep't of Def.*, 847 F.3d 737 (D.C. Cir. 2017) ............................................ 7

*Machado Amadis v. Dep't of State*, 971 F.3d 364 (D.C. Cir. 2020) ........................................... 2, 5

*Pub. Emps. for Env't Resp. v. Dep't of Homeland Sec.*, 575 F. Supp. 3d 34 (D.D.C. 2021) .......... 2

*Pub. Emps. for Envtl. Responsibility v. EPA*,
  Civ. A. No. 18-2219 (BAH), 2021 WL 2515007 (D.D.C. June 18, 2021) ................................ 5

*Reporters Comm. for Freedom of the Press v. Fed. Bureau of Investigation*,
  3 F.4th 350 (D.C. Cir. 2021) .................................................................................................... 6

*Reporters Comm. for Freedom of the Press v. U.S. Customs & Border Prot.*,
  567 F. Supp. 3d 97 (D.D.C. 2021) ............................................................................................ 7

*Wolf v. CIA*, 473 F.3d 370 (D.C. Cir. 2007) ................................................................................ 2

**Statutes**

5 U.S.C. § 552(a)(8)(A)(i) ........................................................................................................ 1, 2

Pursuant to the Court's Minute Order dated December 1, 2022, the United States Food and Drug Administration ("FDA") and the United States Department of Health and Human Services ("DHHS") (collectively "Defendants") submit this supplemental brief concerning the foreseeable harm standard set forth in the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(8)(A)(i).[1]

## BACKGROUND

Since Plaintiffs filed their complaint in October 2017, Defendants have released approximately 100,000 pages responsive to Plaintiffs' FOIA requests, redacting, where appropriate, information subject to FOIA Exemptions 4, 5, and 6.[2]   These withholdings are justified because FDA reasonably determined that disclosure would harm the interests protected by those FOIA exemptions.

## STANDARD OF REVIEW

Defendants' opening brief explains that a defendant agency is entitled to summary judgment when its invocation of a FOIA exemption is "logical" or "plausible."   *See* Defs.' Br. at 9-10 (citing *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007)).   The agency can meet its burden through affidavits, declarations, *Vaughn* indexes, or a combination of those methods.

---

[1]    This brief addresses the foreseeable harm related to FDA's assertion of FOIA exemptions in the records subject to Defendants' opening brief, and not the records subject to the Court's March 21, 2019, grant of partial summary judgment for FDA.   *See* ECF No. 39 (granting partial summary judgment for withholdings under Exemption 5's attorney-client privilege, for withholdings of draft records under Exemption 5's deliberative-process privilege, for withholdings under Exemption 6 that conceal the personal information of low-level Judge Rotenberg Educational Center, Inc. ("JRC") employees or the contact information of government employees, and for withholdings under Exemption 7(c)).   To the extent Plaintiffs contend that Defendants failed to demonstrate foreseeable harm for withholdings subject to the Court's grant of partial summary judgment, Plaintiffs have waived that argument.

[2]    *See* Mem. P&A Supp. Defs.' Mot. Partial Summary J., ECF No. 25 at 2; Mem. P&A Supp. Defs.' Mot. Summary J. ("Defendants' opening brief" or "Defs.' Br."), ECF No. 50 at 6; Defendants' Post-Summary J. *Vaughn* Index for Non-CDRH Records ("Non-CDRH Index"), ECF No. 50-3; and Sample *Vaughn* Index for CDRH Records ("CDRH Index"), ECF No. 50-5.

*See id.* at 9.    While FOIA requires disclosure of certain agency records, it recognizes "that public disclosure is not always in the public interest" and enumerates several categories of records exempt from disclosure.    *CIA v. Sims*, 471 U.S. 159, 166-67 (1985); *see also John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (FOIA exemptions are "intended to have meaningful reach and application").

