UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUDGE ROTENBERG EDUCATIONAL CENTER, INC., *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 17-2092 (BAH) |
| U.S. FOOD AND DRUG ADMINISTRATION, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 3

ARGUMENT ........................................................................................................................... 6

    I.     The D.C. Circuit's Decision to Vacate the Electrical Stimulation Ban Did Not Void FDA's Assertion of FOIA Exemption 5. ...................................................... 6

    II.    The Government Misconduct Exemption Does Not Apply in the FOIA Context and, in Any Event, It Is Inapplicable Here. ............................................................ 12

    III.   Defendants Have Demonstrated that Reasonably Foreseeable Harm Justifies the Withholdings. ..................................................................................................... 16

    IV.   The Court Should Decline Plaintiffs' Request to Review Records *In Camera*.... 22

CONCLUSION ........................................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Abtew v. Dep't of Homeland Sec.*, 808 F.3d 895 (D.C. Cir. 2015) ................................................. 17

*ACLU v. CIA*, Civ. A. No. 16-1256 (EGS), 2021 WL 5505448 (D.D.C. Nov. 24, 2021) ............ 23

*American Airlines Inc. v. TSA*, 665 F.3d 170 (D.C. Cir. 2011) ....................................................... 10

*Conservative Force v. Jewell*, 66 F. Supp. 3d 46 (D.D.C. 2014) ................................................... 15

*Ctr. for Med. Progress v. Dep't of Health & Hum. Servs.*, Civ. A. No. 21-642 (BAH), 2022 WL 4016617 (D.D.C. Sept. 3, 2022), *recons. denied*, 2022 WL 17976633 (D.D.C. Nov. 16, 2022) ............................................................................................................................................... 23

*Edwards v. CIA*, 512 F. Supp. 689, 694 (D.D.C. 1981) ..................................................................... 7

*Elec. Privacy Ctr. v. Dept. of Just.*, 320 F. Supp. 3d 110 (D.D.C. 2018) ...................................... 24

*Enviro Tech Int'l v. EPA*, Civ. A. No. 02-4650, ECF No. 26, Mem. Op. & Order (N.D. Ill. Docketed Mar. 11, 2003) ............................................................................................................... 6

*Enviro Tech Int'l v. EPA*, 371 F.3d 370 (7th Cir. 2004) .......................................................... 9, 10

*Hopkins v. Women's Div., General Bd. of Global Ministries*, 238 F. Supp. 2d 174 (D.D.C. 2002) ................................................................................................................................................... 2

*ICM Registry, LLC v. Dept. Com.*, 538 F. Supp. 2d 130 (D.D.C. 2008) ....................................... 14

*In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II)*, Misc. No. 20-0008 (BAH), 2021 WL 1909777 (D.D.C. May 12, 2021) ............................................................................................... 13

*In re Sealed Case*, 737 F.3d 94 (D.C. Cir. 1984) ........................................................................... 11

*Judge Rotenberg Educ. Ctr., Inc. v. FDA*, 3 F.4th 390 (D.C. Cir. 2021) ......................... 4, 5, 8, 11

*Judicial Watch, Inc. v. Dep't of State*, 241 F. Supp. 3d 174 (D.D.C. 2017) ................................. 13

*Larson v. Domestic & Foreign Com. Corp*, 337 U.S. 682 (1949) .................................................. 11

*Leopold v. Dep't of Just.*, Civ. A. No. 19-2796 (JEB), 2021 WL 3128866 (D.D.C. July 23, 2021) ............................................................................................................................................. 21

*Macado Amadis v. Dep't of State*, 971 F.3d 364 (D.C. Cir. 2020) ............................................... 18

*Marcum v. Salazar*, 751 F. Supp. 2d 74 (D.D.C. 2010) ............................................................... 17

*Mobley v. CIA*, 806 F.3d 568 (D.C. Cir. 2015) .............................................................................. 23

*Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, 903 F. Supp. 2d. 59 (D.D.C. 2012) ......................................................................................................................................... 14, 15

*Navasky v. CIA*, 499 F. Supp. 269 (S.D.N.Y. 1980) ......................................................................... 7

*Pollack v. Hogan*, 703 F.3d 117 (D.C. Cir. 2012) ......................................................................... 11

*Pub. Emps. for Envtl. Resp. v. EPA*, Civ. A. No. 18-2219 (BAH), 2021 WL 2515007 (D.D.C. June 18, 2021) ............................................................................................................................. 18

*Quinon v. FBI*, 86 F.3d 1222 (D.C. Cir. 1996) .............................................................................. 23

*Reps. Comm. for Freedom of the Press v. Customs & Border Prot.*, 567 F. Supp. 3d 97 (D.D.C. 2021) ............................................................................................................................................. 21

*Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir. 2021) ............................. 18

*SAI v. Transp. Sec. Admin.*, 315 F. Supp. 3d 218 (D.D.C. 2018) ................................................. 15

*Wannall v. Honeywell, Inc.*, 775 F.3d 425 (D.C. Cir. 2014) ........................................................... 2

*Weissman v. CIA*, 565 F.2d 692 (D.C. Cir. 1977) .................................................................... 6, 7, 8

*Wright v. Admin. for Children & Families*, Civ. A. No. 15-0218 (BAH), 2016 WL 5922293 (D.D.C. Oct. 11, 2016) ......................................................................................................... 12, 13, 23

**Statutes**

21 U.S.C. § 360f ............................................................................................................. passim

21 U.S.C. § 396.................................................................................................................... 4

**Other Authorities**

85 Fed. Reg. 13,312, 13,315 ............................................................................................. 14

H.R. Rep. No. 117-348, at 65 (2022)................................................................................. 19

**INTRODUCTION**

In its 2019 grant of partial summary judgment, this Court correctly observed that this case is "onerous." *See* ECF No. 39 at 40 ("2019 Mem. Op."). At that time, Defendants had released over 24,000 pages of records responsive to Plaintiffs' Freedom of Information Act ("FOIA") requests. *See id*. at 8. Since then, Defendants have released a total of over 100,000 pages of records in response to Plaintiffs' FOIA requests, as well as over 2,700 pages of *Vaughn* indices and organizational charts. *See* ECF Nos. 33-2 (1,979 page *Vaughn* Index of records outside of those from the Center for Device and Radiological Health ("Center")); 50-3 (618 page, 1,626-entry Post-Summary Judgment *Vaughn* Index and 32 page collection of organizational charts); and 50-5 (91 page, 1,695-entry Sample *Vaughn* Index for CDRH [Center] Records and 32 page collection of organizational charts).

