**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| THE JUDGE ROTENBERG EDUCATIONAL CENTER, INC., *et al.*, | ) ) ) ) | |
| *Plaintiffs,* | ) ) | |
| v. | ) ) | No. 1:17-cv-02092-BAH |
| U.S. FOOD AND DRUG ADMINISTRATION, *et al.*, | ) ) ) ) | |
| *Defendants.* | ) ) ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF
<u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.    Defendants Do Not Dispute *Any* Of Plaintiffs' Material Facts. ..................................... 2

II.   Exemption 5 Does Not Protect Records Concerning The *Ultra Vires* Rulemaking........ 3

    A.    The Deliberative-Process Privilege Does Not Protect *Ultra Vires* Records........... 5

    B.    The Attorney-Client Privilege Does Not Protect *Ultra Vires* Records................. 10

III.  Exemption 5 Does Not Protect Records Concerning Bad Faith Acts........................... 11

    A.    The Deliberative-Process Privilege Does Not Protect Records of Bad Faith Acts ........................................................................................................ 12

    B.    The Attorney-Client Privilege Does Not Protect Records Of Unlawful Acts. ..... 14

IV.  Defendants Failed To Establish Reasonably Foreseeable Harm From Disclosure. ...... 18

    A.    Foreseeable Harm Would Not Result From Disclosure Of *Ultra Vires* Records. 18

    B.    Defendants Failed To Particularize The Allegedly Foreseeable Harm. ............... 20

    C.    Defendants Failed To Establish They Used A Proper Categorical Approach. ...... 21

    D.    Defendants Are Improperly Withholding Records To Avoid Embarrassment..... 21

    E.    Defendants Are Not Withholding Records To Avoid Public Confusion.............. 22

V.   The Court Should Order *In Camera* Review. ................................................................ 23

VI.  Plaintiffs Are Entitled To Summary Judgment And Other Appropriate Relief. ........... 25

## INTRODUCTION

Every government branch has instructed Defendants[1] to invoke FOIA Exemption 5, and particularly the deliberative-process privilege, only sparingly.[2] But Defendants reject this message; while not disputing they redacted an enormous number of records, *see* Defs.' Responses to Plfs.' Undisputed Material Facts ("Responses") [ECF No. 76-1] at ¶¶ 17-19, they stridently defend their improper withholdings, which concern an *ultra vires* rulemaking, were the product of regulatory misconduct, and would not cause foreseeable harm if disclosed.[3] Defendants should have produced the withheld records when Plaintiffs submitted their FOIA Requests *seven years ago*. The need for prompt disclosure is now acute in light of FDA's threat to propose a new ban before the end of the year, *see* Cross-Opp. at 19, which could jeopardize the health and safety of the fifty-two patients who depend on JRC's safe and effective GED program for relief from their treatment-resistant, life-threatening SIB and AB. *See* Responses at ¶¶ 1-6. As set forth herein and in Plaintiffs' Cross-Memorandum, the Court should deny Defendants' Motion and grant Plaintiffs' Cross-Motion.

---

[1]   Capitalized terms not defined herein have the same meanings as in Plaintiffs' Memorandum in support of their Cross-Motion ("Cross-Memorandum") [ECF No. 71-1].

[2]   *See*, *e.g.*, *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021) ("*Reporters Committee*") (explaining the Improvement Act makes it more difficult to withhold information in order to reduce "overuse and abuse of Exemption 5 and the deliberative process privilege") (citations omitted); 162 Cong. Rec. H3,717, H3,719 (daily ed. June 13, 2016) (Congress included the "presumption of openness" in the Improvement Act in order to put "the spirit of the law" into "the letter of the law"); OIP Guidance: Creating a "New Era of Open Government", https://www.justice.gov/oip/blog/foia-post-2009-creating-new-era-open-government (last visited Aug. 7, 2023) ("2009 Guidance") ("Most importantly, agency personnel should view all FOIA decisions through the prism of openness."); *see also* OIP Guidance: Applying a Presumption of Openness and the Foreseeable Harm Standard, https://www.justice.gov/oip/oip-guidance-applying-presumption-openness-and-foreseeable-harm-standard (last visited Aug. 7, 2023) ("2023 Guidance") (endorsing 2009 Guidance).

[3]   Plaintiffs do not concede Defendants complied with the Court's prior order or FOIA's segregability requirement. *See* Defs.' Opp. to Plfs.' Cross-Mot. ("Cross-Opposition") [ECF No. 76] at 2. Inherent in Plaintiffs' arguments is that Defendants have not complied because *all* their Exemption 5 withholdings are improper. *See id.* (acknowledging Plaintiffs' position).

## ARGUMENT

### I.   Defendants Do Not Dispute *Any* Of Plaintiffs' Material Facts.

Defendants' failure to dispute *any* of Plaintiffs' material facts means only legal issues remain for resolution. *See* Supp. Decl. of Matthew D. Rodgers ("Rodgers Supp. Decl.") (Aug. 7, 2023) at Ex. A (summary of Defendants' responses to Plaintiffs' facts). If Defendants disputed any of Plaintiffs' facts, they should have "*support[ed] the assertion[s] by...citing to particular parts of materials in the record...*" in order to avoid the Court "consider[ing] the fact[s] undisputed". Fed.R.Civ.P. 56(c)(1)(A), (e)(2)-(3) (emphasis added); *accord* LCvR 7(h)(1); *see also* Standing Order for Civil Cases [ECF No. 6] at ¶ 5(d) ("This Court strictly enforces Local Civil Rule 7(h)…"). Instead, Defendants improperly: "dispute" Plaintiffs' facts without citing any record support; "dispute" Plaintiffs' characterization of the supporting documents Plaintiffs cite without providing any further explanation of the basis for Defendants' dispute;[4] "dispute" the materiality of the facts (apparently based on Defendants' position that, as a matter of law, *ultra vires* and/or bad faith regulatory conduct can never vitiate Exemption 5); or neither admit nor deny the facts. *See generally* Responses. The Court should deem all of Plaintiffs' facts admitted, *see*, *e.g.*, *Whiting v. Labat-Anderson, Inc.*, 926 F.Supp.2d 106, 109 n.2 (D.D.C. 2013) (Howell, J.); *see also Lockhart v. Coastal Int'l Sec., Inc.*, 5 F.Supp.3d 101, 103 n.2 (D.D.C. 2013) (Howell, J.) (observing "the D.C. Circuit has repeatedly upheld…rulings that hold parties to strict compliance" with LCvR 7(h)), and then grant Plaintiffs summary judgment if it accepts their legal arguments.

---

[4]   Defendants refer the Court to the documents, many of which are redacted FOIA documents, "for a complete…statement of [their] contents". *See*, *e.g.*, Responses at ¶ 1. To assist the Court, Plaintiffs summarized the locations of the documents in the record when not otherwise clear. *See* Rodgers Supp. Decl. at Ex. B. Defendants refused Plaintiffs' request to provide the Court with the unredacted versions of the documents to which Defendants referred the Court. *See id.* at Ex. C.

**II.      Exemption 5 Does Not Protect Records Concerning The *Ultra Vires* Rulemaking.**

Defendants have not carried their burden of establishing that Exemption 5 protects records concerning their undeniably *ultra vires* rulemaking. Their argument to the contrary is a study in sophistry, relying on false premises in an attempt to sidestep Plaintiffs' arguments and supporting authority. The Court should not be deceived and should grant Plaintiffs summary judgment as to all Exemption 5 withholdings of records concerning Defendants' *ultra vires* rulemaking.