The FOIA Improvement Act of 2016, Pub L. No. 114-185, 130 Stat. 538, provides that "[a]n agency shall withhold information under this section only if (I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or (II) disclosure is prohibited by law."    5 U.S.C. § 552(a)(8)(A)(i); *see also Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020).    An agency must show that it reasonably foresees that disclosure would harm an interest protected by an exemption by "articulat[ing] the link between the specified harm and the specific information contained in the material withheld."    *Pub. Emps. for Env't Resp. v. Dep't of Homeland Sec.*, 575 F. Supp. 3d 34, 51 (D.D.C. 2021) (quotation marks and citations omitted); *see also Ctr. for Med. Progress v. U.S. Dep't of Health & Human Servs.*, Civ. A. No. 21-642 (BAH), 2022 WL 4016617, at *7 (D.D.C. Sept. 3, 2022) (internal quotation marks and citations omitted).    While an agency must make a "focused and concrete" showing of foreseeable harm, a record-by-record analysis is not required, as an agency "may take a categorical approach and group together like records to explain the foreseeable harm of disclosure for each category."    *Greenspan v. Bd. of Governors of Fed. Reserve Sys.*, Civ. A. No. 21-1968 (TNM), 2022 WL 17356879, at *14 (D.D.C. Dec. 1, 2022) (internal quotation marks and citation omitted).

**ARGUMENT**

As explained below, and as supported by Defendants' opening brief and its numerous supporting declarations, the Non-CDRH Index, the CDRH Index, and the supplemental declaration attached hereto, FDA reasonably foresees that public disclosure of information withheld under Exemptions 4, 5, and 6 would cause harm to the interests protected by those exemptions.[3]

## I. Defendants' Withholdings Under FOIA Exemption 4 Protect Individuals from Reasonably Foreseeable Financial or Business Harm

Plaintiffs dispute claims of Exemption 4 in four CDRH records. As explained in Defendants' opening brief and the CDRH Index, Defendants redacted information in four records that related to the (a) amount a contract witness billed FDA for her work and (b) citations to and copies of unpublished article manuscripts. *See id.*; Decl. Candace Boston ("Boston Decl.") ¶¶ 38-39 (ECF No. 50-4); CDRH Index Entry Nos. 1642, 1655 (billing information); *id.* at Entry Nos. 1656, 1657 (draft manuscript). Courts have found that undermining competitiveness in the market, damage to reputation, and the concern that private parties would be less likely to voluntarily disclose information to the government again to be "textbook articulations for foreseeable harm" sufficient to justify Exemption 4 withholdings. *Greenspan*, 2022 WL 17356879, at *5-6; *see also Ctr. for Med. Progress*, 2022 WL 4016617, at *11 (finding sufficient foreseeable harm justifying Exemption 4 withholdings when release of information could cause "genuine harm to its owner's economic or business interests" and when release could "dissuad[e] others from submitting similar information to the government" (internal quotation marks and citations omitted)); *see also Cause of Action Inst. v. Exp. -Imp. Bank of the U.S.*, Civ. A. No. 19-

---

[3]   Defendants specifically refer this Court to the *Vaughn* indexes in which Defendants, on a record-by-record basis, articulated a link between the specified foreseeable harm and the specific withheld information in the "Reason(s) for Withholding and Explanation" column. *See* Non-CDRH Index (ECF No. 50-3) and CDRH Index (ECF No. 50-5).

1915 (JEB), 2022 WL 252028, at *19 (D.D.C. Jan. 27, 2022) (finding the government sufficiently articulated a link between financial and competitive harms and the specific information contained in withheld records).

Here, it is reasonably foreseeable that the disclosure of a contractor's billing practices would put the contractor at a competitive disadvantage if her competitors were able to use that commercial information to undercut her billing rates in competitive markets for the same services. *See* Defs.' Br. at 12; *see also* CDRH Index, column titled "Reason(s) for Withholding and Explanation" for entries 1642 and 1655; Ex. A (Suppl. Decl. Candace Boston ("Suppl. Boston Decl.") ¶ 7). Similarly, it is reasonably foreseeable that the disclosure of draft manuscripts would cause financial harm to the authors if release of the drafts publicly discloses, for example, information, data, draft analysis, opinions, or tentative conclusions that the authors did not intend to make public. *See* CDRH Index, column titled "Reason(s) for Withholding and Explanation" for entries 1656 and 1657; *see also* Ex. A (Suppl. Boston Decl. ¶ 12). Releasing unpublished draft articles would also negatively impact authors' reputations and their ability to secure paid work in the future. *See* Defs.' Br. at 12; Ex. A (Suppl. Boston Decl. ¶ 13). It is also reasonably foreseeable that compelling release of this information would have a chilling effect on contractors' and authors' willingness to work with FDA or share information with FDA, which would impede the agency from executing its public health mission in the future. *See* Ex. A (Suppl. Boston Decl. ¶¶ 8, 14).