Of this massive volume of government work product, approximately 84,000 pages of Center records, the Post-Summary Judgment *Vaughn* Index (with charts), and the Sample *Vaughn* Index for CDRH [Center] Records (with charts) are before the Court for the first time in this second round of summary judgment briefing. The sizable record underlying this second round of summary judgment briefing reflects both claims concerning the Center, as well as Defendants' revisions to the "Non-Center" claims pursuant to the Court's prior ruling. *See* ECF No. 50-1 at 15-17 ("Defs. Mot.") (describing Defendants' supplementation made pursuant to the Court's ruling).

Defendants' opening summary judgment motion establishes that Defendants have satisfied their burden for the six remaining points of dispute in this case: (1) Defendants fully complied with the residual issues from the first round of summary judgment proceedings, *id*. at 4-6, 15-17; *see also* ECF No. 50-3 (Post-Summary Judgment *Vaughn* Index); (2) Defendants

conducted a reasonable search for Center's records, Defs. Mot. at 10-11; (3) Defendants properly applied FOIA Exemption 4 to the Center records, *id.* at 11-12; (4) Defendants properly applied FOIA Exemption 5 to the Center records, *id.* at 13-20; (5) Defendants properly applied FOIA Exemption 6 to the Center records, *id.* at 20-22; and (6) Defendants properly evaluated the Center records for segregability, *id.* at 22.   In response, Plaintiffs only dispute Defendants' assertion of Exemption 5.   *See generally* ECF Nos. 71 and 72 ("Cross Mot.").   Therefore, just as the Court previously found that Plaintiffs conceded arguments to which they fail to respond, *see* 2019 Mem. Op. at 18 n. 4, Plaintiffs have conceded Defendants' compliance with the Court's prior order, Defendants' adequacy of search for Center records, Defendants' assertions of Exemptions 4 and 6 to the Center records, and segregability.   *See Hopkins v. Women's Div., General Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) (holding that when a plaintiff files an opposition addressing only certain arguments raised by the defendant, "a court may treat those arguments that the plaintiff failed to address as conceded") (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997); *accord Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) (upholding enforcement of District Court rule "that if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded" (citations omitted)).

    While Plaintiffs' cross-motion is narrow in the sense that it only challenges Defendants' assertion of Exemption 5 under the FOIA, it is broad in that Plaintiffs ask this Court to nullify or otherwise void all Defendants' withholdings under Exemption 5—including those covered by the Court's partial grant of summary judgment for Defendants.   *See, e.g.*, Cross Mot. at 11 (requesting that the Court "revisit" its "interlocutory order").   Plaintiffs' baseless request for

relief is based on a series of proverbial "Hail Mary's," each catapulted toward Plaintiffs' goal of voiding all of Defendants' deliberative process and attorney-client privilege withholdings.

Indeed, most arguments Plaintiffs advance are based on an unsupportable reading of one opinion by the D.C. Circuit and applying that inapt reading to advance the baseless argument that the crime-fraud exception and the "government misconduct" exception justify wholesale nullification of Defendants' withholdings under Exemption 5.   Plaintiffs' assertion that Defendants failed to meet their burden of proving foreseeable harm is equally uncompelling. As explained in Defendants' briefs and *Vaughn* Index, disclosure of FDA's deliberative process and attorney-client privileged communications would chill FDA's frank internal discussions of sensitive and complex regulatory issues, harm agency counsel's ability to communicate freely and provide legal advice to agency components, discourage agency components from seeking such legal advice, confuse the public, and enable improper gamesmanship by the public, perhaps at the expense of the public health.   *See, e.g.*, ECF Nos. 67, 50-5.   Because Plaintiffs' arguments are unsupported by law and are contrary to FOIA, and because Defendants have met their burden to show that they completed a reasonable search, properly applied the FOIA exemptions, and have released segregable information, Defendants respectfully request that the Court grant summary judgment in Defendants' favor and deny Plaintiffs' motion on all grounds.

**BACKGROUND**

In support of its mission to protect the public health and regulate the safety and efficacy of medical devices, FDA banned Electrical Stimulation Devices for certain uses, after years of agency deliberations and rulemaking.   On April 24, 2016, FDA proposed a ban on Electrical Stimulation Devices intended to treat self-injurious or aggressive behavior ("Proposed Rule"). *See* Defs. Mot. at 2.   After several years of considering comments, including Plaintiffs', FDA

3

finalized the Electrical Stimulation Device ban on March 6, 2020 ("Final Rule").   *Id.*   The

Final Rule banned Electrical Stimulation Devices intended to treat self-injurious or aggressive

behavior under 21 U.S.C. § 360f, which provides FDA statutory authority to ban medical

devices.   *See Judge Rotenberg Educ. Ctr., Inc. v. FDA*, 3 F.4th 390, 394 (D.C. Cir. 2021)

("*Judge Rotenberg Ctr. 1*").

Plaintiffs petitioned the D.C. Circuit to review the Final Rule.   *Id.* at 393.   On July 6,

2021, the D.C. Circuit vacated the Final Rule.   *See generally id.* at 390.   The Court's holding

was based on its reading of two statutes—21 U.S.C. § 360f, the statute that gives FDA the power

to ban medical devices, and 21 U.S.C. § 396, the statute constraining FDA's powers from

interfering with the "practice of medicine" and a physician's authority to "prescribe or

administer any legally marketed device to a patient[.]"   *Id.* at 394-95.   The Court found that

while FDA could ban a medical device, 21 U.S.C. § 396 constrained FDA from tailoring a ban to

only certain uses, and therefore vacated the Electrical Stimulation Device ban on that basis.   *Id.*

at 398-400.   The Court expressly stated that its holding did not "address petitioners' other

arguments, including whether the ban was arbitrary and capricious or whether substantial

evidence supported FDA's factual determinations."   *Id.* at 400; *see also* Cross Mot. at 6-7.

The opinion nowhere uses the term "*ultra vires*," nor does it find that FDA acted in bad faith.

Chief Judge Srinivasan dissented, concluding that FDA had the authority to impose the

Electrical Stimulation Device ban.   3 F.4th at 400.   He reiterated that "no one doubts the

FDA's statutory authority to impose a blanket ban on electrical stimulation devices covering all

their potential uses," *id.* at 402, and opined that "Petitioners contend, and my colleagues agree,

that the agency possesses only an all-or-nothing banning power: it must either ban a device

4

across all its potential uses or refrain from banning at all.    Respectfully, I do not read the statute to compel that counterintuitive result."    *Id.*

Despite vacatur of the Electrical Stimulation Device ban, Plaintiffs moved to supplement the Complaint in this case to add a new and voluminous FOIA request that they submitted to FDA in 2022.    *See* ECF Nos. 62-64.    This Court denied Plaintiffs' motion because, among other reasons, it would "prevent the economic and speedy disposition of the existing controversy between the parties," it would "cause undue delay," and it would "prejudice the rights of defendants, who have already expended time and resources bringing the initial matter to a close and briefing their motion for summary judgment."    Nov. 1, 2022 Min. Order.[1]

After this Court granted partial summary judgment with respect to some records produced by Defendants in March 2019, *see* 2019 Mem. Op.,[2] Defendants submitted their motion for summary judgment with respect to the remainder of their FOIA production in 2020. Defs. Mot.    In February 2023, Defendants submitted a supplemental brief on foreseeable harm, *see* ECF No. 67 ("Harm Br.").    Plaintiffs filed a cross-motion for summary judgment and a combined opposition to Defendants' motion, in which Plaintiffs asked this Court to void all of Defendants' withholdings, *see generally* Cross Mot.