Three main false premises pervade Defendants' response to Plaintiffs' *ultra vires* argument. Defendants' lead and repeated argument—that the D.C. Circuit did not hold in the Appeals that FDA's Final Rule was an *ultra vires* rulemaking because it did not use that "lingo"— cannot be a good faith argument. *See* Cross-Opp. at 4, 6, 10, 14, 18 n.7. True, the D.C. Circuit never used the Latin term; it wrote in English. It vacated the Final Rule because it "conclude[d] that the FDA lacks the statutory authority to ban a medical device for a particular use." *JRC v. FDA*, 3 F.4th 390, 400 (D.C. Cir. 2021) ("*FDA*"). This holding is a textbook definition of the term "*ultra vires*". *See Ultra Vires*, Black's Law Dictionary (11th ed. 2019) ("Unauthorized; beyond the scope of power...granted...by law"); *cf.* Cross-Opp. at 7 (indirectly acknowledging "*ultra vires*" means "*an agency lacked statutory authority to make a rule*") (emphasis added). Plaintiffs' reading of the D.C. Circuit's *ultra vires* holding, *see* Cross-Mem. at 11-16, is consistent with decisions by this Court and the Supreme Court using "*ultra vires*" in the same way. *See, e.g.*, *Ascension Borgess Hosp. v. Becerra*, 557 F.Supp.3d 122, 135-136 (D.D.C. 2021) (Howell, J.) (accepting HHS's argument it did not act *ultra vires* where it did not "act[] in excess of [its] delegated powers") (quotation omitted); *Dalton v. Specter*, 511 U.S. 462, 472 (1994) (using "*ultra vires* conduct" and "executive actions in excess of statutory authority" interchangeably). There is no reasonable argument that the D.C. Circuit did not vacate the Final Rule as *ultra vires*.

-3-

Defendants build on their first false premise with their next misleading repeated contention—that FDA's "authority to ban a medical device" is "unquestionable" and "undisputed"—a vague claim that avoids distinguishing between a ban of a device *for all uses* (*i.e.*, a ban of a device) and a ban of a device *for less than all uses* (*i.e.*, a ban of a use). Cross-Opp. at 8-12. To the extent Defendants mean FDA has the power to ban a device (if the Agency can prove all of the elements of the banning statute), Plaintiffs have never disputed that point.[5] *See id.* at 3-4, 8, 12. It is an irrelevant argument designed to distract from FDA's lack of power to ban a use.

To the extent Defendants mean that FDA had the power to ban a use, that contention is frivolous. Plaintiffs "disputed" this argument in the Appeals and dispute it here. *See* Cross-Mem. at 6-7, 13, and the D.C. Circuit "questioned" and then rejected this use argument—repeatedly—in the Appeals, *see, e.g.*, *FDA*, 3 F.4th at 400 ("FDA has no authority to choose what medical devices a practitioner should prescribe or administer or for which conditions."); *id.* at 397 ("FDA does not have the [statutory] authority to limit practitioners' use of a device for a particular purpose."). Defendants inappropriately refuse to acknowledge this holding. *See generally* Cross-Opp. at 4-12.

Defendants' final oft repeated assertion—that Plaintiffs are attempting "to gain access to FDA's deliberations about its explicitly delegated authority to ban medical devices"—is the culmination of their attempted misdirection. Cross-Opp. at 8, 10. Plaintiffs are actually attempting to gain access to Defendants' communications about FDA's express and unambiguous lack of authority to ban a use. The D.C. Circuit held FDA's Final Rule was an unlawful "use-specific ban", *FDA*, 3 F.4th at 396-398, and the records at issue concern FDA's now-vacated rulemaking, *see* Cross-Mem. at 12 & n.4. Defendants are asking this Court to accept a variation of the argument

---

[5]     Defendants wrongly suggest the D.C. Circuit would have upheld a ban of ESDs for all uses. *See* Cross-Opp. at 8. As they elsewhere admit, the D.C. Circuit had no need to reach and did not resolve Plaintiffs' non-jurisdictional arguments. *See id.* at 4 (citing *FDA*, 3 F.4th at 400).

the D.C. Circuit already rejected: that because FDA could have lawfully banned a device, this Court should allow Defendants to use FOIA Exemption 5 to withhold communications concerning its unlawful attempt to ban a use. *Compare* Cross-Opp. at 8 (complaining that Plaintiffs' argument concerning FDA's lack of authority to ban a use draws "too fine a point" because "FDA has possessed the authority to ban medical devices") *with FDA*, 3 F.4th at 398 ("[W]e are not persuaded that because the FDA possesses the 'greater' power to completely ban a medical device, it must have the 'lesser' power to tailor a ban to only certain uses."). If, as the D.C. Circuit held, the rulemaking itself was beyond the scope of FDA's authority, then the communications in the records concerning that rulemaking relate to FDA's attempt to assert powers beyond the scope of its authority. Despite Defendants' insistence that their position is reasonable, *see* Cross-Opp. at 11, not a single judge on the D.C. Circuit requested a vote on FDA's petition for rehearing *en banc*, and Defendants found no justification to appeal to the Supreme Court, *see* Cross-Mem. at 7. This Court should reject Defendants' invitation to relitigate the D.C. Circuit's decision in the Appeals.

### A. The Deliberative-Process Privilege Does Not Protect *Ultra Vires* Records.

Defendants' remaining arguments for the applicability of the deliberative-process privilege to *ultra vires* communications are also unconvincing. From the starting point of the above false premises, they fail to distinguish the cases Plaintiffs cite, rely on inapposite non-binding decisions, and dodge Plaintiffs' policy arguments. Thus, Plaintiffs are entitled to summary judgment as to all deliberative-process privilege withholdings concerning the *ultra vires* rulemaking.

Defendants first argue that Plaintiffs "misread[]" and "mischaracterize" *Weissman v. CIA*, 565 F.2d 692 (D.C. Cir. 1977). Cross-Opp. at 7, 9. But the parties' descriptions of that decision are essentially identical. *Compare* Cross-Mem. at 12 *with* Cross-Opp. at 7. Defendants even implicitly admit that *Weissman* controls here by conceding that it "stands for the proposition

that...an agency cannot assert a substantive FOIA exemption over its records when Congress has not given the agency the substantive power protected by the FOIA exemption". Cross-Opp. at 7. The D.C. Circuit held that FDA did not have the power to ban a use. *FDA*, 3 F.4th at 400. Because FDA lacked authority to ban a use, it similarly lacked authority to spend at least six years discussing how to go about banning a use. *See id.* at 399 ("Federal agencies…possess only those powers that Congress confers upon them. If no statute confers authority to a federal agency, it has none.") (citations omitted). Per *Weissman*, because FDA did not have authority to deliberate on the matter, Defendants cannot assert the deliberative-process privilege over those communications.