II.    **Defendants' Withholdings under FOIA Exemption 5 Protect the Integrity of Defendants' Decision Making Process and Counsels' Legal Advice**

A.    **Defendants' Assertion of the Deliberative Process Privilege over the <u>Remaining Non-CDRH Records and CDRH Records</u>**

Defendants withheld information under the deliberative process privilege to protect internal, deliberative, and pre-decisional communications regarding the many regulatory issues

4

related to Plaintiffs, the device manufactured by JRC, and the ESD ban.[4]    An agency can adequately show harm in the context of the deliberative process privilege if it "specifically focuses on the information at issue in the [records] under review" and "conclude[] that disclosure of that information would chill future internal discussions." *Machado Amadis*, 971 F.3d at 371; *Pub. Emps. for Envtl. Responsibility v. EPA*, Civ. A. No. 18-2219 (BAH), 2021 WL 2515007, at *14 (D.D.C. June 18, 2021) (noting that under *Machado Amadis*, no "further factual proffer by the agency" is needed to show foreseeable harm as long as the agency specifically focuses on the "information at issue" and concludes "disclosure of that information would chill future internal discussions").    As explained further below and in Ms. Boston's Declarations, assertion of the deliberative process privilege to these records prevents the reasonably foreseeable harm of impairing or otherwise chilling FDA's frank consideration of sensitive and complex regulatory issues that accompany regulation of devices.    Boston Decl. ¶ 41; Ex. A (Suppl. Boston Decl. ¶¶ 15-22).    Disclosure of such information would harm FDA's ability to openly and freely communicate about complicated regulatory decisions before the agency.    Ex. A (Suppl. Boston Decl. ¶ 21); *see Machado Amadis*, 971 F.3d at 371 ("[E]xperience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process.") (quotation marks and citations omitted).[5]    As

---

[4]    *See* Decl. Nelson D. Hermilla ¶¶ 10-11 (ECF No. 24-1) ("Hermilla Decl."); Decl. Sarah Kotler ¶¶ 43-47 (ECF No. 24-2) ("Kotler Decl."); Decl. Michael S. Marquis ¶¶ 18-21 (ECF No. 24-3) ("Marquis Decl."); Decl. David Mednick ¶¶ 42-44 (ECF No. 24-4) ("Mednick Decl."); Decl. Richard Nicholls ¶¶ 18-19 (ECF No. 24-5) ("Nicholls Decl."); Decl. Melissa Pickworth ¶¶ 18-21 (ECF No. 24-6) ("Pickworth Decl."); Decl. Barbara A. Recupero ¶¶ 22-26 (ECF No. 24-7) ("Recupero Decl."); Boston Decl. at ¶¶ 40-41; *see also* Ex. A (Suppl. Boston Decl. ¶¶ 15-24).

[5]    In contrast to the "boilerplate and generic," "scanty," and "generalized and conclusory" assertions of harm that the D.C. Circuit has found insufficient, *see Reporters Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 370 (D.C. Cir. 2021), Defendants' declarations, *Vaughn* indexes, and other supporting evidence of harm are specific and tailored to

reflected by withholdings in both the CDRH and Non-CDRH indexes, Defendants have withheld deliberative communications about internal deliberations concerning **what** to do and, once a pathway forward had been agreed upon, **how** to best effectuate a regulatory pathway.   Ex. A (Suppl. Boston Decl. ¶ 19).   These records can be grouped as "drafts," *see* Defs.' Br. at 14-15, and "memoranda, email exchanges, and other non-draft records," *id.* at 15-18.

### 1.   CDRH Draft Records

This Court granted partial summary judgment with respect to Non-CDRH draft records withheld for deliberative process privilege on March 21, 2019.   ECF No. 39 at 29-32. Accordingly, only CDRH draft records are in dispute.[6]   The deliberative process applies to drafts when they "contain the ideas and theories which go into the making of law and not the law itself." *Id.* at 30 (internal quotation marks and citations omitted).   So long as a draft is deliberative and pre-decisional, the risk of revealing "editorial decisions of agency staff" is a reasonably foreseeable harm.   *See id.* at 32.