---

[1]    Plaintiffs subsequently sued FDA on the 2022 FOIA request.    *See Judge Rotenberg Educ. Ctr. v. FDA*, Civ. A. No. 22-3583 (BAH) (D.D.C.).

[2]    The Court's prior ruling also ordered Defendants to "supplement their *Vaughn* Index and/or declarations consistent with this Memorandum Opinion," to "produce [records containing non-responsive information] not otherwise being withheld under one of FOIA's statutory exemptions," and to produce "the record identifying the [Judge Rotenberg Center's] employee who was interviewed by CBS" to Plaintiffs.    2019 Mem. Op. at 41-42.

Because Plaintiffs' arguments are not supported by law, are barely tethered to the records in this matter[3] (in their brief, Plaintiffs cite to fewer than 20 of the 84,000 records, and they fail to analyze any of the declarations submitted by Defendants), do not justify voiding Defendants' reasonable assertion of Exemption 5, and fail to negate the foreseeable harm that would result from disclosure of that information, there is no legal basis to grant Plaintiffs' wish for unfettered access to records protected by the deliberative process and attorney-client privileges.

## ARGUMENT

I.   **The D.C. Circuit's Decision to Vacate the Electrical Stimulation Ban Did Not Void FDA's Assertion of FOIA Exemption 5.**

Plaintiffs rely on *Weissman v. CIA*, 565 F.2d 692 (D.C. Cir. 1977), to make the sweeping and baseless argument that FDA is "precluded . . . from availing itself of a FOIA exemption to avoid disclosing records concerning *ultra vires* acts."   Cross Mot. at 12.   In Plaintiffs' view, because they consider the D.C. Circuit to have found that the Electrical Stimulation Device ban was "*ultra vires*," a term not used in the opinion, FDA cannot withhold information subject to Exemption 5's deliberative process privilege or attorney-client privilege.   *Id.* at 13-18. Plaintiffs are wrong.   They misread the D.C. Circuit's opinion, fail to cite any persuasive or binding precedent that supports their position, and fail to alert the Court to the full scope of clearly adverse case law.   *See, e.g., Enviro Tech Int'l v. EPA*, Civ. A. No. 02-4650, ECF No. 26, Mem. Op. & Order at 10-15 (N.D. Ill. Docketed Mar. 11, 2003) (finding *Weissmann* "inapposite" to the "proposition that the *ultra vires* decisions by a government agency are not

---

[3]    Because this case is a FOIA lawsuit, and not a legal challenge to the agency's banning authority or the merits of the Final Ban, Defendants do not directly respond in this brief to the many irrelevant and inaccurate factual assertions and narratives related to the history of Electrical Stimulation Device regulation and related rulemaking.   Defendants do respond as appropriate to Plaintiffs' factual assertions in their statement of facts insofar as those facts are material to summary judgment in this case.

covered by the deliberative process privilege"); *Navasky v. CIA*, 499 F. Supp. 269, 274 (S.D.N.Y. 1980) (discussing *Weissman* and finding that "a claim of activities *ultra vires* the CIA charter is irrelevant to an exemption 3 claim"); *Edwards v. CIA*, 512 F. Supp. 689, 694 (D.D.C. 1981) (discussing *Weissman* and concluding that "CIA acted within its powers, but assuming that conclusion is incorrect, the information is still exempt [under FOIA Exemptions 1 and 3]"). Plaintiffs mischaracterize and misapply *Weissman* and brazenly ask this Court to make law that would eliminate an agency's ability to assert FOIA Exemption 5 whenever a court concludes after the fact that an agency lacked statutory authority to make a rule or other policy decision.

*Weissman* stands for the proposition that, in some circumstances, an agency cannot assert a substantive FOIA exemption over its records when Congress has not given that agency the substantive power protected by the FOIA exemption.  565 F.2d at 695-96.  In *Weissman*, the court found that Exemption 7, which protects information compiled for law enforcement purposes, could not be asserted by the Central Intelligence Agency ("CIA") because Congress had expressly withheld law enforcement powers from the CIA.  *Id.*  The CIA had asserted Exemption 7 over information related to its covert investigation and background check of an American citizen living at home.  *Id.* at 695.  The court found that Exemption 7 was "unavailable" to the CIA because "[i]t cannot be contended that this activity was for law-enforcement purposes," and because Congress had expressly withheld any domestic law-enforcement power from the CIA.  *Id.* (citing 50 U.S.C. § 403(d)(3) (the CIA "shall have no police, subpoena, law-enforcement powers, or internal-security functions")).  Thus, the court held that the CIA could not assert the law-enforcement exemption when "[t]he Agency simply has no authority in the guise of law to make such a background check."  *Id.* at 696.

7

Thus, *Weissman* found that the law enforcement privilege under FOIA could not be asserted by an agency that did not have the authority to conduct law enforcement activities. 565 F.2d at 695-96.   This limited ruling has no relevance here.   Unlike the CIA in *Weissman*, FDA clearly has authority to ban devices, *see* 21 U.S.C. § 360f, and to make regulatory and policy decisions in furtherance of its public health mission to ensure the safety and efficacy of medical devices.   The D.C. Circuit did not question FDA's authority to ban devices, *Judge Rotenberg Ctr. 1*, 3 F.4th at 398 ("FDA possesses the [ ] power to completely ban a medical device."); *accord id.* at 401 (Srinivasan, C.J., dissenting), and Plaintiffs do not dispute that Congress delegated FDA that authority.   Rather, Plaintiffs argue that "FDA lacked statutory authority to ban [Electrical Stimulation Devices] used to treat" self-injurious behavior or aggressive behavior.   Cross Mot. at 13.   That is too fine a point, and no reasonable reading of *Weismann* compels this Court to conclude that Exemption 5 is unavailable to FDA on such basis. At all times relevant here, FDA has possessed the authority to ban medical devices.