Defendants fall back on their false premises to try to distinguish *Weissman* on the basis that FDA has the power to ban a device (even if it lacked the power to ban a use). *See* Cross-Opp. at 8. However, this distinction—between the lawful and unlawful exercise of power—was dispositive in the Appeals and *Weissman*. Like the CIA in *Weissman*, Defendants deploy a FOIA exemption designed to protect a legitimate exercise of governmental authority in order to withhold records related to their illegitimate exercise of governmental authority. Here, as in *Weissman*, the D.C. Circuit held that the agency took an action that Congress had expressly forbidden. *FDA*, 3 F.4th at 400 (citing 21 U.S.C. § 396); *Weissman*, 565 F.2d at 696. It follows that here, like in *Weissman*, Defendants are not entitled to claim an exemption intended to protect authorized governmental actions. *Weissman*, 565 F.2d at 696; *see also* 111 Cong. Rec. 26,821 (1965) ("Innumerable times it appears that information is withheld only to cover up...irregularities…").

Defendants next falsely assert that Plaintiffs "fail[ed] to alert the Court to the full scope of clearly adverse case law".[6] Cross-Opp. at 6. Despite the gravity of this accusation, Defendants only

---

[6]    Defendants ignore cites to the D.C. Circuit's opinions in the Appeals and *Weissman*, falsely accusing Plaintiffs of "fail[ing] to cite any persuasive or binding precedent". Cross-Opp. at 6.

cite three district court cases, two of which do not concern Exemption 5, two of which are out-of-circuit, and one of which is unpublished.[7] Defendants cite this supposedly important authority in short parentheticals with no explanation of why they are relevant, persuasive, or binding.

One decision that Defendants cite is the unreported, out-of-circuit district court opinion in *Enviro Tech Int'l v. EPA*, No. 02-cv-04650, Mem. Op. & Order (N.D. Ill. Mar. 11, 2003). However, Plaintiffs addressed in depth the Seventh Circuit's subsequent decision in that case. *See* Cross-Mem. at 15-16 (discussing *Enviro Tech Int'l v. EPA*, 371 F.3d 370 (7th Cir. 2004)). As to that appellate decision, Defendants argue—inconsistently and incorrectly—that Plaintiffs "acknowledge[d]" yet "ignore[d]" the Seventh Circuit's alleged "holding" that "*Weissman* was inapplicable to Exemption 5's protection of the 'formulation of policy'". Cross-Opp. at 9 (citing 371 F.3d at 376). The Seventh Circuit expressly did *not* so hold; it had no need to resolve that issue in light of its actual holding that the challenged conduct was within the agency's authority. *See Enviro Tech Int'l*, 371 F.3d at 377 ("To the extent that the [deliberative-process] privilege might not apply to internal agency discussions of a proposal that is wholly beyond the agency's authority..., *a question we do not resolve*, we are satisfied that [the agency conduct] does not amount to such a plainly *ultra vires* course of action.") (emphasis added). Thus, the Seventh Circuit ultimately "assume[d]" that "the scope of an agency's authority places some limits on the deliberative process privilege". *Id.* at 376; *see also Stalcup v. CIA*, 768 F.3d 65, 72 (1st Cir. 2014) (explaining that the Seventh Circuit "assum[ed] that a waiver might apply for *ultra vires* actions").

---

[7]    Two cases involved Exemptions 1 and/or 3, which exempt from disclosure national security information protected by executive order or separate statute, 5 U.S.C. § 552(b)(1), (3), and the district courts' analyses of whether the alleged *ultra vires* acts would invalidate those exemptions turned on whether disclosure would threaten national security. *See Edwards v. CIA*, 512 F.Supp. 689, 694 (D.D.C. 1981); *Navasky v. CIA*, 499 F.Supp. 269, 273-274 (S.D.N.Y. 1980).

The Seventh Circuit did observe, in *dicta*, that "[t]he privilege at issue in *Weissman* was confined to a particular activity—law enforcement—in which the CIA was expressly forbidden to engage", while [t]he formulation of policy" was "not something that is foreclosed to...any...agency". *Enviro Tech Int'l*, 371 F.3d at 376. It is true that policymaking, in general, is not forbidden to agencies, including FDA. Here, however, Congress expressly forbade FDA from engaging in policymaking that interferes with the practice of medicine (such as the rulemaking), *FDA*, 3 F.4th at 400, and because FDA could not lawfully engage in such policymaking, Defendants cannot claim an exemption designed to protect lawful policymaking.

The Seventh Circuit's concern about the potential difficulty of delineating *ultra vires* agency discussions in close calls is not implicated here. The D.C. Circuit held that Congress had expressly and unambiguously denied FDA the power it sought to exercise in the ban proceeding, 3 F.4th at 396-398, and observed that regulation of the practice of medicine had traditionally been reserved to the States, *id.* at 399-400. FDA itself understood that JRC's use of the GED was within the practice of medicine before and during the ban proceeding. *See* Responses at ¶ 54; Cross-Mem. at 16. FDA's discussions about a ban of a use were "not even arguably within the agency's domain", and so their disclosure will not "discourage the...appropriate policymaking discussions that the [deliberative-process] privilege was meant to protect".[8] *Enviro Tech Int'l*, 371 F.3d at 376.

Defendants next fail to distinguish *American Airlines v. TSA*, 665 F.3d 170 (D.C. Cir. 2011). That *American Airlines* was not a FOIA case, *see* Cross-Opp. at 10, is irrelevant, as Plaintiffs cited the case for the proposition that a regulation (like FDA's Final Rule) that

---

[8]    Plaintiffs previously acknowledged that any discussions by Defendants about whether FDA could ban a use might be protected by Exemption 5 and noted that Defendants' *Vaughn* indices did not reflect any such discussions. Cross-Mem. at 15 n.5. Defendants vaguely suggest that a ruling in Plaintiffs' favor might negatively impact such discussions, but they do not point to a single withheld record that they claim addresses this subject. *See* Cross-Opp. at 8.

contravenes a statute is void *ab initio*, *see* Cross-Mem. at 14. Defendants do not dispute the case stands for that principle, *see* Cross-Opp. at 10, and the D.C. Circuit vacated, on that basis, the Final Rule, which thus only "purported" to ban certain uses of ESDs, *see* Responses at ¶¶ 21, 26-27.

Defendants' only policy argument—that Exemption 5 is "critical to FDA's ability to use th[e] authority [to ban a device] and to carry out its mission to protect and promote the public health"—flows entirely from their false premises. Cross-Opp. at 8. FDA's mission does *not* encompass, by tradition or statute, regulation of the practice of medicine. *FDA*, 3 F.4th at 399-400. FDA's inability to invoke Exemption 5 for actions outside the scope of its authority will have no impact on its ability to invoke Exemption 5 for actions within the scope of its authority.

Defendants have no response to Plaintiffs' policy arguments. *See* Cross-Mem. at 14-15. The legislative history confirms that Plaintiffs' arguments align with Congress's intent. It evinces a decades-long concern about excessive withholdings, particularly under Exemption 5, and a concomitant, decades-long effort to restrict the ability to withhold records, particularly under Exemption 5.[9] It also reveals that Congress's primary goals for FOIA include curbing agency overreach and promoting agency efficiency.[10] Against this backdrop, a Congressional endorsement of Defendants' position, which would expand Exemption 5's protections beyond agencies' underlying substantive powers and would encourage wrongful and wasteful administrative actions,

---

[9]    *See*, *e.g.*, 111 Cong. Rec. 26,821 (1965) (criticizing FOIA's predecessor law, which was "used more as an excuse for withholding than as a disclosure statute"); H.R. Rep. No. 114-391, at 10-11 (2015) (explaining that the "'withhold it because you want to'" Exemption 5 was "particularly problematic", that the deliberative-process privilege was "the source of the most concern regarding overuse", and that "this was a central problem FOIA was trying to fix").