The CDRH draft records are properly withheld for the same reasons as the Non-CDRH draft records.   Premature disclosure of FDA's draft predecisional discussions regarding potential regulatory strategies, enforcement strategies, scientific and legal analysis, inspectional strategies, and review of inspectional findings would confuse the public in that they would mistake preliminary drafts as final agency policy.   *See* Ex. A (Suppl. Boston Decl. ¶ 18); *see also, e.g.*, CDRH Index Entry No. 1 (draft table of articles containing agency staff's comments and analysis of those articles); *id.* at Entry Nos. 22, 26 (draft memorandum and consult review containing staff's thoughts, impressions, opinions, and analysis regarding whether FDA should take any future action

---

the records at issue in this case.

[6]   To the extent Plaintiffs attempt to re-litigate Non-CDRH draft records, the foreseeable harm articulated for draft CDRH records applies with equal force to Non-CDRH records.

following JRC's responses to the agency); *id.* at Entry Nos. 29-31, 45, 48 (draft Health Risk Assessments containing staff's thoughts, impressions, opinions, and analysis of whether a new device application was required); *id.* at Entry No. 33 (draft notice of advisory committee meeting including staff's edits and editorial comments); *id.* at Entry No. 40 (staff's draft analysis of JRC's request for enforcement discretion, including staff's views on health risks posed by the device, redlines, and comments); *id.* at Entry No. 53 (draft memorandum and letter containing staff's thoughts, opinions, and analysis of whether to respond to JRC, containing editorial comments); *id.* at Entry No. 66 (email and attached draft memorandum containing staff's thoughts, opinions, and analysis of JRC's submissions); *id.* at Entry No. 73 (draft letter to JRC); *id.* at Entry Nos. 223-24 (draft memos containing staff's opinions and analysis concerning JRC's response to FDA and request for enforcement discretion).  "[T]he D.C. Circuit has long recognized that the risk of public confusion has a special force with respect to disclosures of agency positions or reasoning concerning proposed policies."  *Reporters Comm. for Freedom of the Press v. U.S. Customs & Border Prot.*, 567 F. Supp. 3d 97, 121-22 (D.D.C. 2021) ("To disclose drafts of the directive risks that the public might mistake those preliminary thoughts for the agency's actual policy." (internal quotation marks and citations omitted)); *see also Judicial Watch, Inc. v. Dep't of Def.*, 847 F.3d 737, 739 (D.C. Cir. 2017) (explaining the deliberative process privilege "avoids confusion from premature disclosure of ideas that are not – or not yet – final policy and misimpressions from dissemination of documents suggesting reason and rationales' not ultimately relied on" (internal quotation marks omitted)).  Here, the numerous internal draft evaluations, comments, and discussions underlying the agency's regulatory, legal, and policy decisions are appropriately withheld from public disclosure to avoid confusing the public (including JRC) regarding FDA's decision-making.

In addition, because the drafts are not in final form, their release would reveal editorial judgment of agency employees and their deliberations over the contents of the drafts through redline edits, comments, or comparison to the final version.    Ex. A (Suppl. Boston Decl. ¶ 17); *see e.g.*, CDRH Index Entry Nos. 537, 553, 785, 794-95 (drafts of the proposed ban and federal register notice, containing redlines and comments).    As this Court explained, "a draft does not lose its deliberative character by resembling the version that ultimately becomes the working law, but rather its deliberative character is lost if the draft – formally or informally – becomes the working law."    ECF No. 39 at 31.

### 2.    CDRH and Non-CDRH memoranda, emails, and other non-draft records

The CDRH memoranda, emails, and other non-draft records, and similar remanded Non-CDRH records, are also properly withheld under Exemption 5 because disclosure would confuse the public.    *See Greenspan*, 2022 WL 17356879, at \*15 (evidence of likely public confusion was a reasonably foreseeable harm caused by disclosure of withholdings under Exemption 5). Further, disclosure of these communications would impair or chill FDA's frank consideration of complicated regulatory decisions before the agency.    Ex. A (Suppl. Boston Decl. ¶ 21). Deliberative process is an important safeguard to protect "the candid and frank exchange of ideas within agencies" and "to ensure that agencies do not have to operate in a fishbowl."    *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 462-63 (D.C. Cir. 2014) ("[A]gency officials should be judged by what they decided, not for matters they considered before making up their minds.").    Here, protection of deliberative communications is particularly important given the public attention paid to and controversy surrounding ESDs.    Ex. A (Suppl. Boston Decl. ¶ 22).