FDA's internal deliberations and attorney-client communications related to that power are critical to FDA's ability to use that authority and to carry out its mission to protect and promote the public health.   That the FDA was later deemed by the D.C. Circuit majority to have employed too narrowly its power to ban a medical device in no way means that the agency was not entitled to obtain legal advice or to engage in deliberative processes as it evaluated whether, and if so how, to ban Electrical Stimulation Devices, and accordingly Exemption 5's protections remain both available and critical to safeguarding FDA's ability to carefully consider contemplated regulatory actions.   *Weissman* dealt with an entirely different situation and is simply inapposite to the interrelationship between FDA's assertion of Exemption 5 and the D.C. Circuit's opinion vacating the targeted Electrical Stimulation Device ban.

Building on their misreading of *Weissman*, Plaintiffs argue that because the now-vacated tailored Electrical Stimulation Device ban has no legal effect, all deliberations underlying the ban "never existed as a matter of law," and all final decisions related to the ban are "void *ab initio*," thus depriving FDA of the ability to assert the deliberative process privilege over any records related to the Electrical Stimulation Device ban.   Cross Mot. at 13-16.   Plaintiffs also assert that the attorney-client privilege is not available for those records because "where an agency employee pursues *ultra vires* activities, he is not acting as a government agent."   *Id.* at 17.   In Plaintiffs' view, FDA's attorneys were not providing "legal advice" to their clients because "agency attorneys were communicating with agency employees who were not acting on behalf of their clients, the agency Defendants."   *Id.* at 17-18.   These unsupportable, difficult-to-follow conceptions of the interplay between the D.C. Circuit's decision and FDA's ability to assert FOIA Exemption 5 do not withstand scrutiny.

Plaintiffs acknowledge that the Seventh Circuit has already rejected the very argument they advance here.   *See* Cross Mot. at 15-16 (citing *Enviro Tech Int'l v. EPA*, 371 F.3d 370 (7th Cir. 2004)).   Plaintiffs attempt to distinguish *Enviro Tech* on the basis that "Congress had expressly and unambiguously prohibited" FDA from banning Electrical Stimulation Devices, whereas the alleged *ultra vires* activity in *Enviro Tech* was "arguably" within the agency's authority.   This argument is meritless.   Cross Mot. at 15-16.   The Seventh Circuit held that "[t]he privilege at issue in *Weissman* was confined to a particular activity—law enforcement—in which the CIA was expressly forbidden to engage" and that *Weissman* was inapplicable to Exemption 5's protection of the "formulation of policy" because policy making "is not something that is foreclosed to the EPA or to any other agency."   371 F.3d at 376.   Plaintiffs ignore this holding because it is fatal to their entire argument.   And there is good reason why

9

*Weissman*'s analysis of Exemption 7 does not extend to Exemption 5:

> [A]lthough there are obviously limits to each agency's policymaking authority, it might well be difficult to delineate when an agency's internal predecisional discussions are *ultra vires*, in the sense that they address potential courses of action that are wholly beyond the legitimate scope of the agency's mission, and when they are not. . . . Deeming internal discussions unprotected by the deliberative process because, in retrospect, it appears that the agency was considering proposals that were beyond the scope of its authority to implement might well discourage the kind of frank and appropriate policymaking discussions that the privilege was meant to protect and promote.

*Id.*[4]   Plaintiffs' argument that there is no "reason to protect the process" and "no downside" to removing all Exemption 5 withholdings from all of FDA's records fails to recognize the policy underlying the deliberative process privilege and is unsupported by case law.   *See* Cross Mot. at 15 (quotations omitted).   Similarly, Plaintiffs' insistence that the Electrical Stimulation Device ban was plainly *ultra vires* is hyperbolic rhetoric that tries to leverage the D.C. Circuit decision to gain access to FDA's deliberations about its explicitly delegated authority to ban medical devices.   FDA's authority to make policy and to ban medical devices in furtherance of its mission and statutory authority to regulate and ban devices is unquestionable.

Plaintiffs' reliance on dicta in *American Airlines Inc. v. TSA*, 665 F.3d 170, 176 (D.C. Cir. 2011), a case brought under the Administrative Procedure Act ("APA"), is similarly unpersuasive.   Cross Mot. at 14.   In that case, the D.C. Circuit vacated an agency's actions after finding that the agency improperly deviated from its Congressionally mandated authority. 665 F.3d at 177.   This finding is irrelevant to whether FDA can assert FOIA Exemption 5 to withhold agency employee deliberations related to its exercise of its undisputed authority to ban

---

[4]   The Seventh Circuit made the practical observation that, even if there is a limit to the scope of an agency's deliberative process privilege, it would be for "internal communications about something not even arguably within the agency's domain," for example, "if EPA staff members were to begin mapping out policy on something like school prayer . . . then the privilege would not apply."   *Id.* at 376.

a medical device.   *See, e.g.*, *Judge Rotenberg Ctr. 1*, 4 F.4th at 398.   Moreover, as Chief Judge Srinivasan clarified, the panel agreed that FDA had "statutory authority to impose a blanket ban on electrical stimulation devices covering all their potential uses.   The question here is whether the agency could adopt a less sweeping, more tailored approach," *id.* at 402, an "unexceptionable" and "eminently reasonable" interpretation of its statutory authority, *id.* at 404.

Plaintiffs' remaining argument that Defendants' "*ultra vires*" acts void or nullify every assertion of Exemption 5's attorney-client privilege is similarly baseless.   *See* Cross Mot. at 16-18.   In Plaintiffs' view, because the D.C. Circuit vacated the Electrical Stimulation Device ban, the agency employees previously working on that ban were "not acting on behalf of the agency" and any communications between them and FDA attorneys cannot be covered by the attorney-client privilege.   *Id.* at 17-18.   Plaintiffs' reliance on *Larson v. Domestic & Foreign Commerce Corp*, 337 U.S. 682 (1949) and *Pollack v. Hogan*, 703 F.3d 117 (D.C. Cir. 2012), Cross Mot. at 17, is improper because those cases examine the jurisdictional doctrine of sovereign immunity and not the assertion of the attorney-client privilege in FOIA.   *See Larson*, 337 U.S. at 687 ("The issue here is whether this particular suit is not also, in effect, a suit against the sovereign. If it is, it must fail, whether or not the officer might otherwise be suable."); *Pollack*, 703 F.3d at 119-120 ("Pollack argues that her suit is not barred by sovereign immunity, even in the absence of a waiver indicating consent, under the so-called *Larson-Dugan* exception to the general rule.").   Similarly, Plaintiffs' citation to *In re Sealed Case*, 737 F.3d 94 (D.C. Cir. 1984), is inapposite.   Cross Mot. at 17.   As this Court explained, "*Sealed Case* did not involve consideration of FOIA, addressing instead the scope of the 'common law' deliberative process privilege where the White House withheld documents in response to a grand jury subpoena. Nor did that decision suggest that its discussion of alleged government misconduct and the

11

deliberative process privilege applies in the context of the FOIA." *Wright v. Admin. for Children & Families*, Civ. A. No. 15-0218 (BAH), 2016 WL 5922293, at *11 (D.D.C. Oct. 11, 2016).