[10]    *See*, *e.g.*, 111 Cong. Rec. 26,821 (1965) (Congress "attempted to delimit [Exemption 5] as narrowly as consistent with efficient Government operation"); 119 Cong. Rec. H10,447 (daily ed. Sept. 17, 1996) (finding FOIA "has led to the disclosure of waste, fraud, abuse, and wrongdoing"); 162 Cong. Rec. H3,717 (daily ed. June 13, 2016) (Improvement Act was intended to prevent withholding of records that are "embarrassing" or that could "paint the agency in a negative light").

would be anomalous. Based on FOIA's text and its legislative history, Congress would disapprove of Defendants' invocation of Exemption 5 to protect records concerning FDA's six-year effort to use a power it knew it lacked to attack a treatment offered by a single provider to fifty-two patients.

### B. The Attorney-Client Privilege Does Not Protect *Ultra Vires* Records.

Defendants' remaining arguments for the applicability of the attorney-client privilege to *ultra vires* communications are also unconvincing. They fail to distinguish the cases Plaintiffs cite and resort to hyperbole based on their false premises. Thus, Plaintiffs are also entitled to summary judgment as to all attorney-client privilege withholdings concerning the *ultra vires* rulemaking.

Defendants' attempt to distinguish Plaintiffs' cases is unavailing. Defendants observe that *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949), and *Pollack v. Hogan*, 703 F.3d 117 (D.C. Cir. 2012), which Plaintiffs cite, *see* Cross-Mem. at 17, announced and then applied the so-called *Larson-Dugan* exception to sovereign immunity, *see* Cross-Opp. at 11, whereby "'suits for specific relief against officers of the sovereign' allegedly acting 'beyond statutory authority…' are not barred", *Pollack*, 703 F.3d at 120 (quoting *Larson*, 337 U.S. at 689, 693). However, Defendants make no attempt to explain *why* the logic of the *Larson-Dugan* exception— that "such *ultra vires* action by a federal officer 'is beyond the officer's powers and is, therefore, not the conduct of the sovereign'", *Pollack*, 703 F.3d at 120 (quoting *Larson*, 337 U.S. at 690)— is inapplicable here. The principle is entirely consistent with and closely related to that applied by the D.C. Circuit in the Appeals. *Compare FDA*, 3 F.4th at 399 ("If Congress has forbidden an agency from taking an action, the agency cannot so act.") (citation omitted) *with Larson*, 337 U.S. at 689 ("[W]here the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which

-10-

the sovereign has empowered him to do...”). If an agency’s *ultra vires* acts are not done on behalf of the sovereign, how can an officer’s *ultra vires* acts be done on behalf of the agency (sovereign)?

Defendants’ other arguments on this issue depend on false premises and exaggerations. Defendants argue that because FDA has authority to ban a device, Plaintiffs’ “suggestion that FDA employees working on such a rulemaking are not working ‘on behalf of the agency’ is absurd.” Cross-Opp. at 12. But FDA employees were working on a ban of a *use*, and because FDA had no authority to do so, its employees had no authority to do so on its behalf. Defendants then warn of the supposedly “catastrophic precedent” that would allegedly result if the “attorney-client privilege is nullified every time a court disagrees with an agency decision”. *Id.* But a ruling in Plaintiffs’ favor on this issue would only be precedent where a court vacates a rule as *ultra vires* and not because it was arbitrary and capricious or for other reasons. Finally, Defendants claim Plaintiffs are using this argument to invalidate “every assertion of Exemption 5’s attorney-client privilege”, *id.* at 11, but Plaintiffs only seek, by means of this argument, the disclosure of records concerning FDA’s *ultra vires* rulemaking withheld under attorney-client privilege claims, *see* Cross-Mem. at 16. Defendants have failed to establish Plaintiffs are not entitled to this relief.

III.    **Exemption 5 Does Not Protect Records Concerning Bad Faith Acts.**

Defendants have not carried their burden of establishing that the Exemption 5 privileges allow them to withhold records concerning their regulatory misconduct.[11] As explained above, Defendants do not dispute *any* of the bad faith acts described by Plaintiffs. *See* Cross-Mem. at 18-31. Thus, this Court should grant Plaintiffs summary judgment as to all Exemption 5 withholdings.

---

[11]    As to Defendants’ withheld records concerning the rulemaking, the Court need not reach the bad faith issue if it grants Plaintiffs summary judgment on the *ultra vires* issue.

**A.  The Deliberative-Process Privilege Does Not Protect Records Of Bad Faith Acts.**

Defendants argue that the government misconduct exception to the deliberative-process privilege is unavailable in FOIA cases and that, even if it were available, it would not apply on these facts. Defendants are wrong on both points. Because they fail to carry their burden of establishing that the privilege protects their bad faith communications, the Court should grant Plaintiffs summary judgment as to all of Defendants' deliberative-process privilege withholdings.

Defendants incorrectly argue that the government misconduct exception is unavailable in a FOIA case as a matter of law. They do not dispute that at least one Court in this District has reasoned that *ultra vires* acts, as a type of misconduct, could constitute an exception to the deliberative-process privilege. *See* Cross-Mem. at 27-28 (discussing *ICM Registry v. Dep't of Commerce*, 538 F.Supp.2d 130 (D.D.C. 2008)). They instead rely exclusively on a FOIA case in which this Court declined to recognize the exception and argue that Plaintiffs cannot distinguish that case "because the Court's conclusion was legal, not factual". Cross-Opp. at 12-13 (citing *Wright v. Admin. for Children & Families*, No. 15-cv-218 (BAH), 2016 WL 5922293 (D.D.C. Oct. 11, 2016)). However, Plaintiffs distinguished *Wright* on both factual *and legal* grounds, and Defendants have no answer to those arguments. *See* Cross-Mem. at 29-30. One legal argument was that "the weight of more recent authority indicates a trend towards recognizing (or at least assuming the existence of) the exception in FOIA cases". *Id.* at 30. Though Defendants cite one decision following *Wright*, *see* Cross-Opp. at 13, even it acknowledged that a greater number of courts in this District have "discussed the possibility that the exception would apply in FOIA cases", *Judicial Watch, Inc. v. Dep't of State*, 241 F.Supp.3d 174, 182-183 (D.D.C. 2017). Further, Defendants fail to address the thirteen cases cited by Plaintiffs which hold or assume the exception applies in FOIA cases, including eight cases decided after *Judicial Watch* and *Wright*. *See* Cross-

Mem. at 28 n.13; *see also Stonehill v. DOJ*, No. 1:19-cv-03770, 2022 WL 407145, at *19 (D.D.C. Feb. 10, 2022) (a fourteenth such case). In light of Congress's clear intent that FOIA should enable the public to uncover government "wrongdoing", it would be an odd result if agencies were allowed to invoke Exemption 5 to hide evidence of government misconduct. *See supra* at n.10.

Defendants' factual argument is also unpersuasive. Though Defendants claim Plaintiffs fail to identify any FOIA case applying the exception, they admit that one of Plaintiffs' cases described "'rare cases' where the exception has been applied". Cross-Opp. at 14 (quoting *ICM Registry*, 538 F.Supp.2d at 133); *see also* Cross-Mem. at 27-28 (describing *ICM Registry*). Such cases may be rare because most requesters merely speculate about alleged misconduct. *See*, *e.g.*, *Wright*, 2016 WL 5922293, at *6 n.5. In contrast, Plaintiffs present an unrebutted nine-page summary of Defendants' bad faith acts based on FDA's own records. *See* Cross-Mem. at 18-27.