Specifically, Defendants withheld FDA's internal discussions regarding whether to ban ESDs and, if so, the scope of the ban, its language, and the agency's review and analysis of data,

8

literature, and comments to the proposed ban. *See, e.g.*, Non-CDRH Index at Entry Nos. 4-14 (records containing contemporaneous thoughts and opinions of agency staff regarding action on banning ESDs, possible enforcement decisions regarding JRC, strategic decisions regarding communications with JRC, and/or other related legal or regulatory strategies), 16-45 (same), 47-78 (same), 104-108 (emails regarding staff's thoughts on potential actions regarding ESDs), 116-127 (emails including staff's opinions regarding proposed rule banning ESDs); *see also* Ex. A (Suppl. Boston Decl. ¶ 18); CDRH Index Entry No. 432 (email containing staff's opinions whether to finalize the ban); *id.* at Entry No. 536 (email containing staff's comments on proposed rule); *id.* at Entry Nos. 793, 796 (emails containing staff's discussion of edits to proposed rule, including redlines and comments); *id.* at Entry No. 797 (email containing staff's opinions regarding the contents of the proposed rule and on literature).    These and similar predecisional deliberations about regulatory options for medical devices are important to withhold from public disclosure based on "the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery." *Machado Amadis*, 971 F.3d at 371 (citing *Dep't of Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 8-9 (2001)); *see also Judicial Watch*, 847 F.3d at 739 ("The deliberative process privilege reflects the commonsense notion that agencies craft better rules when their employees can spell out in writing the pitfalls as well as the strengths of policy options[.]").    Similarly, Defendants redacted information that reveals internal discussions about "key messages" and how to publicly discuss the ban, drafted prior to finalization of the ban.    *See., e.g.,* CDRH Index Entry Nos. 428-30 (emails containing staff's discussions about key messages and draft Q&As regarding the proposed rule, including comments and opinions about the agency's public messaging prior to its finalization).    Release of these records would cause public confusion as to what constitutes a final agency decision and would chill the

9

free flow of internal recommendations and candid assessments.    "[T]he overwhelming consensus among judges in this District is that the [deliberative process] privilege protects agency deliberations about public statements . . . . " *Am. Ctr. for Law & Just. v. Dep't of Just.*, 325 F. Supp. 3d 162, 171-72 (D.D.C. 2018).

Not only would disclosure of this information harm the inner workings of FDA, but it is foreseeable that companies would attempt to leverage perceived disagreements within FDA for private or financial gain.    Ex. A (Suppl. Boston Decl. ¶ 21).    Here, for example, these records include staff's frank discussions about how to respond to communications to and from JRC, *see, e.g.*, CDRH Index Entry Nos. 25, 28, 50, 52-54, 68-69, 83-84, 100, 122 (regarding JRC's response to an untitled letter and FDA's drafting and issuance of an untitled letter to JRC), and analysis of the impact of JRC's changes to its device, *see, e.g.*, *id.* at Entry Nos. 20, 23, 24, 32, 51, 941, 1072, 1146.    If disclosed to the public, it is foreseeable that these deliberative statements would be misused, perhaps at the expense of the public health.    Ex. A (Suppl. Boston Decl. ¶ 21).

**B.    Defendants' Assertion of Attorney-Client Privilege in CDRH Records**

This Court already upheld Defendants' withholdings under Exemption 5's attorney-client privilege for Non-CDRH records.    ECF No. 39 at 18 n.4.    The same outcome is merited for the CDRH records.    As with the Non-CDRH records, information in the CDRH records involving FDA's legal counsel was withheld under Exemption 5's attorney-client privilege to protect communications that, if released, would cause foreseeable harm to FDA.    It is reasonable to expect that disclosure of attorney-client communications, particularly here given the complex legal issues related to Plaintiffs' device, would harm agency counsels' ability to communicate freely and provide legal advice to the agency components.    *See* Defs.' Br. at 18-20; Boston Decl. ¶ 42; Ex. A (Suppl. Boston Decl. ¶ 24).    For example, many of the CDRH records relate to legal