Moreover, there is no merit to Plaintiffs' assertion that the D.C. Circuit's opinion vacating the Electrical Stimulation Device ban means that all work by FDA employees related to that ban was "not on behalf of the agency." *See* Cross Mot. at 17.   Whether a court ultimately grants or denies a petition to vacate a rule, the work performed by agency employees related to that rule is quintessentially work done on behalf of the agency.   As discussed above, Plaintiffs do not contest that Defendants have the authority to ban devices and to promulgate regulations banning devices.   *See, e.g.*, 21 U.S.C. § 360f (describing FDA's authority to ban devices and to "promulgate a regulation to make such device a banned device").   Given this clear delegation of authority from Congress to FDA, the suggestion that FDA employees working on such rulemaking are not working "on behalf of the agency" is absurd, and Plaintiffs cite no case law that compels that conclusion.   To find otherwise would create a catastrophic precedent where attorney-client privilege is nullified every time a court disagrees with an agency decision.   For this reason, this Court should disregard Plaintiffs' assertion that all of Defendants' withholdings under FOIA Exemption 5 should be withdrawn.

## II.   The Government Misconduct Exemption Does Not Apply in the FOIA Context and, in Any Event, It Is Inapplicable Here.

Plaintiffs devote a significant portion of their brief to rehashing their grievances against FDA to bolster their narrative that FDA's routine rulemaking was, in fact, a bad faith effort manufactured by "anti-aversive advocates and similarly-inclined government lawyers and administrators for political, philosophical, and other non-scientific purposes."   *See* Cross Mot. at 18-27.   Based on this narrative, Plaintiffs argue that the government misconduct exception, a

12

legal doctrine this Court has held does not apply to FOIA cases, should be invoked to reveal information withheld by Defendants under Exemption 5. *Id*. at 28-30 (acknowledging that "this Court has previously declined to recognize a government misconduct exception to the privilege under Exemption 5"). Indeed, in *Wright*, 2016 WL 5922293, at *11, this Court reached the unambiguous legal conclusion that "the government misconduct exception . . . cannot overcome an otherwise valid withholding pursuant to [FOIA] Exemption 5."[5] *See also Judicial Watch, Inc. v. Dep't of State*, 241 F. Supp. 3d 174, 183 (D.D.C. 2017) ("[T]he Court finds that the only applicable Circuit authority militates against recognizing a government misconduct exception in a FOIA case, and it will follow the analysis set out in *Wright*."). Plaintiffs cannot distinguish *Wright* on the facts because the Court's conclusion was legal, not factual. On that basis alone, as a matter of law, Plaintiffs' assertion of the "government misconduct exception" fails.

However, even if the Court were to find that the government misconduct exception can overcome an otherwise valid withholding pursuant to Exemption 5, it would not apply here.[6]

---

[5]    The Court also rejected plaintiff's request for *in camera* review on the ground of a government misconduct exception. 2016 WL 592293, at *10. A similar rejection of the request for *in camera* review, as discussed *infra*, is appropriate here.

[6]    Plaintiffs' request that the Court overturn its prior partial grant of summary judgment is similarly misplaced. Cross Mot. at 11, 30 n. 14. Defendants do not dispute that Rule 54(b) permits the Court to reconsider an interlocutory order "as justice requires," but that "abstract phrase is interpreted narrowly to permit reconsideration only when the movant demonstrates: (1) an intervening change in law; (2) the discovery of new evidence not previously available; or (3) clear error in the first order." *In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II)*, Misc. No. 20-0008 (BAH), 2021 WL 1909777, at *5 (D.D.C. May 12, 2021) (denying motion for reconsideration) (citations and internal quotation marks omitted). Simply asking the Court to revisit its prior grant of summary judgment based on "bad faith" and the intervening D.C. Circuit opinion, Plaintiffs have made no serious attempt to meet their burden "to show that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." *Id.* (cleaned up). Thus, the Court should refuse to reconsider its prior partial grant of summary judgment because none of Plaintiffs' *ultra vires* or bad faith arguments have merit, but even if they did, Plaintiffs' request for reconsideration should be denied for failure to meet their burden under Rule 54(b). *Id.* at *24.

13

Plaintiffs acknowledge that the government misconduct exception only applies in a FOIA matter when there is "extreme government wrongdoing." Cross Mot. at 29. Given this demanding standard, it is not surprising that Plaintiffs fail to identify a single case where an otherwise valid withholding pursuant to Exemption 5 has been voided under this doctrine. As courts considering the applicability of this doctrine to a FOIA case have observed, "if every hint of marginal misconduct sufficed to erase privilege, the exception would swallow the rule." *Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, 903 F. Supp. 2d. 59, 69 (D.D.C. 2012) (cleaned up) (quoting *ICM Registry, LLC v. Dept. of Com.*, 538 F. Supp. 2d 130, 133 (D.D.C. 2008)). And in the "rare cases" where the exception has been applied, 903 F. Supp. 2d. at 69, the conduct must be "nefarious" and constitute "policy discussions . . . so out of bounds that merely discussing them was evidence of a serious breach of the responsibility of representative government." *ICM Registry,* 528 F. Supp. 2d at 133.

FDA's deliberations related to the Electrical Stimulation Device ban were far from nefarious or out of bounds. FDA issued the Electrical Stimulation Device ban to protect the public health and ensure the safety and efficacy of medical devices. *See* 85 Fed. Reg. 13,312, 13,315. As Plaintiffs acknowledge, the Department of Justice, the Department of State, the United Nations, disability advocates, experts, and other government agencies were supportive of FDA's review and consideration of whether banning Electrical Stimulation Devices for self-injurious behavior and aggressive behavior was in the interest of the public health. *See* Cross Mot. at 29 (acknowledging broad support). It was FDA's responsibility, as the government agency responsible for regulating medical devices, to consider these positions as well as the arguments of those who did not support the ban, including Judge Rotenberg Center's comments. Because Defendants' deliberations were part of a "legitimate governmental process intended to

14

be protected by Exemption 5," and were clearly not "nefarious," the government misconduct exception does not apply and Plaintiffs' arguments to the contrary fail. *See Nat'l Whistleblower*, 903 F. Supp. 2d. at 68 (finding that the government misconduct exception does not apply to a legitimate government process and that "extreme government wrongdoing" is necessary to prevent invocation of Exemption 5).