Relying on a series of misleading statements, Defendants argue their conduct was not "out of bounds", and that the rulemaking was a "legitimate government process" necessary "to protect the public health". Cross-Opp. at 14-15. But they do not dispute that: FDA "did not observe any indications that [JRC's] patients/clients were at risk" after a 2000 inspection; a 2011 committee of FDA scientists concluded GED presented only a "[r]emote [p]robability" of any "serious adverse health consequences"; and, from at least March 2014 through the present, JRC's patients have safely received GED treatment. Responses at ¶¶ 44-45, 53, 59. Further, they do not dispute that they knew FDA lacked the power to engage in the rulemaking or that they pursued that *illegitimate* government process anyway. *Id.* at ¶¶ 54, 58, 68, 77. Defendants suggest FDA fulfilled in good faith its "responsibility...to consider [JRC's] comments" on the rulemaking. Cross-Opp. at 14. However, they do not dispute that FDA acquiesced to HHS's instruction to reject JRC's position and finalize the ban *before* FDA had reviewed JRC's comments. *See* Responses at ¶¶ 76-77.

## B. The Attorney-Client Privilege Does Not Protect Records Of Unlawful Acts.

Defendants similarly and incorrectly argue that the crime-fraud exception to the attorney-client privilege is unavailable in FOIA cases and that, even if it were available, it would not apply on these facts. They fail to carry their burden on either point. Thus, the Court should grant Plaintiffs summary judgment as to all attorney-client privilege withholdings concerning the rulemaking.

Defendants' two legal arguments lack merit. First, they disingenuously suggest that the two cases Plaintiffs cite actually stand for the proposition that the exception to the privilege does not apply in FOIA cases. *See* Cross-Opp. at 15. Actually, *Sai v. TSA* accepted that the exception applies in FOIA cases but found "[t]he problem" with the requester's "imaginative" argument was that he "ha[d] not come close to carrying his burden of 'mak[ing] a prima facie showing of a violation sufficiently serious to defeat' the privilege[]". 315 F.Supp.3d 218, 258-259 (D.D.C. 2018). Similarly, *Conservation Force v. Jewell* did not reject the applicability of the exception in FOIA cases; rather, it concluded that the requester failed to prove that "the communications at issue were made with an intent to further the unlawful act". 66 F.Supp.3d 46, 64-65 (D.D.C. 2014). These decisions are not outliers. *See, e.g.*, *Nat'l Immigration Project of Nat'l Lawyers Guild v. DHS*, No. 11-cv-3235 (JSR), 2014 WL 6850977, at *5 (S.D.N.Y. Dec. 3, 2014) ("Given Congress's intent in enacting FOIA…to open agency action to the light of public scrutiny, it is utterly implausible to suppose that Congress intended FOIA Exemption 5 to shield government documents when they were created for the purpose of furthering a crime or a fraud.") (quotation omitted).

Second, Defendants incorrectly argue that the exception to the privilege only applies where misconduct rises to the level of "crime or fraud". Cross-Opp. at 15. Defendants mischaracterize *Conservation Force* as requiring that any "'other misconduct'…must rise to a 'level of criminal conduct'". *Id.* (quoting 66 F.Supp.3d at 64). In that passage, the *Conservation Force* Court was

-14-

using shorthand to explain that, even if the requester satisfied the first element of the exception, it failed to satisfy the second. *See* 66 F.Supp.3d at 64-65. Defendants' purported rule would make little sense; if the "other misconduct" has to be criminal, it would be subsumed within the "crime" category of the exception, and there would be no need to include it as a separate category, as the *Conservation Force* Court and others have. *See id.* at 64 ("[U]nder the crime-fraud exception, communications…'are not privileged if they are made in furtherance of a *crime*, fraud, *or other misconduct*.'") (quoting *In re Grand Jury*, 475 F.3d 1299, 1305 (D.C. Cir. 2007)) (emphasis added); *see also In re Sealed Case*, 676 F.2d 793, 807 (D.C. Cir. 1982) ("[The] [e]xception comes into play when a privileged relationship is used to further a crime, fraud, or *other fundamental misconduct*.") (emphasis added). Defendants' position is not the law. *See*, *e.g.*, *Sai*, 315 F.Supp.3d at 259 (explaining "serious misconduct" "abrogate[s]...the privilege[]"); *Jinks-Umstead v. England*, 232 F.R.D. 142, 145 (D.D.C. 2005) ("[T]here is precedent for the extension of the crime-fraud exception to the 'employment of services of counsel by public officials to assist in litigation designed to facilitate unconstitutional racial or ethnic discrimination…'") (quoting *Recycling Solutions, Inc. v. D.C.*, 175 F.R.D. 407, 409 (D.D.C. 1997)). Plaintiffs are not asking the Court to set a "chilling precedent" that all vacated rulemakings are "akin to crimes or frauds". Cross-Opp. at 15. Plaintiffs are only requesting the Court hold the exception is applicable where agency attorneys assist agency employees in an *ultra vires* rulemaking, especially where the employees abuse the privilege to engage in extensive bad faith conduct in furtherance of such rulemaking.

Defendants' factual arguments strain credulity. They make the astounding assertion that Plaintiffs failed to make the necessary showing because Defendants' misconduct—which Plaintiffs extensively detailed, *see* Cross-Opp. at 12 (criticizing Plaintiffs for "devot[ing] a significant portion of their brief" to these facts), and which Defendants do not dispute, *see*

Responses at ¶¶ 44-80—is "unremarkable" and the stuff of "routine" rulemaking, Cross-Opp. at 12, 15-16. If this is truly Defendants' position, vitiation of the privilege is all the more appropriate because FDA, which proudly proclaims itself a "science-first" agency, has lost its way.[12] A science-led agency would retain outside experts to offer unbiased opinions; it would not use its lawyers to identify biased experts and to tell them the opinions to provide. *Compare* Responses at ¶¶ 71-74 *and* Cross-Mem. at 25 *with* Scientific Integrity ("Critical to our ability to reach sound decisions…[is] a scientific review process that is thorough and unbiased."). A science-based agency would abandon a rulemaking that lacked medical support; it would not have its lawyers ask DOJ lawyers to support the politically pre-determined outcome. *Compare* Responses at ¶¶ 69-70 *with* Key Principles ("2. Shield the agency's science and its scientific staff from political influence."). The public and the JRC patients deserve better from government lawyers.[13] Disclosure will help.

* * *

Defendants object, in a meritless footnote, to Plaintiffs' request that this Court revisit its interlocutory order granting partial summary judgment to Defendants on the non-CDRH components' withholdings of draft records under deliberative-process privilege claims and records under attorney-client privilege claims. Defendants concede that Rule 54(b) "permits the Court to

---

[12]    *See*, *e.g.*, FDA, Scientific Integrity at FDA, https://www.fda.gov/science-research/about-science-research-fda/scientific-integrity-fda (last visited Aug. 7, 2023) ("Scientific Integrity") ("Science—both its quality and integrity—is the touchstone of everything we do at FDA."); FDA, FDA's Key Principles of Scientific Integrity, https://www.fda.gov/science-research/about-science-research-fda/fdas-key-principles-scientific-integrity (last visited Aug. 7, 2023) ("Key Principles") ("1. Maintain a firm commitment to science-based, data-driven decision-making.").