10

counsels' analysis and comments on the agency's proposed rule, public comments to the proposed rule, and the eventual final rule banning the use of ESDs.   *See, e.g.*, CDRH Index Entry Nos. 2-4, 410, 418, 538, 735, 795, 796.   Releasing these communications would discourage open communications to and from attorneys within FDA, which would impair the ability for counsel to provide legal advice, and agency components to seek such advice, significantly endangering the agency's public health mission.   Ex. A (Suppl. Boston Decl. ¶ 24); *see Ecological Rights Found. v. U.S. Envtl. Prot. Agency*, Civ. A. No. 19-980 (BAH), 2021 WL 535725, at *32 (D.D.C. Feb. 13, 2021) ("[D]isclosure of [attorney-client] privileged information is a harm in and of itself. When invoking the attorney-client privilege [in FOIA] an agency likely does not need to reach far beyond the fact of disclosure to show foreseeable harm."), *opinion vacated in part on reconsideration*, 541 F. Supp. 3d 34 (D.D.C. 2021).

## III.   Defendants' Withholdings Under FOIA Exemption 6 Protect Private Personal Information Provided to FDA

Defendants withheld information in the Non-CDRH and CDRH records under Exemption 6 to protect identifying information (including names, emails, phone numbers, and other points of contact) of (1) potential, but ultimately not hired, panel members and experts and individuals scheduled to speak publicly who then cancelled, and (2) people who shared personal medical information about themselves or their relatives with FDA.[7]   Plaintiffs agreed not to contest

---

[7]   *See, e.g.*, Non-CDRH Index Entry Nos. 97, 154-155, 160-162, 990-991, 1071, 1089, 1190, 1208-09, 1211-12, 1214, 1231, 1271, 1277 (contains personal identifying information, including names, emails, and medical information, of individuals who contacted FDA); Hermilla Decl. ¶¶ 12-13 (ECF No. 24-1); Kotler Decl. ¶¶ 48-49 (ECF No. 24-2); Marquis Decl. ¶¶ 22-23 (ECF No. 24-3); Mednick Decl. ¶¶ 45-46 (ECF No. 24-4); Nicholls Decl. ¶ 20 (ECF No. 24-5); Pickworth Decl. ¶ 22 (ECF No. 24-6); Recupero Decl. ¶¶ 27-28 (ECF No. 24-7); *see also* Boston Decl. ¶¶ 43-44; Ex. A (Suppl. Boston Decl. ¶¶ 25-35); CDRH Index Entry No. 871 (personal email address, phone numbers, and employment history of potential expert); *id.* at Entry No. 1159 (names and opinions of persons who were scheduled to speak at the Advisory Panel meeting but

Exemption 6 withholdings of meeting passcodes, telephone numbers, and emails.   *See* Defs.' Br. at 5; ECF No. 44 (Joint Status Report dated July 29, 2019).

FDA's withholding under Exemption 6 of personal identifying information of individuals who shared their (or their relatives) sensitive, private medical information with FDA is appropriate due to the foreseeable harm caused by disclosure of that information.   Ex. A (Suppl. Boston Decl. ¶¶ 27-30).   Disclosure of this information would lead to embarrassment, retaliation, harassment, or unwanted contact.   *Id.* at ¶ 27.   This is particularly so given the public scrutiny of this device. *Id.* at ¶ 27; *Ctr. for Medical Progress*, 2022 WL 4016617, at *13-15 (upholding Exemption 6 withholdings of personal information in light of the strong privacy interests the affected individuals have in avoiding embarrassment and harassment).   Disclosure of individuals' personal medical information would also negatively affect their employment and would compromise the confidentiality those commentators expected when directly contacting FDA.   Ex. A (Suppl. Boston Decl. ¶ 27).   And if this type of personal private information was made public, it is foreseeable that these individuals or similar individuals would refuse to communicate with FDA in the future.   *Id.* at ¶ 28.   This is particularly so when individuals shared sensitive medical information with FDA anonymously.   *See, e.g.*, CDRH Entry Nos. 1599-1600, 1606-1607, 1617-1619.   Because the government encourages the open communication with the public to provide comments about matters of public health concern without fear of embarrassment, harassment, or

---

canceled); *id.* at Entry No. 1598 (name and age of individual related to commenter); *id.* at Entry Nos. 1602-04 (identifying information of potential experts); *id.* at Entry Nos. 1626-27 (identity and subject matter of complaint submitted to FDA); *id.* at Entry No. 1628 (names and contact information of non-public individuals considered for advisory committee panel).   The 2018 Declarations submitted in support of Defendants' Motion for Partial Summary Judgment are applicable to the records included in the 2020 Motion for Summary Judgment Non-CDRH Index. *See* ECF Nos. 50-6 through 50-13, 50-15.

reprisal, discouraging the public from sharing such information would impair the agency to carry out its public health mission.   Ex. A (Suppl. Boston Decl. ¶ 28).