Similarly, Plaintiffs' contention that Defendants' attorney-client withholdings under Exemption 5 are void under the crime-fraud exception cannot prevail. *See SAI v. Transp. Sec. Admin.*, 315 F. Supp. 3d 218, 258-59 (D.D.C. 2018) (rejecting similar crime-fraud argument as "imaginative"). Plaintiffs again cite no case where an otherwise valid withholding under the Exemption 5 attorney-client privilege is rendered void under the crime-fraud doctrine. And Plaintiffs fail to meet their burden of making the prima facie showing that "the client made or received the otherwise privileged communication with the intent to further an unlawful or fraudulent act" and "that the client actually carried out the crime or fraud." *See Conservative Force v. Jewell*, 66 F. Supp. 3d 46, 64 (D.D.C. 2014) (rejecting claim of crime-fraud exception to Exemption 5). By its name, the crime-fraud exception requires proof that a crime or fraud was committed. *Id.* To the extent "other misconduct" can be considered, such conduct must rise to a "level of criminal conduct." *Id*. To find that agency decisions that a court later vacates under the APA are akin to crimes or frauds that void all attorney-client privilege communications related to that rulemaking is a gross misinterpretation of the crime-fraud doctrine and would set a chilling precedent.

Lastly, Plaintiffs overstate unremarkable comments in Defendants' records—about looking for a "good expert," asking for "guidance on how to beef up the record," and asking HHS for "support"—to argue that there is ubiquitous evidence that Defendants committed a

15

crime or another act of comparable gravity.    Cross Mot. at 26, 31.    These hand-picked quotes

simply show federal employees commenting on normal administrative objectives—finding a

good expert, seeking guidance on creating a record, and asking for additional support.    These

statements do not demonstrate any criminal intent; rather, they demonstrate the agency was

carefully deliberating the regulation of medical devices within the legitimate scope of its public

health mission.

### III.    Defendants Have Demonstrated that Reasonably Foreseeable Harm Justifies the Withholdings.

Defendants' summary judgment motion, supported by numerous detailed declarations

and two voluminous *Vaughn* indices, and their supplemental foreseeable harm brief, supported

by a supplemental declaration, demonstrate the foreseeable harm prevented by Defendants'

withholdings.

Plaintiffs' foreseeable harm argument boils down to an illogical contention that any

foreseeable harm relevant to Defendants' deliberative-process withholdings under Exception 5

"changed dramatically" and became a "legal nullity" when the D.C. Circuit's judgment vacating

the Electrical Stimulation Device ban became final.    Cross Mot. at 33, 34.    As discussed

above, the notion that the D.C. Circuit opinion voided or otherwise transformed Defendants'

deliberations into "legal nullities" is nonsense, *see supra* at 8-11, and Plaintiffs cite no case law

that supports this drastic theory.    The Court should not accept the premise that the D.C.

Circuit's opinion vacating the Electrical Stimulation Device ban has any bearing on the propriety

of Defendants' withholdings.

Plaintiffs assert that the "public has a right under FOIA to know the true facts and

medical evidence concerning the safety and efficacy of [Electrical Stimulation Devices]," Cross

Mot. at 34, but FDA's final rule, and its supporting administrative record, contains the facts and

relevant evidence at the time of the rule making.    *See Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010) (the administrative record contains "all information [the agency] considered directly or indirectly").    As described in a declaration from the Division Director of Center's Division of Information Disclosure (the Supplemental Boston Declaration) -- a declaration that Plaintiffs do not contest -- disclosing the agency's internal predecisional deliberative materials "would adversely affect the public's understanding of key messages regarding FDA's regulation of [Electrical Stimulation Devices]."    ECF No. 67-1 ¶ 22.    Plaintiffs' assumption that FDA's deliberations contain undisclosed "true facts and medical evidence" is unfounded speculation. Plaintiffs' argument that there is "no harm" but only "benefit" to disclosing all of Defendants' deliberations fails to consider the very basis of the deliberative process privilege: "This privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news."    *See Abtew v. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015) (cleaned up).    That a particular regulatory action was deemed invalid does not mean that FDA personnel's deliberations would not be chilled if their internal communications became public.

Plaintiffs state that some of the withheld records could satisfy the foreseeable harm standard, but they assert that Defendants' demonstration of foreseeable harm was too general. Cross Mot. at 32 (accusing Defendants of attempting to do more than "withhold[ ] only those records the disclosure of which would arguably cause reasonably foreseeable harm to the interests the privilege was intended to protect"), *id.* at 35.    Defendants' opening brief and supporting *Vaughn* indices, *see* ECF Nos. 50, 50-3, 50-5, detail record-by-record the foreseeable harm guarded against by FDA's withholdings.    And Defendants' Supplemental Brief Concerning Foreseeable Harm further explains why information withheld in this case under

17

Exemption 5 would, if released, impair or chill FDA's "frank consideration of sensitive and complex regulatory issues that accompany regulation of devices."   Harm Br. at 5; *see also id.* at 2, 4-6 (citing *Macado Amadis v. Dep't of State*, 971 F.3d 364 (D.C. Cir. 2020), and *Pub. Emps. for Env;t Resp. v. EPA*, Civ. A. No. 18-2219 (BAH), 2021 WL 2515007 (D.D.C. June 18, 2021)).

Plaintiffs' reliance on *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021), to argue that Defendants failed adequately to show foreseeable harm misses the mark.   Cross Mot. at 36-37.   In *Reporters Committee*, the court held that the agency's argument regarding foreseeable harm was limited to two paragraphs and "scant" evidence.   *See Reps. Comm.*, 3 F.4th at 370.   In contrast, here Defendants submitted voluminous *Vaughn* indices, numerous declarations, and a supplemental brief replete with detailed evidence of document-specific foreseeable harm.   *See* Harm Mot. at 5 n.4 and 11 n.7.[7] Notwithstanding Plaintiffs' strained comparison of language from a declaration in *Reporters Committee* to a sentence in a *Vaughn* index entry, Cross Mot. at 37 n. 16, these cases are not similar, and *Reporters Committee* does not support Plaintiffs' position.   Not only was the harm foreseeable if the agency's internal predecisional deliberations prior to the Final Ban were released, but the harm remains foreseeable today.   Since the D.C. Circuit vacated the Electrical Stimulation Device ban, Congress amended 21 U.S.C. § 360f (FDA's banning authority) to clarify that FDA can ban a "device for one or more intended uses," and such a device "is not a legally marketed device under section 396 of this title when intended for such use or uses."   *See*

---

[7]   Plaintiffs claim that if Defendants' "*Vaughn* indices had included such information, Defendants would not have felt compelled to file the Supplemental Brief," Cross Mot. at 35, is wrong.   Defendants agreed to offer a supplemental brief to streamline the case and make identification of foreseeable harm evidence more accessible and understandable to the parties and to the Court.   Whether the *Vaughn* indices use the lingo "foreseeable harm" is irrelevant.