[13]    *See*, *e.g.*, S. Rep. No. 114-4, at 10 (2015) (explaining, during debate about amendments to Exemption 5 under the Improvement Act, that "[t]he actions of government lawyers...are subject to a degree of public scrutiny and review that is unknown within the context of a private attorney", and that "'government lawyers have a higher, competing duty to act in the public interest'") (quoting *In re Witness before Special Grand Jury 2000-2*, 288 F.3d 289, 293 (7th Cir. 2002)).

reconsider [that] interlocutory order 'as justice requires'", Cross-Opp. at 13 n.6 (quoting *In re Rail Freight Surcharge Antitrust Litig. (No. II)* ("*Rail Freight*"), No. 20-MISC-00008 (BAH), 2021 WL 1909777, at *5 (D.D.C. May 12, 2021)), a standard that "leave[s] a great deal of room for the court's discretion", *Hisp. Affairs Project v. Perez*, 319 F.R.D. 3, 6 (2016) (Howell, J.); *accord Lin v. D.C.*, 47 F.4th 828, 838 (D.C. Cir. 2022). Defendants also admit that Rule 54(b) covers "'an intervening change in law'", and that Plaintiffs' request is based on "the intervening D.C. Circuit opinion", Cross-Opp. at 13 n.6 (quoting *Rail Freight*, 2021 WL 1909777, at *5), yet Defendants have no answer to Plaintiffs' argument that the opinion, which held FDA's rulemaking *ultra vires*, invalidates their attempt to withhold under Exemption 5 all records concerning the rulemaking regardless of whether they were the subject of the Court's interlocutory order, *see* Cross-Mem. at 11; *see also Lin*, 47 F.4th at 839 (affirming allowance of reconsideration motion because "[r]evisiting a ruling as legal issues develop over the course of litigation falls squarely within Rule 54(b)'s wheelhouse"). Similarly, Defendants admit that Rule 54(b) covers "'the discovery of new evidence not previously available'", and that Plaintiffs' request was also "based on [Defendants'] 'bad faith'", Cross-Opp. at 13 n.6 (quoting *Rail Freight*, 2021 WL 1909777, at *5), yet Defendants have no answer to Plaintiffs' argument that Defendants' bad faith infects all records withheld by Defendants under Exemption 5 claims, and they do not dispute that they had not yet disclosed most of the relevant records before the last round of summary judgment, *compare* Cross-Mem. at 30 n.14 *with Rail Freight*, 2021 WL 1909777, at *14-16 (explaining that "[t]he dispositive inquiry" is "whether the information was accessible to the moving party prior to the challenged decision"). Denial of reconsideration would harm Plaintiffs by unjustly precluding their access to records Defendants are improperly withholding simply because of the timing of the D.C. Circuit's decision

-17-

and Defendants' belated production of inculpatory records. The Court should grant Plaintiffs' limited request for reconsideration of these two aspects of its interlocutory order.

**IV.    Defendants Failed To Establish Reasonably Foreseeable Harm From Disclosure.**

Defendants have not carried their burden of establishing it is reasonably foreseeable that disclosure of the information they withheld under deliberative-process privilege claims would harm an interest protected by the privilege. *See* 2009 Guidance (explaining "[r]ecords covered by [that] privilege in particular have significant release potential" under the foreseeable harm requirement). Defendants do not dispute Plaintiffs' summary of the heightened burdens and additional limitations the Improvement Act imposes on their withholdings or of the concern about overuse and abuse of the privilege that motivated Congress to pass the Improvement Act. *Compare* Cross-Mem. at 32-33 *with* Cross-Opp. at 16-22; *see also* 162 Cong. Rec. H3,717 (daily ed. June 13, 2016) (explaining Improvement Act intended to "go a long way toward getting rid of" Exemption 5). And none of Defendants' arguments have merit. The Court should grant Plaintiffs summary judgment as to all records withheld under deliberative-process privilege claims.[14]

**A.  Foreseeable Harm Would Not Result From Disclosure Of *Ultra Vires* Records.**

Defendants' position that disclosure of *ultra vires* communications would lead to foreseeable harm is incorrect. They do not dispute Plaintiffs' argument that context is critical when evaluating foreseeable harm, and they do not dispute that they refused to reconsider the vast majority of their withholdings after the D.C. Circuit issued its decision. *Compare* Cross-Mem. at 33-34 *with* Cross-Opp. at 16-17. Instead, they assert—without explanation or support—that the D.C. Circuit's decision did not change the context of their withholdings concerning the

---

[14]    The Court need not reach this issue as to the deliberative-process privilege withholdings concerning the rulemaking if it rules in Plaintiffs' favor on the *ultra vires* issue or as to all deliberative-process privilege withholdings if it rules in Plaintiffs' favor on the bad faith issue.

rulemaking. *See* Cross-Opp. at 16. It is difficult to imagine a more important change in context than a federal appellate court holding that an agency lacked the power to take the action it took, and Defendants' refusal to re-examine their deliberative-process privilege withholdings in light of the D.C. Circuit's decision is indefensible. Defendants also argue that, even if FDA's rulemaking was vacated as *ultra vires*, disclosure of communications concerning the rulemaking will chill future agency discussions. *See* Cross-Opp. at 17. But they do not dispute that the relevant inquiry is whether disclosure will chill the same type of future deliberations, *compare* Cross-Mem. at 33-34 *with* Cross-Opp. at 16-17, and if disclosing records of past *ultra vires* communications chills future *ultra vires* communications, that is entirely consistent with the purpose of FOIA. *See supra* at n.10; *compare Jordan v. DOJ*, 591 F.2d 753, 772 (D.C. Cir. 1978) (recognizing privilege protects "candid" communications in order to "improve[] the quality of agency policy decisions") *with* Cross-Mem. at 15 (arguing there is no such thing as "a higher 'quality' *ultra vires* decision").

Defendants are also incorrect when they argue that, because Congress recently purported to give FDA the power to ban a use[15] and FDA will soon propose a ban on the use of ESDs to treat SIB or AB, disclosure of records concerning the unlawful rulemaking will chill deliberations concerning the planned rulemaking. Cross-Opp. at 18-19. Even if FDA is correct that it *now* has the power to ban a use, then disclosure of old communications about the vacated rulemaking should not impact new deliberations about the planned rulemaking because FDA will have to redo the

---

[15] The legislative history that Defendants cite, *see* Cross-Opp. at 19, is an early draft of the Prescription Drug User Fee Amendments of 2022, which purported to grant FDA the power to ban a use and to legislatively ban ESDs used to treat SIB or AB, *see* H.R. Rep. No. 117-348, at 4, 65 (2022), but *both provisions were stripped from the bill* before it became law, *see generally* Pub. L. No. 117-180, 136 Stat. 2114, 2139-2168 (2022). Only later did Congress purport to grant FDA the power to ban a use (but did not purport to legislatively ban ESDs used to treat SIB or AB) in a short provision buried in the 4,155-page year-end omnibus appropriations bill. *See* Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, § 3306 (2022).

banning process using current information. Further, taking FDA at its word, there is no risk of chilling deliberations because the decision to issue a new ban has already been made. *See id.* at 19.