In those instances when an individual publicly disclosed their personal medical or other private information, FDA continued to withhold this information if it determined there was no indication those individuals intended their communications with FDA to be publicly released.   *Id.* ¶ 29; *see, e.g.*, Non-CDRH Index 1214 (although the unredacted portion of the record indicates the commenter intended to communicate the same information she shared with FDA on social media, Defendants searched and were unable to find the shared information in any public space). Similarly, where the communication contains a third party's identifying information, FDA withheld this information if there is no evidence that the third party consented to its release.   Ex. A (Suppl. Boston Decl. ¶ 29).   It is reasonably foreseeable that those third parties, who may not have consented, would be harmed by public disclosure of their personal information.   *Id*.   For example, FDA withheld information regarding the medical treatment of an individual's relative in Non-CDRH Index Entry No. 1071 because, even though the individual had made public comments about JRC, it is foreseeable that disclosing the information about the medical treatment of the individual's relative would harm that relative's privacy interest, embarrass that individual, and could otherwise adversely impact them.   *See* Defs.' Br. at 21.   And while Defendants acknowledge there is a public interest in disclosing information the public shares with FDA about matters of public health, that interest is served by the fact that the redactions are minimal and do not conceal the substance of the communications in any significant way.   Ex. A (Suppl. Boston Decl. ¶ 30).

Defendants' withholding of the names and other personal identifying information of individuals who were considered, but ultimately not hired, as experts or advisory committee

members, as well as those who were scheduled to speak at a public meeting but canceled, is similarly justified. An individual has a legitimate privacy interest in keeping confidential jobs for which she applied and there can be numerous reasons why a candidate was not hired or elected not to accept an offer. Disclosure of such information could lead to embarrassment, retaliation, harassment, and/or unwanted contact, particularly in a case such as this that has received national attention. *Id.* ¶¶ 32-33. If this type of personal private information was made public, potential candidates could refuse to work with FDA in the future and the public could be hesitant to communicate with the agency on matters of public concern, impeding the agency from executing its public health mission. *Id.* ¶ 34. Similarly, if a person elects not to speak at a public meeting, revealing their identity could expose them to embarrassment, harassment, and unwanted contact. *Id.* ¶ 35.

As a final matter, public disclosure of this personal private information in no way furthers the purpose of FOIA and its goals of transparency. The purpose of FOIA is to shed light on the agency's performance of its statutory duties. Considering the balancing of interests in the release of the above-mentioned information, the scale weighs heavily in favor of protecting individuals' private personal information.

## CONCLUSION

For the foregoing reasons, Defendants' withholdings in the Non-CDRH Index and CDRH Index are predicated on Defendants' reasonably foreseeable concern that the interests protected by those withholdings would be harmed if the Court were to order disclosure of the withheld information. Defendants have met their burden of establishing the "foreseeable harm" standard.

For the reasons set forth herein and those set forth in Defendants' opening brief, declarations, and

*Vaughn* indexes, Defendants request that this Court enter summary judgment in their favor.

Dated: February 1, 2023

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:   /s/ Robert A. Caplen
ROBERT A. CAPLEN, D.C. Bar #501480
Assistant United States Attorney
U.S. Attorney's Office, Civil Division
601 D Street, N.W.
Washington, D.C.  20530
(202) 252-2523
robert.caplen@usdoj@usdoj.gov

*Counsel for Defendants*

OF COUNSEL:

SAMUEL R. BAGENSTOS
General Counsel
U.S. Department of Health and Human Services

MARK RAZA
Chief Counsel

WENDY VICENTE
Deputy Chief Counsel, Litigation

SETH I. HELLER
Associate Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Ave.
White Oak 31
Silver Spring, MD 20993-0002

15