21 U.S.C. § 360f(a)(2); *see also* H.R. Rep. No. 117-348, at 65 (2022) (explaining the amendment to the Federal Food, Drug, and Cosmetic Act's banning standard was "to clarify FDA's authority to ban a device, in appropriate circumstances where the longstanding banning standard is met, regardless of whether it includes other devices that are technologically similar but have different intended uses within the scope of the ban"). FDA has since made public its intention to issue by December 2023 a proposed rule banning Electrical Stimulation Devices intended to treat self-injurious or aggressive behavior. *See* https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202304&RIN=0910-AI84 (last visited June 18, 2023). Thus, harm caused by disclosure of Defendants' internal deliberative and attorney-client communications remains reasonably foreseeable, particularly in light of Congress's amendment to the banning provision in the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 360f) and FDA's intention to initiate rulemaking, through the planned proposed rule, to ban Electrical Stimulation Devices under this provision.

Plaintiffs admit that a categorical approach can be appropriate to demonstrate foreseeable harm, but assert that, in a case involving approximately 100,000 pages of released pages, Defendants' categorical approach was improper. Cross Mot. at 37-39. For instance, Plaintiffs erroneously assert that "drafts" and "non-drafts" refer to "drafting stage[s]" and not, as described in Defendants' supplemental brief, to categories of records: "drafts" and "memoranda, email exchanges, and other non-draft records." Harm Br. at 6. Plaintiffs' complaint that these categorical descriptions are not substantive enough ignores that all these records address the same locus of issues, *i.e.* Plaintiffs, the device manufactured by The Judge Rotenberg Educational Center, Inc. ("The Judge Rotenberg Center"), and the Electrical Stimulation Device ban. *See id.* at 4-5.

19

Of the approximately 84,000 records released since 2019, Plaintiffs cite to fewer than twenty individual records in their brief and fail to analyze any of the numerous detailed declarations submitted by Defendants in support of their withholdings.   Cross Mot. at 38-39 (challenging Defendants' redactions to records identified in Non-Center Index (ECF No. 50-3) at Entry Nos. 4-14).   They fail to note that reasonably foreseeable harm for many of these records (Entries 4, 7-8, 13-14) relates to assertion of both the deliberative process and attorney-client privileges.[8]   *See* Harm Br. at 8-11.   Further, Plaintiffs' assertion that these entries lack a connection to the Agency's decision-making process is baseless.   For example, Record No. 4 contains "background information about an outline and legal analysis of possible proposed ban and alternatives" and includes deliberative "talking points and policy implications of relaying this content to industry."   ECF No. 50-3 at Entry No. 4.   Record No. 14 is a draft outline for a planned interview with a Judge Rotenberg Center witness, and contains an FDA attorney's advice as well as information from agency employees.   ECF No. 50-3 at Entry No. 14.   These records contain pre-decisional deliberations that implicate regulatory issues related to The Judge Rotenberg Center and Electrical Stimulation Devices.   Such deliberations predictably relate to legal considerations, policy considerations, and public health considerations.   And while disclosure of such deliberations would inhibit candid communications among agency employees,

---

[8]   Plaintiffs also assail Defendants' assertion of the attorney-client privilege in Entry Nos. 757 and 1208 on the basis that they are improper withholdings of "strategic" or "policy" decisions and not "legal advice."   Cross Mot. at 45.   To the contrary, these are communications between attorneys and their client regarding legal advice.   *See* ECF No. 50-5 at Entry Nos. 757 and 1208 (identifying the attorney on each message and describing that attorney's provision of "legal advice to their client" (Entry No. 757) and "legal advice to the agency" (Entry No. 1208)).   Plaintiffs' baseless conclusion that the legal advice cannot be related to policy or strategy issues is illogical, given the Electrical Stimulation Device ban was a policy decision that merited legal advice prior to and throughout the rulemaking process.

there are additional foreseeable harms that would occur, as described in Defendants' briefs and *Vaughn* index entries.   *See, e.g.*, Harm Br. at 8-11.

Plaintiffs' remaining arguments regarding foreseeable harm also come up short.   First, Plaintiffs argue that embarrassment is not a foreseeable harm justifying withholding under Exemption 5, Cross Mot. at 39; however, Defendants do not argue that any information is being withheld on the basis of "embarrassment."   Having nothing to do with embarrassment, Defendants' concern that "companies would attempt to leverage perceived disagreements within FDA for private or financial gain," *see* Harm Br. at 10, is a specific, concrete, foreseeable harm relating to commercial advantage.   Deliberative internal discussions about FDA's policy-making processes, complex issues related to regulation of medical products, and discussions about broadly applicable issues would, if disclosed, foreseeably be used by private parties to leverage perceived disagreements to the detriment of the public health, administrative efficiency, and to perpetuate matters in court, wasting judicial and other federal resources.

Second, Plaintiffs' argument that public confusion cannot be a foreseeable harm is inapt. Cross Mot. at 40.   *See, e.g., Leopold v. Dep't of Just.*, Civ. A. No. 19-2796 (JEB), 2021 WL 3128866, at *5 (D.D.C. July 23, 2021) (upholding fear of public confusion as reasonably foreseeable harm if documents subject to deliberative-process privilege were disclosed, as predecisional materials "would be incorrectly interpreted by the general public as the official thoughts of the Department, instead of correctly understood as the preliminary thoughts of different individuals"); *Reps. Comm. for Freedom of the Press v. Customs & Border Prot.*, 567 F. Supp. 3d 97, 121-22 (D.D.C. 2021) ("worries that disclosure would confuse the public . . . is a foreseeable risk of harm for this category [as] the public might mistake [] preliminary thoughts for the agency's actual policy").   Plaintiffs assume that withheld deliberations are simply

21

discussions regarding facts and evidence, the release of which could not confuse the public (*see* Cross Mot. at 40 addressing "evidence" and addressing the notion of "educating the public"); however, the foreseeable harm of public confusion is not based on the release of mere facts. Internal deliberations are not limited to facts and evidence.   Rather, as explained in Defendants' supplemental brief, internal deliberations include discussion about, for instance, how to communicate "key messages" and how to answer questions about the proposed rule.   *See* Harm Br. at 9.   These internal deliberations, which could include conflicting opinions and recommendations, would cause confusion, particularly when there are final versions of those same "key messages" and substantive public health points.   *Id*.   There has been, and continues to be, public interest in regulatory issues related to the Electrical Stimulation Device ban and disclosing FDA's deliberations (or attorney-client privileged communications) would confuse the public's ability to understand FDA's articulation of the "key messages" and public health decisions.[9]

## IV.   The Court Should Decline Plaintiffs' Request to Review Records *In Camera*.

Plaintiffs also request that the Court review 50 records *in camera* because Defendants allegedly have acted in bad faith.   Alternatively, Plaintiffs proffer that "the Court need not review these records . . . if it finds in Plaintiffs' favor on the bad faith issue," Cross Mot. at 41. The Court, however, should not be burdened with *in camera* review in this case.