**B.  Defendants Failed To Particularize The Allegedly Foreseeable Harm.**

Defendants unsuccessfully attempt to distinguish their conclusory and unparticularized foreseeable harm claims from those the D.C. Circuit held inadequate in *Reporters Committee*, 3 F.4th at 369-372. They assert the requisite particularization is contained in their "voluminous *Vaughn* indices, numerous declarations, and a supplemental brief".[16] Cross-Opp. at 18. But Defendants do not dispute that the Supplemental Brief includes five umbrella paragraphs alleging foreseeable harm from the release of tens of thousands of withheld pages concerning countless decisions. *See* Cross-Mem. at 36-37; *see also* Supp. Br. [ECF No. 67] at 6-10. Further, they only cite a single declaration in support of their foreseeable harm claims concerning their deliberative-process privilege withholdings, *see* Supp. Br. at 6-10 (citing only Boston Supp. Decl. [ECF No. 67-1]), and Plaintiffs responded to that declaration in their briefing, *see* Cross-Mem. at 37 n.16. Finally, none of the entries in the two *Vaughn* indices provide a particularized explanation of why disclosure of the allegedly privileged withholdings would cause foreseeable harm. *See, e.g.*, Non-CDRH Index [ECF No. 50-3] at 2-4; CDRH Index [ECF No. 50-5] at 2. Defendants have failed to identify particularized foreseeable harm, and they are not entitled to summary judgment based on boilerplate allegations, no matter how "voluminous" or "numerous". *See Ctr. for Investigative Reporting v. CBP*, 436 F.Supp.3d 90, 106 (D.D.C. 2019) (Howell, J.).[17]

---

[16]    Defendants cite two unsupportive footnotes in their Supplemental Brief. *See* Cross-Opp. at 18. The first is only meant to show that they allegedly withheld information technically exempt under the deliberative-process privilege. *See* Supp. Br. at 5 n.4. The second concerns their withholdings under Exemption 6. *See id.* at 11 n.7. Both are irrelevant to the issue at hand.

[17]    Plaintiffs do *not* admit that disclosure of any deliberative-process privilege withholding would result in foreseeable harm. Cross-Opp. at 17. In the quoted passage, Plaintiffs contrast Defendants' deficient approach with the demanding legal requirement. Cross-Mem. at 32.

**C. Defendants Failed To Establish They Used A Proper Categorical Approach.**

Defendants agree they used a non-substantive categorical approach to foreseeable harm involving "drafts" and "non-drafts", and do not dispute that these two categories include records concerning a plethora of decisions. *Compare* Cross-Mem. at 37-39 *with* Cross-Opp. at 19-21. They do not dispute that permissible categorization is generally based on the substance of the underlying records, and they remain unable to cite any decision approving their non-substantive approach. *Compare* Cross-Mem. at 37-39 *with* Cross-Opp. at 19-21. Instead, they argue that their categories are appropriate because "all these records" in *both* categories, are substantively the same, "address[ing] the same locus of issues" ("Plaintiffs, [GED], and the [rulemaking])". Cross-Opp. at 19-20. This argument is a new variation of one this Court already rejected during the last round of briefing concerning their inadequately specific descriptions of the alleged deliberative processes. *See JRC*, 376 F.Supp.3d at 65-67. If this approach was too imprecise to categorize the alleged deliberative processes, it cannot be specific enough to categorize the alleged foreseeable harms, as Congress intended the foreseeable harm requirement to be an additional hurdle for the government to clear before withholding information. *See* Cross-Mem. at 32-33.[18]

**D. Defendants Are Improperly Withholding Records To Avoid Embarrassment.**

Defendants are improperly withholding records to avoid the embarrassment of revealing how FDA yielded to political pressures and issued an unsupported rulemaking. *See supra* at n.10. Plaintiffs previously argued Defendants did not explain how "perceived disagreements" in these

---

[18]    Defendants argue that, for some records, they claimed foreseeable harm based on the deliberative-process *and* attorney-client privileges. Cross-Opp. at 20. Besides any references buried in thousands of pages of indices, *see* Cross-Opp. at 1, they do not direct the Court to the specific records—or the specific redaction(s) therein—allegedly at issue, thereby failing to satisfy their summary judgment briefing obligations. *See JRC v. FDA*, 376 F.Supp.3d 47, 76 (D.D.C. 2019) (Howell, J.) (previously warning Defendants that "too much ha[d] been painted with too broad a brush").

records could be used for private gain or at the expense of public health. Cross-Mem. at 39-40. Defendants still fail to explain how their concern is not entirely speculative, instead simply re-asserting their position. *See* Cross-Opp. at 21. Defendants' new suggestion that the records may reflect "broadly applicable issues" is baseless; FDA has only used its banning power three times, and its most recent rulemaking only targeted JRC. *See* Cross-Mem. at 21, 23.

### E.  Defendants Are Not Withholding Records To Avoid Public Confusion.

Defendants have not shown that disclosure would lead to public confusion. They claim the withheld records "could include conflicting opinions and recommendations". Cross-Opp. at 22. But they admit "there are final versions" of those same records, *id.*, and, as this Court has previously held, the public will not be confused by disclosure of a preliminary discussion where a final decision is already available. *See Hardy v. ATF*, 243 F.Supp.3d 155, 164, 175-176 (D.D.C. 2017) (Howell, J.); *see also* 2023 Guidance ("prior official disclosures" is a foreseeable harm factor); 2009 Guidance ("status of the decision" is a foreseeable harm factor). Further, Defendants are unable to affirmatively state that the records actually do contain conflicting opinions, *see* Cross-Opp. at 22; their citation for this point does not make an affirmative representation, *see id.* (citing Supp. Br. at 9), and they elsewhere accuse Plaintiffs of engaging in "speculation" that the records may contain such evidence, *id.* at 17; *see also* Cross-Mem. at 34. Defendants also do not dispute that they claim the evidence concerning ESDs used to treat SIB and AB is entirely one-sided, *compare* Cross-Mem. at 40 *with* Cross-Opp. at 21-22, rendering their suggestion of possible conflicting opinions implausible, *see* Cross-Opp. at 21-22.[19] Further, they admit the public remains keenly interested in this issue, *see id.* at 22 & n.9, and do not dispute Plaintiffs' argument that a

---

[19]    If the records contain conflicting opinions, then Defendants' attempt to withhold them is against FDA policy. *See* Key Principles ("Allow FDA staff to communicate their personal scientific or policy views to the public, even when [they] differ from official Agency opinions.").

more interested public is less likely to be confused, *see* Cross-Mem. at 40; *see also* 2023 Guidance (encouraging disclosure when "the public interest in the information is high").