---

[9]   *See, e.g.*, Advocates Call On FDA to Reissue Ban On Shock Device For Those With Disabilities, https://www.disabilityscoop.com/2023/05/23/advocates-call-on-fda-to-reissue-ban-on-shock-devices-for-those-with-disabilities/30394 (last visited June 18, 2023); Congress acts to help ban shock devices used for treatment at Massachusetts school, https://www.wcvb.com/article/5-investigates-judge-rotenberg-center-shock-therapy/42526127 (last visited June 18, 2023).

Plaintiffs' request is all part of the same ploy—Plaintiffs want to obliterate Exemption 5 to see all of FDA's deliberative and attorney-client communications.   And while Defendants were amenable to a reasonable request for *in camera* review of a subset of records, Plaintiffs' request is not reasonable.   Because Plaintiffs' allegations of bad faith have no merit, Defendants respectfully request that the Court exercise its broad discretion and reject Plaintiffs' request for *in camera* review.   *See, e.g.*, *Ctr. for Med. Progress v. Dep't of Health & Hum. Servs.*, Civ. A. No. 21-642 (BAH), 2022 WL 4016617, at *4 n. 4 (D.D.C. Sept. 3, 2022), *recons. denied*, 2022 WL 17976633 (D.D.C. Nov. 16, 2022) (denying request for *in camera* review when "plaintiff's allegations of agency bad faith have no merit").

Moreover, Plaintiffs have failed to provide this Court any meaningful reason to assume the burden of reviewing 50 records *in camera.*   The D.C. Circuit has observed that *in camera* review burdens the courts, undermines the adversarial nature of FOIA litigation, and "should not be resorted to as a matter of course."   *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996). "[W]hile district courts generally enjoy broad discretion in determining whether to conduct *in camera* review in FOIA proceedings, the D.C. Circuit has cautioned that 'when the agency meets its burden by means of affidavits, *in camera* review is neither necessary nor appropriate." *Wright*, 2016 WL 5922293, at *11 (denying request for *in camera* review "in light of HHS's thorough declaration and *Vaughn* Index appropriately describing the bases for invoking the deliberative process privilege and satisfying its segregability obligations"); *see also Mobley v. CIA*, 806 F.3d 568, 588 (D.C. Cir. 2015) (affirming denial of request for *in camera* review); *ACLU v. CIA*, Civ. A. No. 16-1256 (EGS), 2021 WL 5505448, at *9 (D.D.C. Nov. 24, 2021) (denying request for *in camera* review).   Particularly relevant here, "*in camera* review is of little help when the dispute centers not on the information contained in the documents but on the

parties' differing interpretations as to whether the exemption applies to such information." *Mobley*, 806 F.3d at 588. Further, agencies are "entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Elec. Privacy Ctr. v. Dept. of Just.*, 320 F. Supp. 3d 110, 121 (D.D.C. 2018). Plaintiffs have failed to question any aspect of Defendants' declarations and only speculate that "the redacted content in these records will reveal further evidence of Defendants' regulatory misconduct" and that they will reveal "the impropriety of their Exemption 5 withholdings." Cross Mot. at 41. Plaintiffs similarly assert that the record will "reveal Defendants failed to produce all 'reasonably segregable' portions of records," and that "the problems in this representative sample similarly infect all of Defendants' purported Exemption 5 withholdings," yet provide no evidence or argument related to segregability[10] or any justification to extend an analysis of fifty records to the 100,000 page production. *Id.* at 41. Because Plaintiffs have made no meaningful showing to overcome the presumption that Defendants released records in accordance with their obligation to disclose reasonably segregable material, their groundless bad faith arguments are insufficient to justify *in camera* review of 50 records.[11]

---

[10]     Plaintiffs' only reference to segregability is the assertion that *in camera* review of Defendants' records would reveal that "Defendants failed to produce all 'reasonably segregable' portions of records[.]" Cross Mot. at 41 n. 18. This falls far short of rebutting Defendants' argument that it properly segregated its withholdings. In its prior ruling, this Court found that Defendants had provided a "sufficiently detailed justification" of segregability and had "released segregable information." 2019 Mem. Op. at 39-40. The same is true with this round of summary judgment because Defendants have provided a sufficiently detailed explanation of compliance with the segregability requirement. *See id.*; ECF Nos. 50-4 ¶ 34; 50-14 ¶ 7; 50-18 ¶ 9; 50-2 (Defs' Stmt. of Facts) ¶¶ 116-20, 124-27, and 50-5 (Center Index) at 1.

[11]     To the extent the Court grants the request to review records *in camera* and concludes that disclosure is appropriate, disclosure should be limited to the 50 records identified by Plaintiffs. Plaintiffs' assertion that any such "problems" would necessarily be in all Exemption 5 withholdings is illogical and yet again premised on Plaintiffs' baseless bad faith narrative.

**CONCLUSION**

Plaintiffs' arguments are unsupportable and inconsistent with FOIA jurisprudence, and they fail to directly address Defendants' detailed declarations.    In contrast, Defendants have demonstrated that they have properly applied the FOIA exemptions to the thousands of records released in this case and have released all segregable information in those records. Accordingly, Defendants respectfully request that the Court grant Defendants' motion for summary judgment and deny Plaintiffs' cross-motion for summary judgment.

Dated: June 23, 2023              Respectfully submitted,

                                  MATTHEW M. GRAVES, D.C. Bar #481052
                                  United States Attorney

                                  BRIAN P. HUDAK
                                  Chief, Civil Division

                        By:   /s/ M. Jared Littman
                                  M. JARED LITTMAN
                                  PA Bar # 91646
                                  Assistant United States Attorney
                                  601 D St., N.W.
                                  Washington, D.C.  20530
                                  Phone: (202) 252-2523
                                  Fax: (202) 252-2599
                                  Email: Jared.Littman@usdoj@usdoj.gov

                                  *Attorneys for the United States of America*

OF COUNSEL:

SAMUEL R. BAGENSTOS
General Counsel
U.S. Department of Health and Human Services

MARK RAZA
Chief Counsel

WENDY VICENTE
Acting Deputy Chief Counsel, Litigation

SETH I. HELLER
Associate Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Ave.
White Oak 31
Silver Spring, MD 20993-0002

26