Defendants falsely claim that FDA's administrative record includes all "the facts and relevant evidence at the time of the rule making", and falsely assert that Plaintiffs' argument to the contrary is based on "unfounded speculation". Cross-Opp. at 17. Plaintiffs agree the record should have included "*all information [FDA] considered*". *Id.* (quoting *Marcum v. Salazar*, 751 F.Supp.2d 74, 78 (D.D.C. 2010)) (emphasis added). In a ban proceeding, FDA is *required to consider* "all available data and information". *See* 21 U.S.C. § 360(f)(a); 21 C.F.R. § 895.20. Nonetheless, the record omitted important evidence available to FDA and supportive of the safety and efficacy of ESDs used to treat SIB and AB. For example, FDA omitted the 2011 HRA by a committee of FDA scientists concluding that GED presented only a "'*[r]emote [p]robability*'" of any "'*serious adverse health consequences*'", Cross-Mem. at 22 (quoting A4371-A4374); *see also* Responses at ¶ 59 (admitting existence of same), and the two expert opinions solicited by FDA in 2010 advising of positive GED efficacy data, *see id.* at 21, until Plaintiffs discovered them through this FOIA litigation and JRC submitted them as attachments to JRC's petition for FDA to stay the Final Rule, *see* Rodgers Supp. Decl. at Ex. F. FDA should have, but did not, include these documents in the administrative record before it issued the Final Rule, since these FDA-generated documents contained relevant information and data available to it before it issued the Final Rule.

## V. The Court Should Order *In Camera* Review.

This Court may grant Plaintiffs summary judgment without conducting an *in camera* review. Nonetheless, Plaintiffs submitted to the Court for *in camera* review fifty redacted records[20]

---

[20]  Plaintiffs submit a chart correlating the fifty records with the corresponding entries on Defendants' CDRH Index. *See* Rodgers Supp. Decl. at Ex. G.

on two grounds: Defendants' prior agreement to submit up to 100 unredacted records in exchange for Plaintiffs' agreement to a sample CDRH *Vaughn* index process, and Defendants' bad faith in this FOIA action and the underlying rulemaking. Cross-Mem. at 41-43. Defendants' strenuous argument against *in camera* review telegraphs their awareness that these records will reveal further evidence of regulatory misconduct and improper withholdings. *Id.* at 42-45.[21]

Defendants do not dispute that: bad faith is not a prerequisite to *in camera* review; review of a representative subset of records from a sample *Vaughn* index of a large number of withholdings is appropriate; or that the parties' *in camera* agreement was consistent with these principles. *Compare* Cross-Mem. at 41-42 *with* Cross-Opp. at 22-24. Having received the benefit of the bargain (Plaintiffs' assent to a sample index), Defendants now refuse to accept the burden (their submission of unredacted records), on the basis that "Plaintiffs' request is not reasonable[,] [b]ecause Plaintiffs' allegations of bad faith have no merit". Cross-Opp. at 23. But Plaintiffs' arguments for inspection based on the agreement or Defendants' bad faith are independent, *see* Cross-Mem. at 41-43, and the agreement is not conditioned on Defendants' view of the "reasonableness" of Plaintiffs' arguments. *See* JSR [ECF No. 44] at 3, 8-10. Defendants have no legitimate reason to refuse to honor the agreement, to which the Court should hold them.

Defendants also do not dispute that bad faith in either the FOIA action or the underlying regulatory process supports *in camera* review. Plaintiffs' concession in their last brief—that

---

[21] Defendants claim Plaintiffs are speculating because Plaintiffs allegedly "failed to question any aspect of Defendants' declarations". Cross-Opp. at 24; *see also id.* at 6, 20, 25 (similar). The declarations make only conclusory assertions that Defendants produced "all reasonably segregable, non-exempt information", and that disclosure "could have a detrimental effect on the agency's decision-making process". Boston Decl. [ECF No. 50-4] at ¶¶ 34, 41. Defendants overlook that Plaintiffs' arguments call into question these and all statements in the declarations. *See, e.g., Judicial Watch, Inc. v. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (agency declarations are insufficient if they are based on "conclusory statements" or are "called into question by contradictory evidence in the record or by evidence of agency bad faith").

Defendants have, at certain times, litigated this FOIA action in good faith, including concerning their agreement to *in camera* review—was premature. *See* Cross-Mem. at 42 n.19. Defendants' subsequent refusal to honor that agreement (even after Plaintiffs reminded them of their obligations, *see* Rodgers Supp. Decl. at Ex. C), as well as their frivolous arguments in their final brief (such as their assertion the D.C. Circuit did not vacate the Final Rule as *ultra vires*, *see supra* at 3), is bad faith conduct that further underscores the importance of *in camera* review here.

Defendants incorrectly argue that Plaintiffs fail to justify extrapolating the results from the fifty records to all withholdings. *See* Cross-Opp. at 24. Defendants ignore that the sample index process is premised on the sample being representative of the entire production, *see* Cross-Mem. at 41 (citing *Bonner v. State*, 928 F.2d 1148, 1151 (D.C. Cir. 1991)), and that where, as here, *see* JSR [ECF No. 44] at 8-12, the sample "was selected by agreement of the parties", there can be "no attack on the sample's capacity to represent the entire group of [withheld] documents", *Bonner*, 928 F.2d at 1151. The Court may properly assume the entire production is infected by the same improper withholdings as the fifty record sample.

## VI.   <u>Plaintiffs Are Entitled To Summary Judgment And Other Appropriate Relief.</u>

This Court should deny Defendants' Motion, grant Plaintiffs' Cross-Motion, and award Plaintiffs all additional relief specified in Plaintiffs' [Proposed] Order [ECF No. 71-7].[22]

---

[22]   This Court should not allow Defendants another chance to attempt to justify their improper withholdings. They already had ample opportunities to do so. *See JRC*, 376 F.Supp.3d at 57-58 (describing prior briefing, including three prior non-CDRH indices); Non-CDRH Index; CDRH Index; Defs.' Opp. to Pls.' Mot. to Amend Compl. [ECF No. 63] at 15 (Defendants' pending Motion then "included 14 declarations, numerous other exhibits, and totaled 901 pages"); Supp. Br.; Boston Supp. Decl.; Cross-Opp. Almost a year ago, this Court observed, "[t]his case should…be nearing resolution". Min. Order (Nov. 1, 2022). Compelling Defendants to comply with their FOIA obligations will bring about that resolution, and finality is critical in light of FDA's impending issuance of a new proposed ban. *See* Cross-Opp. at 19.

Respectfully submitted,

**The Judge Rotenberg Educational Center, Inc. and Paul E. Peterson, Ph.D.,**

*/s/ Edward J. Longosz, II*
Edward J. Longosz, II (D.C. Bar No. 368932)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
1717 Pennsylvania Avenue, Northwest, 12th Floor
Washington, D.C. 20006
T: 202 659 6619
F: 202 659 6699
elongosz@eckertseamans.com

*/s/ Michael P. Flammia*
Michael P. Flammia (*Pro Hac Vice*)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
2 International Place, 16th Floor
Boston, MA 02110
T: 617 342 6854
F: 617 342 6899
mflammia@eckertseamans.com

*/s/ Matthew D. Rodgers*
Matthew D. Rodgers (*Pro Hac Vice*)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
2 International Place, 16th Floor
Boston, MA 02110
T: 617 342 6817
F: 617 342 6899
mrodgers@eckertseamans.com

**The J.R.C. Parents and Friends Association, Inc. and Paul E. Peterson, Ph.D.,**

*/s/ Max D. Stern*
Max D. Stern (*Pro Hac Vice*)
TODD & WELD, LLP
1 Federal Street
Boston, MA 02110
T: 617 624 4712
F: 617 227 5777
mdstern@toddweld.com

Dated: August 7, 2023

-26-

-27-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed and served copies of the foregoing document through the Court's electronic transmission facilities on August 7, 2023.

<u>*/s/ Edward J. Longosz, II*</u>
Edward J. Longosz, II

Dated: August 7, 2023